IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| REGEN HORCHOW, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> THE WESTMOOR CLUB, LLC ) <br> ) <br> Defendant. ) <br> ) | CIVIL ACTION NO.: |

## COMPLAINT

Plaintiff Regen Horchow, by her undersigned attorneys, alleges as her complaint against the defendant, The Westmoor Club, LLC (The "Westmoor Club" or The "Club"), as follows:

## NATURE OF THE ACTION

1. As detailed herein, this is a contractual dispute related to The Westmoor Club's breach of its membership agreement with Plaintiff, Regen Horchow ("Ms. Horchow"), including The Club's improper transfer of Ms. Horchow's valuable Club membership to her former husband, and subsequent expulsion of Ms. Horchow from The Club. The Club's transfer of the membership to her ex-husband deprived Ms. Horchow of the substantial value of the membership — approximately $690,0000.

2. In *Count One*, Ms. Horchow seeks damages and other relief available based on The Club's breach of its membership agreement with Ms. Horchow. In *Count Two*, Ms. Horchow seeks damages and other relief available based on The Club's breach of its implied covenant of good faith and fair dealing by preventing Ms. Horchow from enjoying the benefits of their contractual relationship and impairing her contract rights. In *Count Three,* Ms. Horchow seeks damages and

other relief available under M.G.L. c. 93A, Sections 2 and 11, based on The Club's unfair and deceptive practices in transferring Ms. Horchow's membership to her ex-husband and refusing to recognize her claim to the membership.

## PARTIES

3. Ms. Horchow is a resident of Dallas County, Texas. At all relevant times, Ms. Horchow maintained a membership at The Club and was a member in good standing prior to her wrongful expulsion from The Club.

4. The Club is a limited liability company organized and existing under the laws of Massachusetts, with its principal place of business at 10 Westmoor Lane, Nantucket, Massachusetts.

## JURISDICTION AND VENUE

5. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between the parties and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

6. Venue in this action is proper in the District of Massachusetts pursuant to 28 U.S.C. § 1391(b)(2) because substantially all of the events and omissions giving rise to the Ms. Horchow's claim occurred in this judicial district.

## FACTS
### Ms. Horchow's Application and Membership with The Club

7. Ms. Horchow first learned of The Club's existence through her father, the late Mr. S. Roger Horchow, who was a long-time summer vacationer to Nantucket, as well as a member of two Nantucket clubs, the Nantucket Yacht Club and Cliffside Beach Club.

8. In or about the summer of 2004, Mr. Roger Horchow received a marketing phone call from The Club's representative, inquiring if Mr. Roger Horchow and his adult children

(including Ms. Horchow) would like to become members of a new private club on Nantucket called The Westmoor Club.

9. Mr. Roger Horchow, Ms. Horchow, and Ms. Horchow's sister, Elizabeth Routman, toured The Club while it was still under construction in July 2004.

10. Mr. Roger Horchow ultimately declined to purchase a membership for himself but elected to purchase memberships as a gift to both of his daughters, Ms. Horchow and Elizabeth Routman.

11. The Club charges all members an initiation fee, referred to as a "Membership Deposit." The amount of the Membership Deposit is subject to change. In addition to the Membership Deposit, members are required to pay annual dues.

12. To apply for a membership, The Club requires an applicant to complete a membership application and make an earnest money deposit. If The Club approves an applicant for membership, the amount of the earnest money deposit is credited to the Membership Deposit and the member owes the balance to The Club.

13. At the time of Ms. Horchow's application to The Club, the Membership Deposit for a "Regular" (i.e., non-resident) Club membership was $125,000. The earnest money deposit, required at the time of application, was $25,000.

14. On July 30, 2004, Mr. Roger Horchow issued a check to The Club in the amount of $50,000 to cover the earnest money deposits for his daughters, Ms. Horchow and Elizabeth Routman.

15. Upon receipt, a Club representative wrote "For Regen Fearon – Regular; and Elizabeth Routman – Regular"[1] on the top of that check. The Club made a copy of the deposit check and wrote at the top "For Fearon, Regen – Same check as for Routman, Lizzie." *See* Exhibit 1 at 5.

16. As part of obtaining admission to The Club, Ms. Horchow received a membership application to fill out (the "Membership Application"). She subsequently completed the Membership Application by hand.

