# **Exhibit 6**



**Deposition of:**   Kitty Goldsmith

**Case:**   Regen Horchow v. The Westmoore Club, LLC and Jeffrey Fearon

**Date:**   5/29/2024

**Prepared by:**

Elite Deposition Technologies, Inc.
400 N. Saint Paul Street, Suite 1340
Dallas, TX 75201
866-896-2626
www.elitedeps.com
deps@elitedeps.com

```
 1                    CAUSE NO. DC-23-13481
 2    REGEN HORCHOW,                ) IN THE DISTRICT COURT
                                    )
 3         Plaintiff,                )
                                    )
 4    VS.                           ) DALLAS COUNTY, TEXAS
                                    )
 5    THE WESTMOORE CLUB, LLC,      )
      and JEFFREY FEARON,           )
 6                                   )
           Defendants.              ) 191ST JUDICIAL DISTRICT
 7
 8
 9
10
11    ----------------------------------------------------------
                           ORAL DEPOSITION OF
12                         KATHERINE GOLDSMITH
                             MAY 29, 2024
13                        (REPORTED REMOTELY)
      ----------------------------------------------------------
14
15
16
17
18         ORAL DEPOSITION OF KATHERINE GOLDSMITH, produced as
19    a witness at the instance of the Plaintiff, and duly
20    sworn, was taken in the above-styled and numbered cause
21    on MAY 29, 2024, from 11:01 a.m. to 12:28 p.m., before
22    Jodi Goodman, CSR, RPR, CRR, CRC in and for the State of
23    Texas, reported by machine shorthand, via Zoom
24    Videoconference, pursuant to the Texas Rules of Civil
25    Procedure.
```

```
 1                  A P P E A R A N C E S

 2   FOR THE PLAINTIFF:
         Ms. Melissa Miles
 3       FRIEDMAN & FEIGER, LLP
         SBOT NO. 90001277
 4       17304 Preston road
         Suite 300
 5       Dallas, Texas   75252
         972-788-1400
 6
     FOR THE DEFENDANTS:
 7       Mr. Ross H. Parker
         MUNSCH HARDT KOPF & HARR, P.C.
 8       SBOT NO.  24007804
         500 N. Akard Street
 9       Suite 4000
         Dallas, Texas 75201
10       214-855-7511

11   ALSO PRESENT:
          Ms. Regen Horchow
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                            INDEX

 2                                                        PAGE

 3   Appearances....................................  2

 4   KATHERINE GOLDSMITH
         Examination by Ms. Miles...................  4
 5
     Signature and Changes..........................57
 6   Reporter's Certificate.........................59

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    P R O C E E D I N G S
 2                       MAY 29, 2024
 3              (Deposition commenced at 11:01 a.m.)
 4              THE REPORTER:  If you will raise your right
 5   hand for me, I'll swear you in.
 6              (Witness sworn)
 7              THE REPORTER:  Thank you, go ahead.
 8              MR. PARKER:  You want appearances for the
 9   record?
10              THE REPORTER:  Sure, go ahead.
11              MR. PARKER:  I'm Ross Parker here on behalf
12   of the witness, Ms. Kitty Goldsmith, as counsel for the
13   Westmoore Club, LLC, and this deposition is being given
14   subject to the special appearance filed by The Westmoore
15   Club and pursuant to the order entered by Judge Tillery
16   on April 1st, 2024, regarding special appearance and a
17   hearing on same.
18              MS. MILES:  Good morning.  Melissa Miles.
19   I'm here on behalf of the Plaintiff, Regen Horchow, and
20   my client, Regen Horchow, is also attending the
21   deposition.
22              Are we ready?
23              THE REPORTER:  I'm ready.
24              MS. MILES:  Great.
