UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| REGEN HORCHOW, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 1:25-cv-11008 |
| THE WESTMOOR CLUB, LLC, | ) |
| Defendant. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF THE WESTMOOR CLUB, LLC'S MOTION TO DISMISS**

**i. Introduction**

Pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 12(b)(7), the Westmoor Club, LLC (the "Club") is moving to dismiss Regen Horchow's ("Ms. Horchow") Complaint (the "Complaint") because it asks this Court substantively to review and reverse an internal decision of the Club, which is not a viable claim as a matter of law. Specifically, Ms. Horchow complains that the Club, a private club in Nantucket, Massachusetts, should not have expelled her as a member, but "'courts do not investigate the question whether [a club] decision was right or wrong, but go no further than to ascertain whether the essential formalities required by the constitution and by-laws of the association have been complied with[.]'" Savill v. Fort Norfolk Yacht Club, Inc., 83 Mass. App. Ct. 1130 (2013) (Rule 1:28 decision)[1] (quoting Richards v. Morison, 229 Mass. 458, 461 (1918)). Ms. Horchow has nowhere alleged that the Club did not comply with its own formalities when expelling her, so even accepting the Complaint's

---

[1] For the convenience of the Court, a copy of Savill is attached as Exhibit A, hereto.

1

allegations as true, she has not stated a cognizable claim.

The Club expelled Ms. Horchow and her ex-husband, Dr. Jeffrey Fearon ("Dr. Fearon"), for violating the Club's Membership Plan by failing to timely inform the Club of their divorce and then embroiling the Club in their post-divorce litigation over which of them was the true "Member." See Complaint, Exhibit ("Ex.") 7. Even though the Club expelled them both, and although they have long since divorced, Ms. Horchow and Dr. Fearon have still not resolved who owned the Club membership. See id., ¶ 57 (alleging that their recent settlement of their divorce matter "does not address the ownership of Ms. Horchow's membership"). In light of the expulsion, Ms. Horchow's additional claim that the Club improperly designated Dr. Fearon and not her as the "Member" is moot; indeed, she alleges no damages stemming from this supposed mis-designation. Given that Dr. Fearon also continues to assert that he, and not Ms. Horchow, was the "Member," Ms. Horchow's failure to join Dr. Fearon, who is, indeed, an indispensable party, is a separate reason under Fed. R. Civ. P. 12(b)(7) for this Court to dismiss the Complaint. See also Fed. R. Civ. P. 19(a).

Therefore, as more fully argued below, the Court should dismiss the Complaint for the following reasons: (1) Ms. Horchow's claim for judicial review of the Club's expulsion decision is not a valid claim as a matter of law and the Complaint alleges no procedural improprieties by the Club to support her causes of action; (2) Ms. Horchow's claims concerning the supposed mis-designation of Dr. Fearon as the Member are moot; and (3) Ms. Horchow's failure to join an indispensable party – Dr. Fearon – requires dismissal because his joinder would destroy diversity jurisdiction.

**ii. Factual Background**

Taking the facts alleged in the Complaint as true, the Complaint alleges as follows:

Ms. Horchow lives in Dallas, Texas and was a member of the Club for many years until the Club expelled her and her ex-husband, Dr. Fearon. See Complaint, ¶ 3, Ex. 7 (October 10, 2024 letter from the Club to Ms. Horchow and Dr. Fearon expelling them from the Club for embroiling the Club in their personal dispute over ownership of the membership following their divorce). The Club is a Massachusetts limited liability company and is located in Nantucket, Massachusetts. See id., ¶ 4.

The Complaint begins with factual allegations aimed at establishing that Ms. Horchow was a primary "Member" of the Club and her then-spouse, Dr. Fearon, was the member's spouse. See id., ¶¶ 7-26. The Complaint claims the Club knew that Ms. Horchow was the primary member of the membership. See id., ¶ 27. Dr. Fearon, however, is the one who signed the Membership application as the "Applicant," and Ms. Horchow signed on the line for "Spouse Signature." See id., Ex. 1 at p. 4.

According to the Club's Membership Plan, "[m]emberships may only be owned individually." Id., Ex. 2 at p. 7. Additionally, the Membership Plan states that "[i]n the case of divorce of a married Member, the membership shall belong to the spouse designated on the Membership Application as the Member unless otherwise provided by agreement between the parties or by court order." Id., Ex. 2 at p. 11. The Membership Plan also makes clear that the Club will not become involved in disputes regarding any membership in the Club. See id., Ex. 2 at p. 12. Ms. Horchow was aware of these provisions of the Membership Plan at all relevant times. See id., ¶¶ 24-25.

