IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| REGEN HORCHOW, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.: 1:25-CV-11008-WGY |
| ) | |
| THE WESTMOOR CLUB, LLC, ) | |
| ) | |
| Defendant. ) | |

**REGEN HORCHOW'S OPPOSITION TO
THE WESTMOOR CLUB'S MOTION TO DISMISS**

Plaintiff Regen Horchow, by her undersigned attorneys, submits the following Opposition to defendant The Westmoor Club, LLC's (the "Club") Motion to Dismiss (the "Motion").

**I.   INTRODUCTION**

Ms. Horchow's Complaint (the "Complaint") sets forth a straightforward account of the Club breaching a contract and engaging in other misconduct. Ms. Horchow was a long-time member of the Club in good standing since her late father purchased a membership for her in 2004. Compl. at ¶ 10. Prior to her admission to the Club, Ms. Horchow completed a membership application that identified her as the applicant and listed her personal information where required of a prospective member. Compl. at ¶¶16–19. She listed her now ex-husband, Jeffrey Fearon ("Mr. Fearon"), as her spouse. When the Club received her membership deposit checks, the Club wrote Ms. Horchow's name on the top. Compl. at ¶ 22. The Club's membership plan (the "Membership Plan") governed Ms. Horchow's membership. Ms. Horchow paid the Club dues for the nineteen years she maintained the membership. When Ms. Horchow and Mr. Fearon divorced, Ms. Horchow continued to be the Club's point of contact regarding the membership. Compl. at

¶¶ 32–40. Around this time, Ms. Horchow noticed the Club had improperly listed Mr. Fearon as the member in a club directory. When she sought to correct this mistake, the Club repeatedly deferred, claiming it would not get involved. At Ms. Horchow's request, the membership was suspended in February 2023 while she and Mr. Fearon worked to resolve their divorce. Compl. at ¶ 40.

In the face of the clear evidence described above – that Ms. Horchow had applied for, been admitted, and was a member in good standing of the Club – and despite its own repeated claims it would not "become involved" in a dispute over whether the membership belonged to Ms. Horchow or Mr. Fearon, the Club abruptly unsuspended the membership in July 2023, and formally named Mr. Fearon the member. These actions violated the Membership Plan's "Transfer of Membership to Spouse" and "Divorce or Separation" provisions. Compl. at ¶¶ 42–44.

Faced with this clear breach of contract, the deprivation of her right to a membership that had been hers for nearly two decades, and the significant monetary loss associated with the value of the membership – which at the time was worth approximately $500,000 – Ms. Horchow attempted to address the matter with the Club directly, but to no avail. Ms. Horchow then resorted to the only means available to remedy the Club's flagrant breach of contract – she asserted a claim against the Club in Texas, where Ms. Horchow resides, for its breach of contract and civil conspiracy.[1] Compl. at ¶ 53. In retaliation for Ms. Horchow's efforts to hold the Club to the Membership Plan's terms and its prior representations to her, the Club expelled Ms. Horchow, citing as its rational a myriad of shifting reasons. *See* Motion[2] at 11–12; *id.*, Exhibit B; Compl. at

---

[1] The claim was later consolidated with Ms. Horchow's then-pending divorce matter and has since been dismissed without prejudice after settlement of the divorce proceeding.

[2] For ease of reference, citations to "Motion" are citations to the Club's Memorandum in Support of its Motion to Dismiss.

¶¶ 59 –60, Exhibit 7.  The expulsion compounded the damages the Club's earlier breach of contract caused, including among others, a significant loss of the membership deposit and right to obtain a refund, or otherwise enjoy the benefits of the membership she held for nearly twenty years.  Compl. at ¶ 59.