17. On the Membership Application, in the "Applicant" section, Ms. Horchow listed herself as the "Applicant," and provided her home address, telephone number, email address, social security number, and date of Birth. *See* Exhibit 1 at 2. In the "Spouse/Domestic Companion" section, Ms. Horchow listed her then-husband, Mr. Jeffrey Fearon, and provided his social security number and date of birth. *See id.*

18. The Membership Application required references from the Applicant's other club memberships. Ms. Horchow listed her memberships at the Nantucket Yacht Club and the Cooper Aerobic Center, Ms. Horchow's gym in Dallas, Texas. Mr. Fearon was not a member of either club, and no references were listed for Mr. Fearon because he was not the Applicant. *See id.*

19. The Membership Application required the name of the Applicant's Company and Company Address. Ms. Horchow, who was not employed at the time, listed "N/A" in this section. The Membership Application did not request employment information for the Spouse/Domestic Companion, and Ms. Horchow did not provide information regarding Mr. Fearon's employment, who was employed at the time.

---

[1] At the time Mr. Roger Horchow paid the membership deposit, Ms. Horchow was married to Jeffrey Fearon ("Mr. Fearon") and used his surname.

20. Ms. Horchow submitted the Membership Application to The Club on or about August 1, 2004.

21. In a letter dated August 15, 2004, sent to Ms. Horchow's home address (as provided on the application), The Club notified Ms. Horchow that her Membership Application had been approved. The letter stated the Membership Deposit for a Regular Membership was $125,0000 and, after applying the $25,000 payment from Mr. Roger Horchow, requested payment of the balance. *See* Exhibit 1 at 9.

22. On or about September 10, 2004, Mr. Roger Horchow issued a check in the amount of $200,000 to The Club to cover the remaining $100,000 Membership Deposits for Ms. Horchow and Elizabeth Routman. *See* Exhibit 1 at 7.

23. At no time before or during the application process did Mr. Fearon visit the club, speak with club management, or complete a Membership Application. Similarly, at no time during the application process did Mr. Fearon, or any of his blood relatives, issue a check to The Club membership costs.

24. Ms. Horchow's membership, like all memberships at The Club, was governed by the terms of the Westmoor Club Membership Plan (the "Membership Plan"). Under the terms of the Membership Plan, upon submission of the Membership Application and The Club's subsequent approval of the Membership Application, Ms. Horchow and The Club became bound by the terms and conditions of the Membership Plan. A copy of the Membership Plan is attached as Exhibit 2.

25. The Membership Plan states that Membership "may only be owned individually" and is "available to individuals approved for membership, who make non-interest bearing refundable Membership Deposits to The Club and pay any then required dues and fees." Exhibit 2 at 2-3.

5

26. At the outset of Ms. Horchow's membership at The Club, The Club sent all bills for dues and fees to the attention of "Mr. and Mrs. Jeff Fearon" in Dallas, Texas, the name and address Ms. Horchow provided on the Membership Application for billing instructions. Subsequently, when The Club switched to paperless billing, the bills were sent by email to Ms. Horchow's personal email address. Ms. Horchow paid those bills promptly.

27. Upon information and belief, and based on the foregoing, The Club knew and understood that Ms. Horchow was the individual "Member," following the payment of a Membership Deposit, in two separate checks, by Ms. Horchow's father, and the submission of a completed Membership Application by Ms. Horchow, containing Ms. Horchow's personal background details and references necessary for the evaluation of Ms. Horchow according to The Club's membership criteria. Similarly, The Club understood that Mr. Fearon was to be the "Spouse" under that membership.

## Ms. Horchow's Divorce

28. Ms. Horchow and Mr. Fearon's relationship deteriorated, and in 2019, Ms. Horchow filed for divorce.

29. To maintain normalcy for her children despite the divorce, Ms. Horchow and Mr. Fearon agreed to share their home on Nantucket.

30. Ms. Horchow allowed Mr. Fearon to share the Westmoor Club membership during the months he used the home each year, to allow Mr. Fearon to continue to attend The Club with their children.

31. Ms. Horchow did not travel to Nantucket in 2020 and therefore did not visit The Club.

32. In 2021, before the start of the summer season, Ms. Horchow had a phone call with The Club. During that call, Ms. Horchow told The Club she and Mr. Fearon were divorced but planned to continue to share the membership.

33. Following that phone call, Ms. Horchow exchanged an email with Laurie Cowden, upon information and belief The Club's Chief Financial Officer. Again, she noted that she and Mr. Fearon were divorced but planned to share the membership. *See* Exhibit 3.

34. In conversations with Club management, Ms. Horchow was initially told that sharing the membership was permissible so long as Ms. Horchow and Mr. Fearon continued to share the same home.