25                    KATHERINE GOLDSMITH,
```

```
 1  having been first duly sworn, testified as follows:
 2                         EXAMINATION
 3  BY MS. MILES:
 4      Q.  Ms. Goldsmith, you -- you heard me introduce
 5  myself.  My name is Melissa Miles and I'm representing
 6  Regen Horchow in this matter.  Appreciate you being here
 7  this morning.  Can you please state and spell your full
 8  legal name for the court reporter?
 9      A.  Katherine, K-A-T-H-E-R-I-N-E, Goldsmith,
10  G-O-L-D-S-M-I-T-H.
11      Q.  And what is your -- the address of your primary
12  residence, Ms. Goldsmith?
13      A.  Primary residence is 201 Grenville Road, Hobe
14  Sound, Florida, 33455.
15      Q.  And do you maintain a residence in Nantucket?
16      A.  Yes.
17      Q.  And what's the address of your residence in
18  Nantucket?
19      A.  86 Pocomo, P-O-C-O-M-O, Road, Nantucket.
20      Q.  And do you have an e-mail address,
21  Ms. Goldsmith?
22      A.  Yeah, it's kittygoldsmith@gmail.
23      Q.  And do you have a cell phone number,
24  Ms. Goldsmith?
25      A.  508-680-6748.
```

```
 1        Q.   And 508, is that a Florida area code?
 2        A.   That's a Massachusetts area code.
 3        Q.   Have you ever lived in Texas, Ms. Goldsmith?
 4        A.   No.
 5        Q.   Have you ever given a deposition before?
 6        A.   Not that I recall.
 7        Q.   Well, I want to start by explaining a little
 8   bit about the deposition process.  A deposition is
 9   giving sworn testimony.  You heard the court reporter
10   swear you in and it's just as if you were giving
11   testimony in court.  Have you ever given testimony in a
12   court case?
13        A.   Not that I recall.  Except as a guardian ad
14   litem, actually, I did.
15        Q.   Okay.  So if you give testimony in that case or
16   saw someone give testimony in that case, you know, they
17   often get up on a witness stand.  They're sworn in and
18   they give sworn testimony and this is the same as that.
19   Your testimony has the same effect.  It's being taken
20   down word for word by a court reporter.  We're just not
21   inside a courtroom, but it has all the same effect.  The
22   Judge is not here to rule on objections today, but if --
23   if the case presents itself, the Judge will rule on
24   objections later in the case.
25             So you're going to hear -- you may hear me
```

```
 1  make an objection.  You may hear the lawyer for the
 2  Westmoore, Mr. Parker, make objections, and those are
 3  just for the record, and then unless Mr. Parker
 4  instructs you not to answer the question, then you'll be
 5  expected to answer the question and then we'll just move
 6  forward.
 7              And so given that the -- everything is
 8  being taken down by a court reporter I'm going to ask
 9  you to do a few things for me and see if I can get your
10  agreement on a few things.  And the first thing is for
11  us not to talk over each other.  Will you agree to let
12  me finish my question completely before you answer even
13  though you may know the answer before I get to the end
14  of my statement?  It just makes it easier for the court
15  reporter.
16       A.   Yes.
17       Q.   Thank you.  And is there anything that you know
18  of that we should be aware of that would prevent you
19  from being able to give accurate and truthful testimony
20  today?
21       A.   Is there anything what?
22       Q.   Anything that you know of for -- I'll give you
23  an example.  Some people are on medication and they're
24  aware that it affects their -- their memory or their
25  ability to think clearly, maybe, in the morning.  Are
```