The Complaint alleges that Ms. Horchow and Dr. Fearon divorced in 2019, but that she allowed Dr. Fearon to continue using the Club with their children. See id., ¶¶ 28, 30. Subsequently, in 2021, she had several conversations with the Club about Dr. Fearon's usage of

3

the Club membership and requested that the Club correct its listing of Dr. Fearon as the primary "Member," which she said was erroneous. See id., ¶¶ 32-36. Despite further entreaties from Ms. Horchow, the Club declined to make this requested correction through 2022. See id., ¶ 38.

In July 2022, a Club communication told Ms. Horchow that "the Membership Plan is specific about the membership being in one name and from what you are saying, the membership has been and is in your ex-husband's name. It is also specific about the Club not being involved in divorces or disputes." Id., Ex. 4 at p. 3. Thereafter, Ms. Horchow emailed the Club's General Manager, John Cowden, stating that she "made the mistake of getting [Mr. Fearon's] signature on the top line instead of my own[,]" id., Ex. 5 at p. 3, and requested that the Club "delay an official notice and allow us to maintain the shared membership for another year, I believe that I can discuss the membership situation with [Dr. Fearon], determine which of us will keep it and resolve the issue between us without a legal battle and without involving the club." Id., Ex. 4 at p. 3. The Club agreed to defer suspending the membership until the 2023 season at Ms. Horchow's request to allow her sufficient time to reach an agreement with Dr. Fearon as to who would keep the membership. See id., Ex. 5 at p. 2, 4. Ms. Horchow and Mr. Fearon continued to share the Club membership (despite the Membership Plan prohibiting the sharing of memberships) until the summer of 2023 when the Club suspended them because Ms. Horchow and Mr. Fearon failed to resolve their membership dispute. See id., ¶ 39. The Complaint alleges that Ms. Horchow consented to this suspension. See id., ¶ 40. Later, the Complaint alleges, the Club reactivated Dr. Fearon's membership while maintaining Ms. Horchow's suspension; Ms. Horchow claims that the Club improperly transferred Ms. Horchow's membership to Dr. Fearon. See id., ¶¶ 42-44.

On August 29, 2023, Ms. Horchow sued the Club "in Texas alleging breach of contract,

4

civil conspiracy to defraud her of her contractual rights, privileges, and financial interests in the Westmoor Club" (the "Texas Litigation"). Id., ¶¶ 52-53. The Texas Litigation lasted nearly two years, during which time Ms. Horchow took the deposition of a Club advisor. See id., ¶¶ 53-58. The Complaint characterizes this advisor's deposition testimony as acknowledging that Ms. Horchow was the "Member." Id., ¶ 54.

On October 10, 2024, the Club expelled both Ms. Horchow and Dr. Fearon from the Club due to their violation of a Membership Plan provision that "[t]he Club will not become involved in disputes regarding any membership in The Club[.]" Id., ¶¶ 59-60; Ex. 2 at p. 12. The Complaint alleges that "Ms. Horchow abided by [t]he Club's requirements to appeal her expulsion internally[,]" after which, "on January 29, 2025, [t]he Club's Appeal Committee affirmed [t]he Club's expulsion of Ms. Horchow[.]" Id., ¶ 62.

Ms. Horchow did not attach to her Complaint the Appeal Committee's letter to Ms. Horchow affirming the Club's expulsion, but as Ms. Horchow references this document in her Complaint, the Court may consider this document without converting the motion into one for summary judgment. See Clorox Co. Puerto Rico v. Proctor & Gamble Com. Co., 228 F.3d 24, 32 (1st Cir. 2000) ("it is well-established that in reviewing the complaint, we may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint, without converting the motion into one for summary judgment") (internal citations and quotations omitted). The Club's Appeal Committee's letter states:

> the Appeal Committee found that the failure by you and your former husband to inform the Club promptly of your divorce, resulted in the two of you continuing to use the Club as if you were still married. This failure to be forthcoming was not only misleading, it eventually resulted in the two of you involving the Club in your dispute, which is a clear violation of the Club's Membership Plan conditions. You then compounded this violation by suing the Club in a foreign jurisdiction.' This

> conduct not only violated the Membership Plan, it was also contrary to your own representations to the Club on July 22, 2022 that you would "work out who retains the membership" by the following season "without any ramifications to the Club."