Incongruently, the Club now maintains that not only did Ms. Horchow have no remedy for the wrongful transfer of her membership to Mr. Fearon because the Club "will not become involved in disputes," she now has no remedy for the Club's wrongful termination of her membership.  The Club claims the Court is powerless to adjudicate anything beyond whether the Club followed the steps required for expulsion.  Even more limiting, the Club insists this matter is moot and the Court must overlook all the claims and damages stemming from the Club's contractual abuses and unfair and deceptive practices because the membership was terminated.  As a last-ditch effort, the Club claims Mr. Fearon must be an additional party.  *See* Motion at 17-19. These arguments are fundamentally flawed for at least the following reasons:

*First*, the Club's insistence that this Court has no power to adjudicate a private club's misconduct as to their members is erroneous, unworkable, and would render large portions of private club membership agreements meaningless.  Even if this Court were to limit its review to only a membership decision's procedural elements, Ms. Horchow's complaint alleges sufficient facts to support that Ms. Horchow's expulsion process was conducted in bad faith and contrary to the contract between the parties, defaults that are squarely within the limited scope of review the Club suggests.  Any further review of the Club's membership decisions is a factual determination that is not appropriately made at this stage.

*Second*, viewed under the proper standard of review, Ms. Horchow has stated viable claims for relief and alleged specific facts supporting those claims.

*Third*, Ms. Horchow's claims are not moot, and certainly not at this stage. Regardless of whether the expulsion was proper, the Complaint asserts separate claims and damages for each of the breach of contract, breach of implied covenant of good faith and fair dealing, and Chapter 93A claims, and these controversies continue and can be remedied even if the membership was properly terminated.

*Fourth*, Mr. Fearon is not a required or indispensable party under Rule 19 because the Court can afford complete relief without Mr. Fearon, and there is no risk of prejudice to Mr. Fearon or the existing parties if this case is adjudicated in his absence.

For the foregoing reasons, as set forth below, the Court should deny the Motion.

## II. ARGUMENT

### A. The Club is not Entitled to Absolute Deference for Ms. Horchow's Expulsion

The Club's primary argument in support of dismissal of Ms. Horchow's claims is that, as a private club, its conduct is beyond the Court's reach under any circumstances other than where there was some alleged procedural unfairness. *See* Motion at 8–9. This argument fails because it is an oversimplification of Massachusetts law regarding suits against private clubs.

Contrary to the Club's contentions, Massachusetts law does not require that Courts turn a blind eye to a private club's conduct in expelling members so long as the promised procedural formalities were followed. As the cases the Club relies upon recognize, "whether the cause assigned is one sufficient in law to warrant expulsion" is an area subject to judicial review. *Richards v. Morison*, 118 N.E. 868, 869 (Mass. 1918). Those cases also recognize that whether an expulsion decision "has been **reached in good faith**, and whether the action appears to have been within the exercise of sound reason or to have been **capricious, arbitrary and irrational**" is another area for which judicial review is available. *Casey v. Allen Harbor Yacht Club, Inc.*, 2007

4

WL 5578210, at *3 (Mass. Super. Oct. 11, 2007) (emphasis added); *see Snay v. Lovely*, 176 N.E. 791, 793 (Mass. 1931) (recognizing that only where a private organization is "***acting in good faith and in conformity to natural justice***[, c]ourts do not sit in review of decisions thus made") (emphasis added); *Eustace v. Dickey*, 132 N.E. 852, 862 (Mass. 1921) ("the power of removal, ***when applied in good faith***, is not subject to re-examination") (emphasis added). Ms. Horchow alleges both that the grounds used to expel her were insufficient under the Membership Plan, and that the decision to expel her was motivated by bad faith. Compl. at ¶¶ 59–69. On that basis, the Court should deny the Motion.

    The Club's broad claim of power to expel a member for any reason so long as the promised procedures are provided, with no judicial recourse, raises another serious concern – such a standard would render all terms of membership agreements and by-laws other than those dealing with expulsion procedure completely meaningless. Even a member who diligently abides by the terms of their membership agreement could be subject to expulsion on a whim, so long as the member was afforded the hearing and appeal promised. This approach would allow a club to abuse memberships and its own contracts at will, from transferring a duly purchased club membership to another party – as is the case here – to barring members from club access, refusing members' refund requests, or other financial improprieties, so long as the club followed the procedural steps enumerated in its by-laws. This suggestion is entirely contrary to contractual principles. It is a core principle of contract law that courts strive to interpret and enforce agreements in a manner which will not render any provisions meaningless. *See First Allmerica Fin. Life Ins. Co. v. Minnesota Life Ins. Co.*, 188 F. Supp. 2d 101, 105 (D. Mass. 2002) ("it is settled law in all jurisdictions that courts should interpret a contract in such a way as to give meaning to all of its

5

provisions."). The Court should also decline to adopt the Club's proposed reading of Massachusetts law for that reason.