**Ms. Horchow's Discovery of The Club's Wrongful Transfer of Her Membership**

35. At the beginning of April 2021, Ms. Horchow visited The Club's online members' portal and noticed that, in her membership profile, The Club listed Mr. Fearon as the "Member" and Ms. Horchow as the "Member's spouse." Ms. Horchow had not previously seen this error.

36. On or about April 6, 2021, Ms. Horchow called The Club and requested that it correct the profile to reflect that she was the Member. The same day, Ms. Horchow emailed Ms. Cowden and requested that the online membership listing be revised to reflect her as the Member. The Club failed to act, stating instead in an email that they preferred to leave the issue for a later date. *See* Exhibit 3.

37. In or about July of the same year, Ms. Horchow spoke with Kitty Goldsmith who, upon information and belief, was the acting membership advisor for The Club when Ms. Horchow toured and made application to the Club. During this conversation, Ms. Goldsmith told Ms. Horchow that private clubs, such as The Westmoor Club, are old fashioned and often simply assume that the male is the member.

7

38. The Club repeatedly refused to make any correction to the membership profile and instead informed Ms. Horchow that The Club would not "become involved" in Members' divorces. *See* Exhibit 4 at 2. On or about July 22, 2022, The Club informed Ms. Horchow that it would not correct the membership register "absent an agreement between the parties or a court order on this issue." *See* Exhibit 5 at 1.

39. The Club further informed Ms. Horchow that The Club membership would be suspended as of 2023 until The Club received evidence of resolution.

40. In February 2023, prior to the start of the 2023 summer season, Ms. Horchow told The Club she and Mr. Fearon had not reached agreement over the use of the membership, and she consented to a suspension of the membership. She agreed that all membership dues would be timely paid per The Club membership documents.

41. The Club subsequently suspended Ms. Horchow's membership.

42. On or about July 12, 2023, Mr. Fearon's counsel at Quinn Emanuel Urquhart & Sullivan, LLP issued a letter to The Club claiming that Mr. Fearon was the holder of The Club membership and requesting The Club lift the suspension.

43. After rejecting Ms. Horchow's repeated attempts to correct The Club's own improper recordkeeping to reflect that she was the Applicant/Member, and telling her repeatedly that it would take no action absent an agreement or court order, The Club immediately reacted in capitulation to the request of Mr. Fearon, a man, consistent with The Club's prior statement that they assume males are the primary members. Just one day after Mr. Fearon's request, without agreement from Ms. Horchow or a court order, The Club unilaterally reactivated the membership so that Mr. Fearon could use The Club.

44. On July 14, 2023, Ms. Horchow's counsel spoke with The Club's Chief Financial Officer by phone and again requested that The Club membership remain suspended until the dispute was resolved. The Club's CFO responded that Mr. Fearon was the member, confirming that it had wrongfully transferred Ms. Horchow's membership to Mr. Fearon.

### The Membership Plan

45. The Membership Plan contains a provision governing the transfer of a membership to a spouse. The "Transfer of Membership to Spouse" section provides that a "Member may transfer the membership to his or her spouse…The proposed transferee must apply and be approved for membership." Exhibit 2 at 7.

46. Ms. Horchow never agreed to transfer the membership to Mr. Fearon. Mr. Fearon did not apply for, nor was he approved for, membership.

47. The Membership Plan contains a provision governing the possession of a Membership upon a divorce. The "Separation and Divorce" section provides that "[i]n the case of divorce of a married Member, the membership shall belong to the spouse ***designated on the Membership Application as the Member*** unless otherwise provided by agreement between the parties or by court order." Exhibit 2 at 7 (emphasis added).

48. Ms. Horchow is designated on the Membership Application as the "Applicant.[2]"

49. At no time did Ms. Horchow and Mr. Fearon agree that the membership would belong to Mr. Fearon after the divorce. There was no court order in the divorce proceedings, or in any other proceeding, that awarded the membership to Mr. Fearon.

---

[2] The Membership Application contains a line only for "Applicant" and "Spouse/Domestic Companion." It does not contain a "Member" line.

9

50. Nonetheless, at some point during the duration of Ms. Horchow's membership, The Club independently determined to transfer the membership to Mr. Fearon, depriving Ms. Horchow of her membership rights under the Membership Plan, and the value of her membership.

51. Despite repeated demands from Ms. Horchow, The Club refused to correct its wrongful transfer of the membership to Mr. Fearon.