1  you taking any medication that would tend to have that
2  effect that you're aware of?
3      A.  No.
4      Q.  Anything else that you can think of that might
5  affect your ability to give accurate and truthful
6  testimony today?
7      A.  No.
8      Q.  I'm going to be asking you some questions for
9  the next couple of hours, Ms. Goldsmith, and when I do,
10 if you don't understand the question, will you agree
11 with me that you'll tell me that you don't understand it
12 and give me an opportunity to -- to restate the
13 question?  Will you agree with me to do that?
14     A.  Yes.
15     Q.  And if you don't hear my question, will you
16 agree with me that you'll just ask me to repeat it?
17     A.  Yes.
18     Q.  And will it be fair to assume that if you
19 answer my question without saying that you don't
20 understand the question or you didn't hear it clearly,
21 that we can rely on -- on your answer to the question,
22 we can assume that you -- that you heard and understood
23 the question?
24     A.  Yes.
25     Q.  And when I say Westmoore in this case -- and

1  this is just sort of for purposes of shorthand.  When I
2  say Westmoore, will you understand me to be referring to
3  The Westmoore Club, LLC, who is a Defendant in this
4  case?
5      A.  Yes.
6      Q.  And tell me, what is your connection to
7  Westmoore?
8      A.  I'm married to the owner.
9      Q.  But you, yourself, are not an owner?
10     A.  No.
11     Q.  And what is your -- is it your husband?
12     A.  Yes.
13     Q.  What's your husband --
14     A.  Graham Goldsmith.
15     Q.  Graham?  Does Graham Goldsmith own the
16  Westmoore today?
17     A.  Yes.
18     Q.  Is Graham the only owner of the Westmoore?
19     A.  No.
20     Q.  Who are the other owners today of the
21  Westmoore?
22     A.  Al Worden.
23     Q.  Worden?
24     A.  W-O-R-D-E-N.
25     Q.  W-O-R-D-E-N?

1       A.   N.

2       Q.   N as in Nancy?

3       A.   Yes.

4       Q.   Are there any other owners besides Graham and
5  Al Worden?

6       A.   No.

7       Q.   And in 2004 did Al Worden own part of the
8  Westmoore?

9       A.   Yes.

10      Q.   So have Graham and Al been the only -- been the
11 only owners of the Westmoore since its inception?

12      A.   Yes.

13      Q.   And do Graham and Al Worden own the Westmoore
14 50/50 or what -- or some other split?

15      A.   No, Graham owns 75%.

16      Q.   And Al owns 25%?

17      A.   Yes.

18      Q.   And are they direct owners as in members of the
19 LLC or do they use entities?

20      A.   I assume they're direct owners.  I'm not sure.
21 I don't have the agreement in front of me.

22      Q.   And when was the Westmoore established?

23      A.   2004.

24      Q.   And is it a private club?

25      A.   Yes.

1    Q.  (BY MS. MILES)  Oh, you don't know?

2    A.  No.

3    Q.  Is it that you can't read the word

4  Regenh@aol.com?

5    A.  I don't know that it's her e-mail.  I don't

6  know that it's her e-mail.

7    Q.  Does it look -- so that e-mail looks more to

8  you like it would belong to Jeff Fearon.  Is that your

9  testimony?

10         MR. PARKER:  Objection; form.

11   Q.  (BY MS. MILES)  Ms. Goldsmith, is that your

12  testimony?

13   A.  I don't know if that's her e-mail or not is my

14  testimony.

15   Q.  Would you agree with me that common sense --

16  that if one uses common sense, the e-mail address given

17  as the applicant's e-mail address would appear to belong

18  to Regen versus --

19   A.  Yes.

20   Q.  -- Jeff?

21   A.  Common sense, yes.  But I don't know it for a

22  fact.

23   Q.  Well, would you agree with me that if you look

24  at the membership application where the applicant is

25  listed as Regen Fearon, the common sense would tell you

```
 1  that Regen Fearon was the applicant.  True?
 2      A.  Yes.
 3      Q.  And if one checks the references in this
 4  membership application, and you learn that Jeff
 5  Horchow -- or I'm sorry -- Jeff Fearon was not and had
 6  never been a member at Nantucket Yacht Club, what is
 7  common sense -- what does common sense tell you about
 8  whose application this is?
 9              MR. PARKER:  Objection; form.
10      Q.  (BY MS. MILES)  You can answer.
11      A.  Her name is the applicant.
12      Q.  It tells you that it's Regen -- it tells you
13  that it's Regen's application.  True?
14              MR. PARKER:  Objection; form.
15      Q.  (BY MS. MILES)  True, Ms. Goldsmith?
16      A.  Yes.
17      Q.  Yes.
18      A.  It's her name on the application, but it's up
19  to the -- the lawyers who do all the club documents to
20  determine whose membership it is.  Not --
21      Q.  So the lawyers -- do lawyers decide who is
22  admitted for membership?  Is that the lawyers' decision?
23      A.  No.
24      Q.  You told me early on in this deposition that it
25  was a process of you and your husband and Peter Hicks
```