See the Club's Appeal Committee Letter, attached hereto as Exhibit B. This letter cites to and copies verbatim the following two provisions from the Membership Plan:

> **Separation and divorce.** In the event of separation, only the Member designated on the Membership Application will have the privileges of membership. In the case of divorce of a married Member, the membership shall belong to the spouse designated on the Membership Application as the Member unless otherwise provided by agreement between the parties or by court order. If the membership is awarded to the non-member spouse by settlement agreement or court order, the non-member spouse must apply and be approved for membership by the Club. In the event the non-member spouse is not approved for membership, the membership will be deemed resigned.
>
> **The Club will not become involved in disputes.** The Club will not become involved in disputes regarding any membership in the Club. In the case of such disputes, the Club may (but will not be required to) at any time, at its discretion, suspend all of the privileges associated with the membership in question until the dispute is resolved and the Club receives evidence, satisfactory to it, of the resolution of the dispute. During the dispute, all dues and charges must continue to be paid. Failure to pay all dues and charges may result in forfeiture of the membership. The Club may require any evidence it deems necessary to determine eligibility for use privileges and may terminate the use privileges of any person in order to prevent abuses of the intent of this Membership Plan.

Id.

On April 11, 2025, Ms. Horchow and Dr. Fearon reached a settlement related to the Texas Litigation, but left open and unresolved their dispute over which of them was the "Member" of the Club, meaning that each of them can separately pursue allegations against the Club that each is the true "Member." See Complaint, ¶ 57. Ms. Horchow dismissed her claims against the Club in the Texas Litigation without prejudice. See id., ¶ 58.

The Complaint alleges that Ms. Horchow's damages in this case are $552,000, which she calculated based upon the amount she claims she would be entitled to receive had she resigned from the Club *in lieu* of being expelled. See id., ¶¶ 65-68.

### iii. Argument

To avoid dismissal, a complaint must allege facts which, if proven, "raise a right to relief above the speculative level[.]" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 557 (2007). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). It is not enough for a complaint to plead facts that are "merely consistent with a defendant's liability," and thus would show only that it is possible, rather than plausible, that a claim is true. See Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). Likewise, it is not enough to plead conclusory allegations. See id. The complaint must "set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gooley v. Mobile Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988); see also DM Research, Inc. v. Coll. of Am. Pathologists, 170 F.3d 53, 55 (1st Cir. 1999) (explaining that the complaint must "allege a factual predicate concrete enough to warrant further proceedings").

This is a diversity case, see Complaint, ¶ 5, so this Court should apply Massachusetts state law in determining whether Ms. Horchow has stated a claim. See, e.g., Moore v. Indus. Demolition LLC, 138 F.4th 17, 29 (1st Cir. 2025) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); Hanna v. Plumer, 380 U.S. 460, 465 (1965) ("The broad command of Erie was . . . [that] federal courts are to apply state substantive law and federal procedural law."); see also Orkin v. Albert, 729 F. Supp. 3d 194, 209–10 (D. Mass. 2024) ("Massachusetts law determines the elements of the [breach of contract claim] because the case is properly before this Court based on diversity jurisdiction."). On a motion to dismiss, the Court sets forth the facts taking as true all well-pleaded allegations in the complaint and drawing all reasonable inferences in the

Plaintiffs' favor. See Morales-Tañon v. P.R. Elec. Power Auth., 524 F.3d 15, 17 (1st Cir. 2008).

Here, the Complaint's allegations concern two factual circumstances that Ms. Horchow avers were wrongful – (1) the Club improperly expelled her and (2) the Club unjustly transferred her membership from her to Dr. Fearon. In complaining about the expulsion, Ms. Horchow fails to identify any procedural wrongdoing by the Club; she merely disagrees with the Club's decision to expel her, which is a claim that is barred as a matter of law. In addition, her other allegations to the effect that the Club improperly transferred her membership to her ex-husband are now moot since the Club has expelled both Ms. Horchow and her ex-husband. Finally, Ms. Horchow's failure to join Dr. Fearon as a necessary party also requires dismissal because his joinder would destroy this Court's diversity jurisdiction. Therefore, as more fully argued below, the Court should dismiss the Complaint with prejudice.