Furthermore, even under the Club's proposed narrow standard of review, Ms. Horchow adequately pleads that the Club did not follow its own rules; it relied on a legally insufficient basis to expel her and acted in bad faith. *See* Compl. at ¶¶ 59 – 62, 72. Considering these well-pled facts, dismissal of Ms. Horchow's claims is premature at the pleading stage. Every case the Club cited for the proposition that the Court is powerless to adjudicate the Club's misconduct was decided at or after the summary judgment stage, with the benefit of discovery.[3]  *See Snay*, 176 N.E. at 793 (case referred to master who issued findings of fact); *Eustace*, 132 N.E. at 863 (same); *Richards,* 118 N.E. at 869, 871 (decided following "prolonged and full" jury trial); *Savill v. Fort Norfolk Yacht Club, Inc.*, 987 N.E.2d 618 (Mass. App. Ct. 2013) (decided on summary judgment); *Casey*, 2007 WL 5578210, at *5 (same). Ms. Horchow should be entitled to discovery on these claims, on which the Club has shown repeated inconsistencies. For example, the Motion asserts that "Ms. Horchow's endless efforts to force the Club to become involved in her and Mr. Fearon's membership dispute is the reason the Club expelled both Ms. Horchow and Mr. Fearon." Motion at 11–12. However, the Club's Appeal Committee indicated that the expulsion was being affirmed

---

[3] Further distinguishing the cases relied upon by the Club is the fact that in each, either the member contested whether their charged conduct occurred, as opposed to whether the conduct was sufficient to warrant expulsion, or sought reinstatement to the private organization instead of damages, or both. *See Snay*, 176 N.E. at 792–93 (suit "in equity" alleging plaintiff was expelled from union for participating in unauthorized strike, plaintiff alleged she did not participate in strike); *Eustace*, 132 N.E. at 855 (suit in equity); *Richards,* 118 N.E. at 868 (plaintiff alleged he was "charged … ***falsely*** with conduct injurious to the good of the association") (emphasis added); *Savill*, 987 N.E.2d at 618 (plaintiff "challeng[ed] his expulsion); *Casey*, 2007 WL 5578210, at *2, 5 (plaintiffs sought "reinstatement" and "disputed facts surrounding" expulsion).

due to "failure by you and your former husband to inform the Club promptly of your divorce,[4] resulted in the two of you continuing to use the Club as if you were still married." Motion, Exhibit B. In turn, the Club's October 10, 2024, letter expelling Ms. Horchow makes no mention of any supposed failure to timely notify the Club of her divorce, instead claiming Ms. Horchow was expelled because she involved the Club in a membership dispute. Compl. at ¶¶ 59–60, Exhibit 7. This shifting explanation for the basis of Ms. Horchow's expulsion calls into question the supposedly legally sufficient basis for the expulsion and may indicate bad faith. At a minimum, Ms. Horchow's claims are sufficiently pled to obtain discovery on these issues.

### B. The Complaint Adequately States its Claims

Separate from its argument that the Court is without power to adjudicate the Club's breach of contract and other wrongful conduct, the Club argues that the Complaint fails to state a claim with respect to all three asserted causes of action. This argument fails.

#### i. *The breach of contract claim is adequately pled*

With respect to the breach of contract claim, the Complaint adequately pleads three distinct breaches of contract by the Club.[5] The Motion is silent as to any supposed pleading deficiencies for the first two claims: (1) the Club violated the Membership Plan's "Transfer of Membership to Spouse" clause when it gave Mr. Fearon the right to the membership without Ms. Horchow's agreement or requiring Mr. Fearon to follow the established procedure for membership transfer,

---

[4] As yet another example of the importance of this Court's review of whether the Club properly followed the by-laws, nowhere in the Membership Plan does it require a member to promptly inform the Club of a divorce. Compl., Exhibit 2.