### Ms. Horchow's Texas Lawsuit

52. After The Club's transfer of the membership to Mr. Fearon and its refusal to correct its membership directory, Ms. Horchow had no other means to defend her contractual right to the membership than through the legal system.

53. On August 29, 2023, Ms. Horchow filed an action against The Club in Texas alleging breach of contract, civil conspiracy to defraud her of her contractual rights, privileges, and financial interests in the Westmoor Club.

54. On May 29, 2024, Ms. Horchow took the deposition of Kitty Goldsmith, The Club's membership advisor at the time Ms. Horchow was admitted as a member. During that deposition, Ms. Goldsmith confirmed, under oath, that the application was Ms. Horchow's and that The Club had made the decision to admit Ms. Horchow as to The Club. *See* Exhibit 6 at 49:23–50:16.

55. Specifically, Ms. Goldsmith testified in her deposition:

> Q: Well, would you agree with me that if you look at the membership application where the applicant is listed as Regen Fearon, the common sense would tell you that Regen Fearon was the applicant. True?
> A: Yes.
> Q: And if one checks the references in this membership application, and you learn that … Jeff Fearon was not and had never been a member of the Nantucket Yacht Club… what does common sense tell you about whose application this is?
> …
> A: Her name is the applicant.
> Q: It tells you that its Regen – it tells you that it's Regen's application, True?
> A: Yes.
> ....

10

> Q: Isn't it true –isn't it true, Ms. Goldsmith, that you all, the people who reviewed these membership applications, looked at this membership, the one that I have on the screen and made the decision to admit Regen Fearon as a member of the Westmore. True?
> A: Yes.

56. On December 14, 2023, The Club filed a Special Appearance pursuant to Texas Rules of Civil Procedure 120a, seeking a dismissal of Ms. Horchow's claims for lack of personal jurisdiction. On September 18, 2024, the matter was consolidated with Ms. Horchow and Mr. Fearon's pending divorce matter, *Regen Fearon et al. vs. Jeffrey Fearon*, DF-19-21053.

57. On April 11, 2025, Ms. Horchow and Mr. Fearon reached a mediated settlement related to their divorce matter. The Club is not a party to the settlement and the settlement does not address the ownership of Ms. Horchow's membership.

58. On April 11, 2025, Ms. Horchow filed a Notice of Partial Nonsuit Without Prejudice in the action identified as DF-19-21053. The Notice dismisses any and all claims asserted against The Club in that matter, without prejudice as to the refiling.

### The Club's Bad Faith and Retaliatory Expulsion of Ms. Horchow

59. On October 10, 2024, in retaliation for Ms. Horchow's efforts to protect her contractual rights, doubling down on their clear preferential treatment of her male ex-husband, and in clear violation of the Membership Plan, The Club informed Ms. Horchow that she was expelled from The Club. *See* Exhibit 7.

60. In support, The Club relied on Ms. Horchow's supposed violation of a Membership Plan provision that "[t]he Club will not become involved in disputes regarding any membership in The Club" (the "Disputes Provision").

61. The Club's reliance on that provision is unsupported. Ms. Horchow did not "involve The Club" in her dispute with Mr. Fearon. Rather, Ms. Horchow exercised her rights to

11

seek relief for The Club's blatant violation of the Membership Plan and preferential treatment of her male ex-husband, by assigning her membership to Mr. Fearon. Nothing in the Disputes Provision immunizes The Club from legal action concerning its own conduct.

62. Following notice of her expulsion, Ms. Horchow abided by The Club's requirements to appeal her expulsion internally. Most recently, on January 29, 2025, The Club's Appeal Committee affirmed The Club's expulsion of Ms. Horchow.

### Ms. Horchow's Loss of The Membership Deposit

63. At the time Ms. Horchow applied and was accepted at The Club, her father paid the Membership Deposit of $125,000 on her behalf.

64. Ms. Horchow subsequently paid annual dues to the Westmoor, ranging from $5,000 to $7,500 annually.

65. The Membership Plan sets forth that following a Member's resignation from The Club, the membership will be resold at the current Membership Deposit rate. Following resale of the membership, The Club will pay the resigned member 80% of the Membership Deposit received following the resale of the membership.

66. Upon information and belief, the current Membership Deposit for a Regular membership at The Club is $690,000 and there is a waitlist for memberships. `

67. As a Member, Ms. Horchow was entitled to resign her membership and receive 80% of the proceeds from the resale of her Membership Deposit.