**I.     MS. HORCHOW'S CLAIM FOR JUDICIAL REVIEW OF THE CLUB'S EXPULSION DECISION IS NOT A VALID CLAIM AS A MATTER OF LAW AND THE COMPLAINT ALLEGES NO PROCEDURAL IMPROPRIETIES BY THE CLUB TO SUPPORT HER CAUSES OF ACTION.**

The Complaint challenges the Club's grounds for expelling Ms. Horchow, arguing that the Club should not have revoked her membership for violating the Membership Plan. See Complaint, ¶¶ 59-60. It alleges that, in reality, the expulsion was "in retaliation for [her] efforts to protect her contractual rights, doubling down on [the Club's] clear preferential treatment of her male ex-husband, and in clear violation of the Membership Plan[.]" Id., ¶ 59. Her claimed damages are the amount that the Club would pay her if she had resigned before being expelled – an amount she calculates as $552,000. See id., ¶¶ 67-68. These are conclusions rather than factual statements but, even so, Ms. Horchow has failed to state a claim.

As is well-settled in Massachusetts, "judicial review of membership decisions made by private clubs is limited." Savill v. Fort Norfolk Yacht Club, Inc., 83 Mass. App. Ct. 1130 (2013)

(Rule 1:28 decision). "'The courts do not investigate the question whether the decision was right or wrong, but go no further than to ascertain whether the essential formalities required by the constitution and by-laws of the association have been complied with[.]'" Id. (quoting Richards v. Morison, 229 Mass. 458, 461 (1918)). In other words, courts review whether the club followed its own procedures, but do not review the substance of the decision. See, e.g., Casey v. Allen Harbor Yacht Club, Inc., No. 05-00417, 2007 WL 5578210, at *3 (Mass. Super. Oct. 11, 2007)[2] (citing, *inter alia*, Eustace v. Dickey, 240 Mass. 55, 83 (1921). The Court "must not serve as a board of general appeal to review the rationale of the club's conduct as it relates to the expulsion of members." Id. (quoting Richards, 229 Mass. at 461) (citing Snay v. Lovely, 276 Mass. 159, 163-64 (1931) ("Courts do not sit in review of decisions thus made by such officers, even though it may appear that there has been an honest error in judgment, an innocent mistake in drawing inferences or making observations, or a failure to secure all information available by a more acute and searching investigation"); Eustace, 240 Mass. at 83 ("The judgment of the court cannot be substituted for the discretion of the constituted authorities, when fairly exercised")).

Given this precedent, Ms. Horchow has failed to state a claim for breach of contract (Count I), breach of the covenant of good faith and fair dealing (Count II), or violation of G.L. c. 93A (Count III), so the Court should dismiss the Complaint in its entirety.

### A. Ms. Horchow Fails to State a Claim for Breach of Contract (Count I)

Ms. Horchow claims that the Club breached a contract, *i.e.*, the Membership Plan, but she has not alleged facts to support that claim or even identified the Membership Plan provision she thinks the Club breached. At a minimum, Ms. Horchow is required to "explain what obligations were imposed on each of the parties by the alleged contract." Buck v. Am. Airlines, Inc., 476

---

[2] For the convenience of the Court, a copy of Casey is attached hereto at Exhibit C.

9

F.3d 29, 38 (1st Cir. 2007) (quoting Doyle v. Hasbro, Inc., 103 F.3d 186, 195 (1st Cir. 1996)). For her claim to survive, Ms. Horchow "must do more than allege, in conclusory fashion, that the defendant breached the contract, by describing, with substantial certainty, the specific contractual promise the defendant failed to keep[.]" Brooks v. AIG SunAmerica Life Assur. Co., 480 F.3d 579, 586 (1st Cir. 2007) (internal quotations and citations omitted). She has not done so.

Indeed, Ms. Horchow nowhere alleges that the Club failed to comply with its own procedures as she is required to do to state a claim here. See, e.g., Casey, 2007 WL 5578210, at *3 (Exhibit C, hereto) (emphasizing that courts review "procedures followed by the club, but not the substance of its decision"). On the contrary, Ms. Horchow has alleged that the Club complied with its own procedures. See Complaint, ¶ 62. At best, Ms. Horchow is arguing that the Club should not have expelled her for involving the Club in her dispute with Dr. Fearon. This fails to state a claim, especially given that the Membership Plan explicitly states that the Club "may terminate the use privileges of any person in order to prevent abuses of the intent of this Membership Plan." Complaint, Ex. 2 at p. 8.