[5] Tellingly, the Club does not contest that a contract exists between Ms. Horchow and the Club. *See generally* Motion. To the extent that the Club argues that no contract exists because the membership always belonged to Mr. Fearon, that argument is contrary to the Complaint and Motion, and is an additional breach of contract by the Club. Compl. at ¶¶ 17–27; Motion at 9 ("Ms. Horchow claims that the Club breached a contract, *i.e.*, the Membership Plan").

7

Compl. at ¶¶ 43–47; and (2) the Club violated the Membership Plan's "Separation and Divorce" clause when it determined that Mr. Fearon would be the "Member," even though Ms. Horchow was recognized as the "Applicant" on the Membership Application, and the lack of any agreement or court order to the contrary, Compl. at ¶¶ 48–50.

The Complaint also adequately pleads a third breach of contract: the Club violated the so-called "Disputes Provision" clause in the Membership Plan by wrongfully applying it to expel Ms. Horchow.  Compl. at ¶¶ 59–61.  As set forth in the Complaint, Ms. Horchow did not "involve" the Club in her dispute with Mr. Fearon.  Instead, after promising to remain uninvolved, the Club proactively inserted itself into the dispute, reversing its prior course and recognizing Mr. Fearon's erroneous claim to the membership, while depriving Ms. Horchow of her membership interest.  Compl. at ¶¶ 59–61.  The Club argues that the claim for improper expulsion fails because "Ms. Horchow nowhere alleges that the Club failed to comply with its own procedures" based on its misapprehension of Massachusetts law limiting the Court to adjudicating questions of procedure.  Motion at 10 (citing *Casey*, 2007 WL 5578210, at *3).  As set forth above, the Court's power is not so limited, and the Court should decline to dismiss Ms. Horchow's breach of contract claim.

       ii. <u>The breach of the implied covenant of good faith claim is adequately pled</u>

With respect to the breach of the implied covenant of good faith and fair dealing claim, the Club rehashes its argument that it properly expelled Ms. Horchow, that her breach of contract claim fails, and as such her breach of the implied covenant claim fails.  This circular logic is unavailing, and Ms. Horchow has adequately pled that the Club deprived her of the enjoyment of her contract's benefits, first temporarily and then permanently.  For example, the Complaint clearly alleges that in the summer of 2023, Ms. Horchow was forced to remain suspended from the Club, all the while paying membership dues to the Club, at the same time as the Club reinstated her now-

8

ex-husband.  Compl. at ¶¶ 26, 42–44.  In another example, the Complaint alleges that the Club wrongfully applied the Membership Plan's terms to expel Ms. Horchow and retain her entire Membership Deposit, Compl. at ¶¶ 59–64, a fact which the Club's own letters specifically identify in connection with Ms. Horchow's expulsion.  Motion, Exhibit B ("the Appeal Committee reaffirms the Club's determination that you are not entitled to any refund of your Membership Deposit."); Compl., Exhibit 7 ("you have been expelled from the Club … with no return of your membership deposit.").  These deprivations of Ms. Horchow's enjoyment of her rights under the Membership Plan, and right to the membership deposit, are each sufficient to constitute a breach of the implied covenant of good faith and fair dealing.  *See Weiler v. PortfolioScope, Inc.*, 12 N.E.3d 354, 361 (Mass. 2014) (affirming breach of implied covenant of good faith and fair dealing stemming from the defendant's wrongful transfer of funds at the expense of the plaintiff).