68. Upon information and belief, Ms. Horchow is entitled to receive $552,000 based on The Club's current member rate.

69. Upon information and belief, The Club's expulsion of Ms. Horchow in violation of the Membership Plan is a bad faith attempt to avoid paying Ms. Horchow the $552,000 it would otherwise be required to pay her.

## COUNT I
### Breach of Contract

70. The allegations of paragraph 1 through 69 of this Complaint are repeated and realleged as it fully sets forth herein.

71. The Membership Plan constitutes a binding contract between Ms. Horchow and The Club.

72. The Club breached the terms of the Membership Plan by, among other things, transferring the membership to Ms. Horchow's ex-husband, without Ms. Horchow's consent, and improperly expelling Ms. Horchow, in breach of the terms of the Membership Plan.

73. As a direct and proximate result of The Club's breach, Ms. Horchow has been deprived of the benefit of her membership.

74. As a direct and proximate result of The Club's breach, Ms. Horchow has suffered, and will continue to suffer, damages, costs, and other losses in an amount to be proven at trial.

## COUNT II
### Breach of the Implied Covenant of Good Faith and Fair Dealing

75. The allegations of paragraph 1 through 74 of this Complaint are repeated and realleged as it fully sets forth herein.

76. All contracts in Massachusetts contain an implied covenant of good faith and fair dealing.

77. The Club's above-described action breached the implied covenant of good faith and fair dealing by preventing Ms. Horchow from enjoying the benefits to which she was entitled under

the parties' contract for its own benefit, and by attempting to circumvent the refund provisions of the Membership Plan.

78. As a direct and proximate result of The Club's breach of the implied covenant of good faith and fair dealing, Ms. Horchow has suffered, and will continue to suffer, damages, costs, and other losses in an amount to be proven at trial.

### COUNT III
### M.G.L. c. 93A

79. The allegations of paragraph 1 through 78 of this Complaint are repeated and realleged as it fully sets forth herein.

80. In its handling Ms. Horchow's membership, The Club engaged in the following unfair and deceptive practices:

   a. Failing to abide by the terms of the Membership Application designating Ms. Horchow as the "Member," and instead recognizing Mr. Fearon's claim to the membership;

   b. Inconsistently applying the Membership Plan to refuse to confirm Ms. Horchow's status as the "Member," while explicitly recognizing Mr. Fearon's contrary claim; and

   c. Misapplying the terms of the Membership Plan to expel Ms. Horchow and withhold the Membership Deposit refund otherwise due to Ms. Horchow based on Ms. Horchow's attempts to protect her legal rights and interests.

81. The acts and practices engaged in by The Club in handling Ms. Horchow's membership and expelling her from the membership when Ms. Horchow sought to protect her legal rights constitute unfair and deceptive acts and practices within the meaning of M.G.L. c. 93A, §§ 2 and 9.

82. On February 7, 2025, Ms. Horchow served a G.L. c. 93A demand letter on The Club. The Club did not make a reasonable offer of settlement.

83. As a result of The Club's use or employment of unfair and deceptive acts and practices, Ms. Horchow has suffered, and continues to suffer, loss of money or property.

84. The Club's unfair and deceptive acts and practices were done willfully and knowingly, in violation of M.G.L. c. 93A, §§ 2 and 9.

85. Ms. Horchow is entitled to double or treble damages and reasonable attorneys' fees under Mass. Gen. Laws ch. 93A § 9.

## PRAYERS FOR RELIEF

**WHEREFORE**, the Ms. Horchow demands judgment on Counts I–III as follows:

(a) awarding Ms. Horchow damages in such amount as this Court may determine that the Ms. Horchow has sustained as a result of The Club's breach of contract, breach of the implied covenant of good faith and fair dealing, and violations of 93A; and

(b) such other and further relief as to which this Court determines the Ms. Horchow is entitled.

**DEMAND FOR JURY TRIAL**

Ms. Horchow hereby requests a trial by jury on any and all claims so triable.

                          Respectfully submitted,

                          REGEN HORCHOW
                          By its attorneys,

                          */s/ John L. Gavin*
                          Christopher L. Nasson (BBO# 669401)
                          christopher.nasson@klgates.com
                          Hayley Trahan-Liptak (BBO# 692412)
                          hayley.trahan-liptak@klgates.com
                          John L. Gavin (BBO# 705385)
                          john.gavin@klgates.com
                          K&L Gates LLP
                          One Congress Street
                          Suite 2900
Dated: April 17, 2025             Boston, Massachusetts 02114