By becoming a member of the Club, Ms. Horchow agreed to be bound by its rules and subject to its discipline. See Reed v. Zipcar, Inc., 883 F. Supp. 2d 329, 336 (D. Mass. 2012), aff'd, 527 F. App'x 20 (1st Cir. 2013); see also Casey, 2007 WL 5578210, at *3 (Exhibit C, hereto), citing Richards, 229 Mass. at 460 ("By joining a private organization, the plaintiff agreed to the organization's disciplinary rules and thereby accepted liability for expulsion, when ordered in accordance with the organization's rules"); see also Snay, 276 Mass. at 163–64 ("As an incident of membership [plaintiff] consented to be suspended or expelled in accordance with the constitution and rules of the union by its appropriate officers acting in good faith and in conformity to natural justice."). The Membership Plan specifies:

10

> Any Member whose conduct shall be deemed by the Club, in its sole judgment, to be improper or likely to endanger the safety, harmony or good reputation of the Club or of its members, may be reprimanded, fined, restricted from using certain Club Facilities, suspended or expelled from the Club….The Club reserves the right to discipline a Member, and a Member's Family Members, or guest, in accordance herewith, for any other cause deemed sufficient by the Club…. Any Member against whom disciplinary action is being considered will be notified either verbally or in writing of any proposed action and will be given an opportunity to be heard by the Club to show cause why he or she should not be disciplined. If the Member desires to be heard, the member must provide a written request for a hearing to the Club within fifteen (15) days of the date of the Club's notice to the Member of the proposed action. Upon the Club's receipt of the written request for a hearing, the Club will set a time and date not less than ten (10) days thereafter for such hearing. … Upon the expulsion of a Member, the Member will forfeit the membership and will not be entitled to any refund of his or her Membership Deposit unless the Club determines, in its sole discretion, that refund of some portion of the Membership Deposit is appropriate.

Complaint Ex. 2 at p. 14-15. The Club notified Ms. Horchow of its decision to expel her on October 10, 2024. See id., ¶ 59, Ex. 7. Ms. Horchow subsequently appealed the Club's disciplinary decision, submitting a letter to the Club and attending a hearing before the Club's Appeal Committee. See id., ¶ 62. The Appeal Committee affirmed the Club's expulsion of Ms. Horchow. See id.; see also Exhibit B. Ms. Horchow was given a fair chance to present her side of the story to the Club, and the Appeal Committee affirmed that her expulsion was proper based on specific and well-supported allegations that the Complaint does not even dispute. See id.

Ms. Horchow's Complaint admits that she "allowed Dr. Fearon to share the Westmoor Club membership" after their divorce, which was a violation of the Membership Plan policies. Complaint, ¶ 30; Ex. 2 at p. 11 ("Separation and divorce"). Additionally, Ms. Horchow violated the Club's rules when she continuously attempted to entangle the Club in her membership dispute with Mr. Fearon. Per the Membership Plan, "[t]he Club will not become involved in disputes regarding any membership in the Club." Id., Ex 2 at p. 12. Ms. Horchow's endless efforts to force the Club to become involved in her and Dr. Fearon's membership dispute is the

11

reason the Club expelled both Ms. Horchow and Dr. Fearon.

Ms. Horchow's allegation that the Club gave preferential treatment to her ex-spouse is belied by the Complaint itself, the exhibits to which confirm that the Club expelled both Dr. Fearon *and* Ms. Horchow. See id., Ex. 7. Ms. Horchow's own Complaint confirms that she and her ex-husband received the same sanction from the Club, so she has not articulated any preferential treatment. Count I of the Complaint fails to state a claim and this Court should dismiss it.

> **B.  Ms. Horchow Fails to State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing**

Given that Count I fails, Count II for breach of the implied covenant of good faith and fair dealing should also fail, for this covenant "does not create rights and duties beyond those the parties agreed to when they entered the contract" . . . "a party cannot weaponize the implied covenant in a manner that contradicts the plain terms of a contract." Lanza v. Fin. Indus. Regul. Auth., 953 F.3d 159, 164 (1st Cir. 2020). As is clear from the allegations of the Complaint and the exhibits thereto, Ms. Horchow "received all of the procedures entitled to [her] by the terms of [her] membership agreement. The implied covenant of good faith and fair dealing does not give this Court the right to invade the inner workings of private associations." Casey, No. 05-00417, 2007 WL 5578210, at *5 (Exhibit C, hereto) (citing Snay, 276 Mass. at 163). Conduct that does not breach the underlying contract, as a matter of law, does not breach the covenant of good faith and fair dealing.