The Club argues that Ms. Horchow's implied covenant claim fails because it seeks to "weaponize the implied covenant in a manner that contradicts the plain terms of a contract," citing *Lanza v. Fin. Indus. Regul. Auth.*, 953 F.3d 159, 164 (1st Cir. 2020).  Motion at 12.  Ms. Horchow attempts to do no such thing, and *Lanza* is easily distinguished.  In *Lanza*, the plaintiffs' claim was based on a FINRA arbitrator's failure to issue an explained decision, where the FINRA arbitration rules to which plaintiffs had agreed left that decision to the arbitrator's discretion.  953 F.3d at 164.  The court found that the implied covenant claim failed because "any expectation that the arbitrators would issue an explained decision upon [plaintiffs'] unilateral request was unreasonable in light of the express provisions of the FINRA Code."  *Id.* at 165.  Ms. Horchow's belief that the Club would not act in a way that would wrongfully deprive her of her membership is neither unreasonable nor contrary to any of the Membership Plan's provisions.  Thus, the Court should decline to dismiss the breach of the implied covenant of good faith and fair dealing claim.

### iii. The M.G.L. c. 93A claim is adequately pled

The Club argues that Ms. Horchow's M.G.L. c. 93A claim fails because the related breach of contract claim fails, and even if it does not fail, a mere breach of contract cannot establish a violation of c. 93A. Both arguments are unavailing.

*First*, as set forth above, Ms. Horchow's breach of contract claim is well-pled and viable at the pleadings stage. The Court should not dismiss the c. 93A claim based on the same faulty arguments made to support dismissal of the breach of contract claim.

*Second*, Ms. Horchow's c. 93A claim is not premised merely on a breach of contract. Taken as a whole, the Complaint alleges the Club violated c. 93A through its systematic unfair treatment of Ms. Horchow, preferential treatment of her now-ex-husband, and bad faith and unsupported expulsion of her, which allowed the Club to retain a Membership Deposit to which she would otherwise be entitled, in addition to other damages. Compl. at ¶¶ 35–44, 51, 59–69. As set forth in the Complaint, the Club's membership advisor has testified under oath that Ms. Horchow was admitted as the "member" of the Club. Compl. at ¶ 54. Despite this fact, and in the absence of any agreement or Court order, the Club then transferred the "member" designation to Ms. Horchow's now-ex-husband. Compl. at ¶ 43. That conduct was in line with, as the Club's then membership advisor put it, the Club's "old fashioned … assum[ption] that the male is the member." Compl. at ¶ 37. In keeping with its unfair and preferential treatment of Mr. Fearon, the Club also reneged on its promise to suspend the membership and remain uninvolved while Ms. Horchow and Mr. Fearon resolved their dispute. Compl. at ¶¶ 38-39. Instead, the Club reinstated Mr. Fearon while Ms. Horchow remained suspended, and Ms. Horchow was left with no recourse other than a lawsuit against the Club, for which she was later expelled. Compl. at 59. The Club's fixation on the fact that Mr. Fearon was also expelled as proof that it did not unfairly favor him,

Motion at 12, ignores the fourteen months of pre-expulsion preference shown to Mr. Fearon. Such conduct clearly falls within the prohibitions of c. 93A, *see Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 11 (1st Cir. 2007), and Ms. Horchow's claim is adequate at the pleading stage to survive dismissal.

Even if this court ultimately determines it has limited powers to review the Club's membership decisions; Ms. Horchow's claims under c. 93A remain. *See Brown v. Sav. Bank Life Ins. Co.*, 107 N.E.3d 1163, 1175 (Mass. App. Ct. 2018) (finding c. 93A claim survived summary judgment despite grant of summary judgment on related breach of contract claim, where c. 93A claim was premised on breach of contract and other tortious conduct). Ms. Horchow has stated an independent claim for unfair and deceptive practices: the Club took her father's money, admitted her as a member and treated her as a member for nineteen years, only to then claim she was never a member, for which she suffered damages including *but not limited to* the loss of the membership deposit. Compl. at ¶ 80 (b–c). This is sufficient for a c. 93A claim. *See Brown*, 107 N.E.3d at 1175.