Ms. Horchow rests her claim for breach of the covenant on allegations that the Club prevented her "from enjoying the benefits to which she was entitled under the parties' contract for its own benefit, and by attempting to circumvent the refund provisions of the Membership Plan." Complaint ¶ 77. The Membership Application specified that "[u]pon the expulsion of a

Member, the Member will forfeit the membership and will not be entitled to any refund of his or her Membership Deposit unless the Club determines, in its sole discretion, that refund of some portion of the Membership Deposit is appropriate." Id. Ex. 2 at p. 14-15. The Club expelled Ms. Horchow in accordance with the policies and procedures within the Membership Plan. Ms. Horchow cannot plausibly claim that the Club's decision to expel her and refusal to refund the Membership Deposit violated her reasonable expectations. See Lanza, 953 F.3d at 165. Ms. Horchow agreed to be bound by the terms of the Membership Plan, and, per the Membership Plan, upon her expulsion, she forfeited the Membership Deposit. Therefore, the Court should dismiss Count II as well.

      **C.**     **Ms. Horchow Fails to State a Claim for Violation of G.L. c. 93A**

Count III for violation of G.L. c. 93A fares no better. Given that Ms. Horchow has failed to state a claim for breach of contract, her claim for violation of c. 93A based upon those same allegations should not survive. See, e.g., Cutler v. Flagship Bank & Tr. Co., 65 Mass. App. Ct. 1123 (2006) (Rule 1:28 decision)[3] (finding "no breach of contract and no misrepresentation on the bank's part; as such, the trust's c. 93A claim, based on the same underlying events, was properly dismissed as well"), (citing Cantell v. Hill Holliday Connors Cosmopulos, Inc., 55 Mass. App. Ct. 550, 556 (2002)).

Moreover, nothing alleged in the Complaint comes anywhere close to articulating a viable claim for violation of Chapter 93A. Ms. Horchow has provided no factual basis to establish liability of the Club under the demanding Chapter 93A statute. See Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 11 (1st Cir. 2007) ("A chapter 93A claimant must show that the defendant's actions fell within at least the penumbra of some common-law, statutory, or other

---

[3] For the convenience of the Court, a copy of Cutler is attached as Exhibit D, hereto

13

established concept of unfairness, or were immoral, unethical, oppressive, or unscrupulous, and resulted in substantial injury) (internal citations and quotations omitted). The plaintiff must prove that the breach was motivated by some "'pernicious purpose,' an 'ulterior motive,' or a 'coercive or extortionate objective.'" Cyran v. Sovereign Bank, No. CIV.A. 07-40263-FDS, 2008 WL 2510146, at *6 (D. Mass. June 10, 2008)[4] quoting Framingham Auto Sales, 41 Mass. App. Ct. 416, 418 (1996); Govoni & Sons Constr. Co. v. Mechanics Bank, 51 Mass. App. Ct. 35, 51 (2001) ("The actions of defendant need to fit 'within a common law conception of unfairness [and must be] immoral, unethical, oppressive, or unscrupulous' in order to support a Ch. 93A claim").

Ms. Horchow alleges that the Club violated Chapter 93A by "[f]ailing to abide by the terms of the Membership Application designating [her] as the 'Member,' and instead recognizing Mr. Fearon's claim to the membership[.]" Complaint ¶ 80.a. It is well settled that "the mere breach of a contract, without more, does not amount to Chapter 93A violation." Zurich Am. Ins. Co. v. Watts Regul. Co., 796 F. Supp. 2d 240, 244 (D. Mass. 2011) (internal citations and quotations omitted). An alleged failure to abide by the terms of the Membership Application amounts to a simple breach of contract claim that lacks the "egregious" and "extortionate quality that gives [the claim] the rancid flavor of unfairness that Chapter 93A requires." Id.

Similarly, the Complaint fails to establish that the Club "[i]nconsistently appl[ied] the Membership Plan to refuse to confirm Ms. Horchow's status as the 'Member,' while explicitly recognizing Mr. Fearon's contrary claim." Complaint ¶ 80.b. Ms. Horchow does not dispute that she signed the Membership Application on the line designated for the member "Spouse," nor does she dispute that Mr. Fearon signed the Application on the line designated for the Member

---

[4] For the convenience of the Court, a copy of Cyran is attached as Exhibit E, hereto.