### C. The Complaint's Claims are not Moot

The Club asserts that Ms. Horchow's claims are moot, suggesting that this Court should ignore its breach of contract, bad faith, and unfair and deceptive conduct, because the membership that gave rise to those claims has been terminated. This argument fails to account for the ongoing controversy stemming from the Club's numerous malfeasances and the damages they have caused to Ms. Horchow *irrespective* of the membership termination. Even if this Court finds the membership was properly terminated, the Club's transfer of the membership to Mr. Fearon, and other malfeasance described herein, are all part of an ongoing controversy for which the court may grant relief. *See Bos. Bit Labs, Inc. v. Baker*, 11 F.4th 3, 8 (1st Cir. 2021).

"The heavy burden of showing mootness is on the party raising the issue." *Id.* (quotations omitted). "[A] case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Town of Portsmouth v. Lewis*, 813 F.3d 54, 58 (1st Cir. 2016). The key consideration in determining mootness is "whether the relief sought would, if granted, make a difference to the legal interests of the parties[.]" *Bos. Bit Labs, Inc.*, 11 F.4th at 8 (quoting *Air Line Pilots Ass'n, Int'l v. UAL Corp.*, 897 F.2d 1394, 1396 (7th Cir. 1990)). Relief will make a difference to the legal interest of a party who experiences an "immediate and real" injury resulting from the offending party's conduct. *Harris v. Univ. of Massachusetts Lowell*, 43 F.4th 187, 192 (1st Cir. 2022).

The Club cannot meet this heavy burden of showing mootness by merely pointing to the purported termination of Ms. Horchow's membership. *See Bos. Bit Labs, Inc.*, 11 F.4th at 8. The Club argues that because it "expelled both Ms. Horchow and Mr. Fearon […] were the Court to rule that the Club improperly transferred the membership [it] would serve no purpose for there is no membership left for the Court to assign." Motion at 16. That argument ignores the other live controversies in this matter for which Ms. Horchow has sustained damages and can recover even absent the continued existence of a membership. Regardless of whether the Court finds the Club's purported expulsion of Ms. Horchow was a breach of its contract, whether the Club breached its contract by transferring the membership to Mr. Fearon is very much a viable issue. Likewise, Ms. Horchow's claims for breach of the covenant of good faith and fair dealing and unfair and deceptive conduct are still viable even if the membership was terminated. Ms. Horchow experienced a real injury stemming from each of these claims and recovery of damages would

undoubtedly "make a difference to [her] legal interests."[6] *Bos. Bit Labs, Inc.*, 11 F.4th at 80.  As such, Ms. Horchow maintains a legally cognizable interest in this ongoing claim. *See Town of Portsmouth*, 813 F.3d at 58.

The cases the Club cited, all of which involved only claims for injunctive and declaratory relief, are irrelevant to the instant matter because in each matter an intervening act ***resolved*** the plaintiff's injury.  *See Boston Bit Labs, Inc.*, 11 F.4th at 9 (finding claim for injunctive and declaratory relief related to COVID-era emergency mandates moot after rescission of all COVID-19 orders); *Town of Portsmouth*, 813 F.3d at 9 (finding claim for injunctive and declaratory relief related to imposition of highway tolls moot after enactment of legislation prohibiting toll collection); *Harris*, 43 F.4th at 192 (finding claim for injunctive and declaratory relief related to exemption from universities' COVID-19 vaccine mandates moot because plaintiffs were no longer enrolled and not subject to mandate).  Here, the Club cannot seriously contend that its expulsion of Ms. Horchow resolved the injury she suffered when the Club wrongfully transferred her membership to her ex-husband in violation of its contract with her, that expulsion moots Ms. Horchow's claims for damages arising from the transfer and expulsion, both of which Ms. Horchow contends were breaches of the Club's contractual obligations to her.  If anything, the Club's expulsion exacerbated Ms. Horchow's injury as she is now unable to exercise her rights under the Membership Plan, including to resign the membership and receive "eighty percent (80%) of the Membership Deposit charged for a Regular Membership on the date of resale." Compl., Exhibit 2 at 6.