14

applicant. Indeed, Ms. Horchow admits to "getting [Dr. Fearon's] signature on the [Applicant] line instead of my own." Complaint Ex. 5 at p. 3. This admission belies Ms. Horchow's allegations that the Club failed to abide by the terms of the Membership Plan when it recognized Mr. Fearon as the primary Member. See Zurich Am. Ins. Co., 796 F. Supp. 2d at 245 (citing Clorox Co. P.R. v. Proctor & Gamble, 228 F.3d 24, 32 (1st Cir.2000) ("It is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations")). Furthermore, the Complaint fails to allege that the Club recognized her membership status as a member "Spouse" for an unlawful or malicious purpose, as it required under Chapter 93A. See Cyran, 2008 WL 2510146, at *6 (Exhibit E, hereto).

  Ms. Horchow's claim that the Club violated Chapter 93A by "[m]isapplying the terms of the Membership Plan to expel Ms. Horchow and withhold the Membership Deposit refund otherwise due to Ms. Horchow based on Ms. Horchow's attempts to protect her legal rights and interests" also fails. Complaint ¶ 80.c. As discussed above, the Club did not misapply the terms of the Membership Plan when it decided to expel Ms. Horchow. Even if the Club did misapply the terms of the Membership Plan (which it did not), a dispute over the interpretation of a contract does not constitute a Chapter 93A violation. See Zurich Am. Ins. Co., 796 F. Supp. 2d at 245 (citing Boston Symphony Orchestra, Inc. v. Commercial Union Ins. Co., 406 Mass. 7, 15-16 (1989)). The fact that the Club, in good faith, plausibly contends that it expelled Ms. Horchow in accordance with the terms of the Membership Plan belies Ms. Horchow's Chapter 93A claim. Likewise, the Club's withholding of the Membership Deposit was in line with the Club's Membership Plan. See Complaint Ex. 2 at p. 15. The Club's Membership Plan expressly states that "[m]embership should not be viewed or acquired as an investment and no person acquiring a membership should expect to derive any economic benefits or profits from the membership." Id.,

15

at p. 5. The Complaint fails to provide sufficient facts alleging that the Club acted in bad faith by withholding the Membership Deposit. Indeed, the Complaint asserts nothing more than a dispute about "whether money is owed," which is "not the stuff of which a [Chapter] 93A claim is made." Zurich Am. Ins. Co., 796 F. Supp. 2d at 244–45 (quoting Duclersaint v. Fed. Nat'l Mortg. Ass'n, 427 Mass. 809, 814 (1998)). Accordingly, Ms. Horchow's Chapter 93A claim must be dismissed.

## II. MS. HORCHOW'S CLAIMS CONCERNING THE SUPPOSED MIS-DESIGNATION OF HER EX-HUSBAND AS THE MEMBER ARE MOOT.

In addition to allegations that the Club improperly expelled her, the Complaint also alleges that the Club "independently determined to transfer the membership to Mr. Fearon[.]" Complaint, ¶ 50. As established, however, the Club has expelled both Ms. Horchow and Dr. Fearon; thus, were the Court to rule that the Club improperly transferred the membership from Ms. Horchow to Dr. Fearon, such a ruling would serve no purpose for there is no membership left for the Court to assign. Indeed, Ms. Horchow's alleged damages are based on her averment that, had she resigned from the Club, she would be entitled to the proceeds from the resale of the Membership Deposit; however, she alleges no damages relating to the Club's alleged improper transfer of the membership from her to Dr. Fearon. Id., ¶ 67. The "membership transfer" claim is, therefore, moot.

In assessing whether a claim is moot, "[t]he key question 'is whether the relief sought would, if granted, make a difference to the legal interests of the parties[.]'" Bos. Bit Labs, Inc. v. Baker, 11 F.4th 3, 8 (1st Cir. 2021) (quoting Air Line Pilots Ass'n, Int'l v. UAL Corp., 897 F.2d 1394, 1396 (7th Cir. 1990); see also Town of Portsmouth v. Lewis, 813 F.3d 54, 58 (1st Cir. 2016) (noting that a suit is moot "when the court cannot give any effectual relief to the potentially prevailing party") (internal citations and quotations omitted). "If the answer is no,

16

then the court is not really deciding a 'case,' and (if a federal court) it is therefore exceeding the power conferred on it by ... the Constitution." Bos. Bit Labs, Inc., 11 F.4th at 8 (internal citations and quotations omitted). Here, given that the membership no longer exists, and given that Ms. Horchow is alleging no harm arising from the supposedly improper membership transfer, this claim is moot. Therefore, the Court should not hesitate to dismiss all counts arising from this claim. See, e.g., Harris v. Univ. of Massachusetts Lowell, 43 F.4th 187, 191 (1st Cir. 2022) (affirming that claims concerning COVID regulations were moot once plaintiffs ceased to be students at university).