---

[6] The Club suggests Ms. Horchow has not pled damages outside of reinstatement of the membership.  Motion at 1 ("[the] Complaint … asks this Court substantively to review and reverse an internal decision").  In fact, Ms. Horchow has not sought reinstatement of the membership.  Rather she seeks damages for the Club's breach of contract, breach of the implied covenant of good faith and fair dealing, and violations of c. 93A.  *See* Compl. at Prayers for Relief.

Given that the "[t]he relief sought would, if granted make a difference to the legal interests of the parties," Ms. Horchow's claims are not moot. *See Bos. Bit Labs, Inc.*, 11 F.4th at 8.

### D. Rule 19 does not Require Dismissal

The Club asserts that, in addition to the other reasons for dismissal, the Court should find that Mr. Fearon is a required and indispensable party whose joinder is not feasible, thus requiring dismissal under Rule 19. The Club's attempt to twist this straightforward breach of contract dispute between itself and a former member into a three-party matter is wanting on its face. As set forth below, this argument fails because Mr. Fearon is not a required party, and even if he is a required party he is not an indispensable party, and the case can proceed in his absence.

#### i. Mr. Fearon is not a required party

Rule 19(a)(1) provides that a party is required where either the Court cannot afford complete relief in the party's absence, or where the party has such an interest in the litigation that deciding the action in that party's absence would impair their ability to protect their interest, or subject the existing parties to double, multiple, or inconsistent obligations. Fed. R. Civ. P. 19(a)(1)(A–B). Neither of those scenarios are true with respect to Mr. Fearon.

First, with respect to Rule 19(a)(1)(A), the Court can decide the present dispute – whether the Club wrongfully transferred and terminated Ms. Horchow's membership – without Mr. Fearon. Compl. at ¶¶ 45–51, 59–62. Whether Mr. Fearon currently disagrees with Ms. Horchow's contention that the membership belongs to her, a fact notably absent from the Complaint, Ms. Horchow has no claim against Mr. Fearon. The Club's fails to identify any claim that could have been asserted by Ms. Horchow against Mr. Fearon or any basis on which to determine that the Court could not afford complete relief without Mr. Fearon. Put simply, Ms. Horchow seeks no

14

relief from Mr. Fearon, nor could Mr. Fearon provide her with relief that would satisfy her claims against the Club. *See* Compl. at Prayers for Relief (seeking only monetary relief from the Club).

The Club's contention also fails to satisfy Rule 19(a)(1)(B); there is no serious risk of impairing Mr. Fearon's interests or exposing the Club to multiple or inconsistent obligations. Mr. Fearon's interests are completely aligned with the Club's as to the ownership of the membership; the Club adopted his position when it transferred the membership to Mr. Fearon. And his interests as to the improper termination of the membership are aligned with Ms. Horchow's; as the Club argues it terminated the membership of both parties. There is no serious risk to Mr. Fearon that his interests will not be protected were this suit to continue without him. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Flanders-Borden*, 11 F.4th 12, 17 (1st Cir. 2021) ("where the interests of an absent party are aligned closely enough with the interests of an existing party, and where the existing party pursues those interests in the course of the litigation, the absent party is not required under Rule 19" even where the interests are not "virtually identical") (internal citations and quotation omitted). In support of this argument, the Motion makes only a conclusory statement that Mr. Fearon's interests would be harmed by adjudication of this dispute; pointing to no actual harm and citing to a case where third parties were found to ***not*** be indispensable. *See* Motion at 18 (citing *Umuoji Improvement Union (N. Am.), Inc. v. Umuoji Improvement Union (N. Am.), Inc.*, 537 F. Supp. 3d 79, 87–88 (D. Mass. 2021)). As the *Umuoji* court recognized, "[t]he mere fact that the outcome of a case 'may have some financial consequences for the non-parties' is, however, insufficient to deem them 'necessary'" under Rule 19. 537 F. Supp. 3d at 87.