### III.    MS. HORCHOW'S FAILURE TO JOIN AN INDISPENSABLE PARTY – DR. FEARON – REQUIRES DISMISSAL BECAUSE HIS JOINDER WOULD DESTROY THIS COURT'S DIVERSITY JURISDICTION.

As is apparent from the Complaint, Ms. Horchow and Dr. Fearon are in an ongoing dispute over who was the actual owner of the Club membership. This dispute can only be resolved via settlement between Ms. Horchow and Dr. Fearon or via adjudication by a court – neither of which has occurred. Again, given the expulsion of both individuals, the Club maintains that the Court should dismiss the case for the reasons set forth above, but Ms. Horchow's failure to add Dr. Fearon as an indispensable defendant presents an independent reason for dismissal. Specifically, were a court or settlement agreement to determine that Dr. Fearon was the rightful "Member," then Ms. Horchow would have no right to bring any claims against the Club; those claims would belong to Dr. Fearon.

Given that Ms. Horchow's dispute is with Dr. Fearon, she must add him as a necessary defendant in this case. Dr. Fearon is also living in Texas, however, so adding him as an indispensable party would destroy diversity and this Court's jurisdiction. See Picciotto v. Cont'l Cas. Co., 512 F.3d 9, 17 (1st Cir. 2008) (internal citations omitted) ("When the court's subject

matter jurisdiction is grounded in diversity, the joinder of a nondiverse party is not feasible because such joinder destroys the court's subject matter jurisdiction").

Federal Rule of Civil Procedure 19 provides for joinder of required parties when feasible, Fed. R. Civ. P. 19(a), and for dismissal of suits when joinder of a required party is not feasible and that party is indispensable, Fed. R. Civ. P. 19(b). "Rule 19 deals with situations where a lawsuit is proceeding without a party whose interests are central to the suit." Phoenix Ins. Co. v. Delangis, No. CIV.A. 14-10689-GAO, 2015 WL 1137819, at *3 (D. Mass., Mar. 13, 2015)[5] (internal citations and quotations omitted). "When undertaking this analysis, the Court must take into account the policies underlying Rule 19, including the public interest in preventing multiple and repetitive litigation, the interest of the present parties in obtaining complete and effective relief in a single action, and the interest of absentees in avoiding the possible prejudicial effect of deciding the case without them." Id., quoting Picciotto v. Continental. Cas. Co., 512 F.3d 9, 15–16 (1st Cir.2008). A party is necessary under Rule 19(a) if

> (B) the absent party claims such an interest in the subject of the action that proceeding without the party may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Umuoji Improvement Union (N. Am.), Inc. v. Umuoji Improvement Union (N. Am.), Inc., 537 F. Supp. 3d 79, 87–88 (D. Mass. 2021) (citing Fed. R. Civ. P. 19(a)).

This is precisely the circumstance present here. Dr. Fearon still claims that he is the rightful, former member of the Club. Were this Court to award damages to Ms. Horchow, Dr. Fearon would still have a similar claim against the Club, creating a risk that the Club would be subject to double or inconsistent obligations. See id. Given that Dr. Fearon's joinder would

---

[5] For the convenience of the Court, a copy of Phoenix Ins. Co. is attached as Exhibit F, hereto.

destroy the diversity of this case – he and Ms. Horchow both reside in Texas – the Court should dismiss this case for this reason as well.

### iv. Conclusion

For the foregoing reasons, this Court should dismiss Ms. Horchow's Complaint in its entirety, with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 12(b)(7).

Respectfully submitted,

**THE WESTMOOR CLUB, LLC**

By its attorneys,

*/s/ Tyler E. Chapman*
Tyler E. Chapman (BBO #
Meghan E. Huggan (BBO # 708122)
TODD & WELD LLP
One Federal Street, 27th Floor
Boston, MA 02110
(617) 720-2626
tchapman@toddweld.com
mhuggan@toddweld.com

Dated: June 17, 2025

### CERTIFICATE OF SERVICE

I, Meghan E. Huggan, hereby certify that this document has been filed through the ECF system and will be sent electronically to the registered participants as identified on the notice of Electronic Filing (NEF).

*/s/ Meghan E. Huggan*
Meghan E. Huggan