There is also no serious risk that the Club could be subject to multiple or inconsistent obligations. Ms. Horchow and Mr. Fearon's claims to the membership are mutually exclusive – either Ms. Horchow's claim to the membership is valid, in which case the Club has no liability to

Mr. Fearon since he was not the member, or Ms. Horchow's claim to the membership is improper and the Club *may* face liability to Mr. Fearon for expelling him if Mr. Fearon can demonstrate that his expulsion was improper. On that basis, there is no risk that the Club could be subject to multiple or inconsistent obligations.

       ii. *If Mr. Fearon is a required party, the case should proceed in his absence*

Even where an absent party is a required party under Rule 19(a), dismissal is not automatically required. Rather, the Court must consider whether the case can proceed in the required party's absence under Rule 19(b). Here, if the Court concludes that Mr. Fearon is a required party (which it should not), dismissal is not appropriate under Rule 19(b).

If Mr. Fearon is a required party under Rule 19(a), the Court must consider the prejudice if the case is decided in the absence of Mr. Fearon, whether that prejudice can be avoided by shaping the judgment, whether the judgment could be adequate without Mr. Fearon, and whether Ms. Horchow has an adequate remedy if the case is dismissed. Fed. R. Civ. P. 19(b). Here, each of those factors weighs against dismissal. For the same reason set forth above with respect to Rule 19(a)(1)(B), there is no substantial risk of prejudice from adjudicating this dispute in Mr. Fearon's absence. *See* Fed. R. Civ. P. 19(b)(1). In light of that lack of prejudice, the Court need not consider whether it could avoid prejudice by shaping the judgment under Rule 19(b)(2). The Court can render adequate judgment in Mr. Fearon's absence. *See* Fed. R. Civ. P. 19(b)(3). As set forth above, Ms. Horchow's claim is against the Club for its breach of contract, among other allegations. Ms. Horchow seeks no relief, nor is she aware of any relief she could seek, from Mr. Fearon that would adequately address the harm caused by the Club's breach.

Finally, with respect to Rule 19(b)(4), the Club identifies no adequate remedy available to Ms. Horchow if this case were dismissed. Presumably the Club thinks that Ms. Horchow could

16

assert her claims against Mr. Fearon and the Club in a state court action, but that is not an adequate remedy here. As the Club acknowledges, Mr. Fearon is a Texas resident, Motion at 17, but Ms. Horchow could not sue Mr. Fearon and the Club in Texas because the Club has already vehemently opposed jurisdiction over it in Texas. *See* Def.'s Special Appearance at 5, *Horchow v. The Westmoor Club*, No. DC-23-13481 (134th Judicial Dist. Ct. of Dallas Cnty., TX Dec. 14, 2023).[7] Similarly, Mr. Fearon would likely oppose being subject to a Massachusetts state court's jurisdiction given his Texas residence. *See Power v. Connectweb Techs., Inc.*, 648 F. Supp. 3d 302, 314 (D. Mass. 2023) ("'For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile'") (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)).

This action against the Club is an appropriate, and Ms. Horchow's only, remedy and should not be dismissed for failure to include Mr. Fearon, whether he is a required party or not.

**III.   CONCLUSION**

For the reasons set forth above, Ms. Horchow respectfully requests that the Court deny The Westmoor Club's Motion to Dismiss.

---

[7] For the convenience of the Court, a copy of the Special Appearance is attached hereto as Exhibit A. Consideration of the Special Appearance is appropriate. *See Kowalski v. Gagne*, 914 F.2d 299, 305 (1st Cir. 1990) ("[it is] well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand.").

17

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | REGEN HORCHOW |
|  | By her attorneys, |
|  | */s/ Hayley Trahan-Liptak*<br>Christopher L. Nasson (BBO# 669401)<br>christopher.nasson@klgates.com<br>Hayley Trahan-Liptak (BBO# 692412)<br>hayley.trahan-liptak@klgates.com<br>John L. Gavin (BBO# 705385)<br>john.gavin@klgates.com<br>K&L Gates LLP<br>One Congress Street<br>Suite 2900 |
| Dated: July 1, 2025 | Boston, Massachusetts 02114 |

## **CERTIFICATE OF SERVICE**

     I, Hayley Trahan-Liptak, hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants on July 1, 2025.

                                                      */s/ Hayley Trahan-Liptak*