IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| REGEN HORCHOW,<br><br>   Plaintiff,<br><br>  v.<br><br>THE WESTMOOR CLUB, LLC,<br><br>   Defendant. | )<br>)<br>)<br>)<br>)<br>) Civil Action No.: 1:25-Cv-11008-WGY<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS
SUPPORTING MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to Local Rule 56.1, Plaintiff Regen Horchow submits this Statement of Undisputed Material Facts in support of her Motion for Summary Judgment in Part.

***The Membership Plan***

1. The Westmoor Club, LLC (the "Club") is governed by a Membership Plan.

2. Memberships may only be held individually. *See* Trahan-Liptak Decl. Ex. 1, Membership Plan at 3.

3. A Member may only be admitted upon completing an application and deposit, and approval by the Club. *See* Trahan-Liptak Decl. Ex. 1, Membership Plan at 2.

4. Club membership is only available to individuals who are approved by the Club. *See* Trahan-Liptak Decl. Ex. 2, J. Goldsmith Tr. at 29:2-10 ("Q. [B]ased upon this membership plan provision, is it fair to say that membership is available only to individuals that the club approves? A. Yes."), 32:17-18 ("You got to apply to the Westmoor Club to become a member, yes."); Trahan-Liptak Decl. Ex. 3, Hicks Tr. at 24:18-23 ("Q. … Okay. Do you recall anyone being

approved to the -- or being admitted as a member that the club did not approve? [Objection] A. No, I don't recall."); Trahan-Liptak Decl. Ex. 1, Membership Plan at 2.

5.      A Member's spouse and children are granted use privileges but are not themselves members.  Trahan-Liptak Decl. Ex. 1, Membership Plan at 4.

6.      A Member may transfer the membership to his or her spouse, but the membership may not be transferred without the proposed transferee applying for membership and being approved by the Club.  *See* Trahan-Liptak Decl. Ex. 1, Membership Plan at 7; Trahan-Liptak Decl. Ex. 2, J. Goldsmith Tr. at 32:19-23 ("Q. So if a married couple wishes to transfer the membership from the original applicant to the spouse, the spouse must first be approved for membership, right? A. Yes.").

7.      Upon the transfer of the membership, all rights and obligations of the membership shall be transferred to the spouse, including, but not limited to, the right to resign the membership and the Club's obligation to refund the membership deposit pursuant to the terms of the Membership Plan.  Trahan-Liptak Decl. Ex. 1, Membership Plan at 7.

8.      In the event of a Member's resignation, the Club will repay a Member 80% of the membership deposit as of the date of resale of the membership.  Trahan-Liptak Decl. Ex. 1, Membership Plan at 7.

9.      In the event of divorce, the membership at the Club belongs to the individual listed as the "Member" on the Membership Application.  *See* Trahan-Liptak Decl. Ex. 1, Membership Plan at 7.

10.      At the time of applying, the prospective member is listed as the "Applicant."  *See* Trahan-Liptak Decl. Ex. 3, Hicks Tr. at 48:10-11 ("A. …A prospective member at this stage was the applicant.").

11.     The Membership Plan provides that, except for violations of the Club's zero tolerance policies, a Member cannot be expelled without first receiving notice of proposed disciplinary action, and an opportunity to request a hearing.  *See* Trahan-Liptak Decl. Ex. 1, Membership Plan at 10-11.

12.     Ms. Horchow is not accused of violating the Club's zero tolerance policies.  *See* Trahan-Liptak Decl. Ex. 4, Club's March 16, 2026 Response to Plaintiff's First Set of Request for Admission ("RFA Responses") at No. 22.

***The Membership Application***

13.     Ms. Horchow applied for membership at the Club on August 1, 2004.  *See* Trahan-Liptak Decl. Ex. 5, Membership Application at 3.

14.     As part of the application, Ms. Horchow completed in her own handwriting an application form provided by the Club (the "Membership Application").  *See* Trahan-Liptak Decl. Ex. 5, Membership Application; Ex. 6, Horchow Tr. at 15:21-23 ("Q: This is all your handwriting filling out this application; correct? A: Correct.")

15.     The Membership Application does not provide a place for an applicant to list a "Member."  *See generally* Trahan-Liptak Decl. Ex. 5, Membership Application.

16.     On the Membership Application, Ms. Horchow listed herself as the Applicant and her then-husband, Jeffrey Fearon ("Mr. Fearon"), as the Spouse.  *See* Trahan-Liptak Decl. Ex. 5, Membership Application at 2.

17.     The Membership Application lists Ms. Horchow's home address under the "APPLICANT" heading.  *See* Trahan-Liptak Decl. Ex. 5, Membership Application at 2.

18.     The Membership Application lists Ms. Horchow's phone number under the "APPLICANT" heading.  *See* Trahan-Liptak Decl. Ex. 5, Membership Application at 2.

3

19.     The Membership Application lists Ms. Horchow's Social Security number under the "APPLICANT" heading.  *See* Trahan-Liptak Decl. Ex. 5, Membership Application at 2.

20.     The Membership Application lists Ms. Horchow's email address under the "APPLICANT" heading.  *See* Trahan-Liptak Decl. Ex. 5, Membership Application at 2.

21.     The Membership Application lists Ms. Horchow's date of birth under the "APPLICANT" heading.  *See* Trahan-Liptak Decl. Ex. 5, Membership Application at 2.

22.     The Membership Application lists Ms. Horchow's personal references and her other club memberships.  *See* Trahan-Liptak Decl. Ex. 5, Membership Application at 2; Trahan-Liptak Decl. Ex. 6, Horchow Tr. at 15:24-16:9 ("Q. I noticed in this application that you've listed the Nantucket Yacht Club as another club that you're a member of? A. Correct. Q. Am I also correct that you have always been, at least during your marriage, you were always the primary member of that club; is that correct? A. I've always been the primary member of that club, yes."), 115:19-116:6 ("Q. We talked earlier about the Nantucket Yacht Club. What's the second list -- the second reference listed here, second membership listed here? A. Cooper Aerobics Center, it's a gym here in Dallas. Q. Who was a member at Cooper Aerobics Center? A. I was. Q. Was Mr. Fearon a member of that facility? A. No."), 116:10-117:4 ("Q. And then you identify here two social references. The first is Stewart and Michelle Thomas. Who is friends with or knew Stewart and Michelle Thomas? A. I've known Stewart and Michelle Thomas since high school separately, and then together when they married. … Q. And then the second reference, The Honorable Jeanne and David Phillips. A. Mm-hmm. Q. How do you know that couple? A. Jeanne and I worked together in the junior league, and then we carpooled with our children. And Jeff met them, you know, once we got married or, you know, we were dating.").

23.     The Membership Application lists Ms. Horchow's employment information.  *See* Trahan-Liptak Decl. Ex. 5, Membership Application at 2.

24.     J. Graham Goldsmith, Kitty Goldsmith, and Alan Worden decided, on behalf of the Club, when a Membership Application would be approved and an Applicant would be admitted as a Member.  Trahan-Liptak Decl. Ex. 3, Hicks Tr. at 31:6-9 ("Q. Okay. So the decision to admit a member was made by either one or multiple of the three principals we discussed? A. Correct.").

25.     The Club admitted Ms. Horchow as a Member on August 14, 2004.  *See* Trahan-Liptak Decl. Ex. 5, Membership Application at 3; Trahan-Liptak Decl. Ex. 14, K. Goldsmith Tr. at 51:25-52:7 ("Q. Isn't it true – isn't it true, Ms. Goldsmith, that you all, the people who reviewed these membership applications, looked at this membership, the one that I have on the screen and made the decision to admit Regen Fearon as a member of the Westmoore. [(sic)] True? [Objection] Q. (BY MS. MILES) True? A. Yes.").

26.     Prior to approving the Membership Application, the Club's Membership Director, Peter Hicks, wrote "FEARON, Regen" on the cover of the application.  *See* Trahan-Liptak Decl. Ex. 5, Membership Application at 4; Trahan-Liptak Decl. Ex. 3, Hicks Tr. at 40:19-41:1 ("Q. … What about the black handwriting directly below that? A. That's very much clearer, and that's 'Fearon, Regen.' Q. Okay. Do you recognize either of those handwritings? A. The black ink looks like mine.").

27.     The total cost for membership at the time of Ms. Horchow's admission was $125,000.  *See* Trahan-Liptak Decl. Ex. 5, Membership Application at 1; Trahan-Liptak Decl. Ex. 3, Hicks Tr. at 42:2-5 ("A. …[T]his application was submitted as a regular membership application; and at the time it was submitted, the cost of the membership was $125,000.").

28.    Ms. Horchow's father paid the required first installment of the membership deposit for Ms. Horchow and her sister, Ms. Routman, using one check totaling $50,000, or $25,000 per deposit.  *See* Trahan-Liptak Decl. Ex. 5, Membership Application at 5; Trahan-Liptak Decl. Ex. 4, Club's RFA Response at No. 5 (admitting that "the $50,000 check was, in part, used as the membership deposit for 'Fearon, Regen.'").

29.    The Club's Membership Director wrote "For Regen Fearon – Regular and Elizabeth Routman – Regular" on the top of the membership deposit check.  *See* Trahan-Liptak Decl. Ex. 5, Membership Application at 5; Trahan-Liptak Decl. Ex. 3, Hicks Tr. at 52:6-13 ("Q. Do you see at the top of the check some handwritten notation in black ink? A. Yes. Q. That notation reads: 'For Regen Fearon, regular, and Elizabeth Routman, regular,' right? A. Correct. Q. Is that your handwriting? A. Yes.").

30.    The Club's Membership Director wrote "For Fearon, Regen – same check as for Routman, Lizzie" on the top of the photocopy of the membership deposit check.  *See* Trahan-Liptak Decl. Ex. 5, Membership Application at 5; Trahan-Liptak Decl. Ex. 3, Hicks Tr. at 53:4-14 ("Q. Okay. If we scroll back up to the top of the page, there is another handwritten notation at the top. Do you see that? A. Yes. Q. And it reads, 'For Fearon, Regen, same check as for Routman, Lizzie.' Did I read that correctly? A. Yes. Q. Is this your handwriting, as well? A. Yes.").

31.    Ms. Horchow's father paid the balance of the membership costs for Ms. Horchow and her sister, Ms. Routman, using one check for $200,000.  *See* Trahan-Liptak Decl. Ex. 5, Membership Application at 7; Trahan-Liptak Decl. Ex. 3, Hicks Tr. at 55:9-12 ("Q. This 200,000-dollar check appears to be the balance of a regular membership cost for Ms. Horchow and Ms. Routman, right? A. It appears to be, yes."); Trahan-Liptak Decl. Ex. 4, Club's RFA Response at

No. 6 (admitting that "the $200,000 check was, in part, used as the balance of the membership deposit for 'Fearon, Regen.'").

32.    In 2004, after admitting a Member, it was the Club's practice to note admitted Members in an Excel spreadsheet maintained by the Club.  Trahan-Liptak Decl. Ex. 3, Hicks Tr. at 32:22-33:14 ("Q. ... Did you maintain any documents or -- tracking or identifying members who had been admitted by the principals? A. We had an Excel spreadsheet that was created before I was hired that the team maintained, if I'm -- if I'm not mistaken, to -- I think its primary purpose was to track payments, but I -- I -- I don't recall the details. … Q. Okay. Do you recall whether the spreadsheet contained the admitted member's name? A. I would assume it had to.").

33.    Ms. Horchow has specifically sought production of that Excel spreadsheet, which the Club has not produced.  Trahan-Liptak Decl. Ex. 9, Discovery Deficiency Letter.

34.    The Club's counsel has represented that "[t]he Club does not possess the Excel spreadsheet referenced in your letter."  Trahan-Liptak Decl. Ex. 10, Club's Discovery Deficiency Response.

35.    The Club refused to confirm that the Membership belonged to Ms. Horchow and instead required her to produce a settlement agreement or court order to retain her Membership status.  *See* Trahan-Liptak Decl. Ex. 7, Cowden Tr. at 61:16-17 ("we were not going to change… the membership from [Mr.] Fearon's name into [Ms. Horchow's] name"), 68:21-23 ("we certainly weren't going to change anything unless there was a court order or an agreement between the two.").

7

*Mr. Fearon's "Membership"*

36.     The Club claims that Mr. Fearon was admitted as a Member of the Club.  *See* Trahan-Liptak Decl. Ex. 4, Club's RFA Response at No. 18 (denying that "[Mr.] Fearon was never approved as a Member").

37.     The Club claims it is "without sufficient information to admit or deny" that "Mr. Fearon never completed a membership application on which he was listed as the Applicant."  *See* Trahan-Liptak Decl. Ex. 4, Club's RFA Response at No. 15.

38.     The Club admits that "Ms. Horchow never requested the Club transfer the membership to Mr. Fearon."  *See* Trahan-Liptak Decl. Ex. 4, Club's RFA Response at No. 14.

39.     Ms. Horchow also requested that the Club produce documents relevant to any membership application, membership references, membership deposit, and membership approval with respect to Mr. Fearon.  *See* Trahan-Liptak Decl. Ex. 8, Club's RFP Response at Nos. 4-7.

40.     The Club agreed to produce non-privileged documents in response to those requests.  *Id.*

41.     The Club has not produced a membership application on which Mr. Fearon is listed as Applicant.  *See* Trahan-Liptak Decl. at ¶ 5.

42.     The Club has not produced a membership application on which Mr. Fearon lists references.  *See* Trahan-Liptak Decl. at ¶ 5.

43.     The Club has not produced a membership application on which Mr. Fearon lists his employment information.  See Trahan-Liptak Decl. at ¶ 5.

44.     The Club has not produced any record of a membership deposit paid for Mr. Fearon.  *See* Trahan-Liptak Decl. at ¶ 13.

8

45.    The Club has not produced any record of approval of a membership for Mr. Fearon. *See* Trahan-Liptak Decl. at ¶ 13.

46.    Fact discovery is now closed.  ECF No. 28.

47.    The Club maintains that Mr. Fearon was the "Primary Member."  *See* Trahan-Liptak Decl. Ex. 7, Cowden Tr. at 49:15 ("Dr. Fearon has been listed as the primary member").

48.    In September 2017, a Club staff member deleted Ms. Horchow's name from the Membership in the Club's online portal.  *See* Trahan-Liptak Decl. Ex. 11, Change Log.

***The Expulsion***

49.    On October 10, 2024, the Club notified Ms. Horchow that she had been expelled from the Club and denied the right to a refund of any part of her membership deposit.  *See* Trahan-Liptak Decl. Ex. 12, Oct. 10, 2024 Expulsion Letter.

50.    The Club notified Ms. Horchow that she was expelled for involving the Club in her divorce from Mr. Fearon.  *See* Trahan-Liptak Decl. Ex. 12, Oct. 10, 2024 Expulsion Letter.

51.    Ms. Horchow did not receive notice of disciplinary action prior to the October 10, 2024 letter.  *See* Trahan-Liptak Decl. Ex. 6, Horchow Tr. at 120:3-11.

52.    Ms. Horchow did not receive an opportunity to be heard regarding disciplinary action prior to her October 10, 2024 expulsion.  *See* Trahan-Liptak Decl. Ex. 6, Horchow Tr. at 120:3-11.

53.    Ms. Horchow, through counsel, attempted to resign after receiving the October 10, 2024 expulsion letter.  *See* Trahan-Liptak Decl. Ex. 15, Oct. 16, 2024 Letter.

54.    If the Club allowed Ms. Horchow to resign in October 2024, she would have retained her right to be paid 80% of the Membership Deposit, approximately $500,000, pursuant

to the Membership Plan.  *See* Trahan-Liptak Decl. Ex. 1, Membership Plan at 7; Trahan-Liptak Decl. Ex. 14, K. Goldsmith Tr. at 25:9-14.

55.    Mr. Goldsmith testified that other club members who have faced expulsion were offered an opportunity to meet with the disciplinary committee before their expulsion.  *See* Trahan-Liptak Decl. Ex. 2, J. Goldsmith Tr. at 23: 9-24 ("Q: Just to clarify, Mr. Goldsmith, there was an offer for both of these members to meet with the disciplinary committee before they were expelled; is that right? [Objection] A: I recall – as I recall, they were offered that but did not take advantage of it.")

56.    Following receipt of the expulsion letter, Ms. Horchow appealed the Club's expulsion decision.  *See* Trahan-Liptak Decl. Ex. 13, Jan. 29, 2025 Appeal Denial Letter.

57.    After the appeal, the Club affirmed its decision to expel Ms. Horchow.  *See* Trahan-Liptak Decl. Ex. 13, Jan. 29, 2025 Appeal Denial Letter.

58.    The Club's January 29, 2025 letter denying Ms. Horchow's appeal noted that Ms. Horchow was being expelled because she failed to notify the Club of her divorce.  *See* Trahan-Liptak Decl. Ex. 13, Jan. 29, 2025 Appeal Denial Letter.

59.    Ms. Horchow notified the Club that she and Mr. Fearon were divorced in 2021.

60.    After Ms. Horchow notified the Club that she and Mr. Fearon were divorced, the Club took no disciplinary action against her at that time.  *See* Trahan-Liptak Decl. Ex. 7, Cowden Tr. at 52-53: 22-15.

Respectfully submitted,

REGEN HORCHOW

By her attorneys,

*/s/ Hayley Trahan-Liptak*
Christopher L. Nasson (BBO# 669401)
christopher.nasson@klgates.com
Hayley Trahan-Liptak (BBO# 692412)
hayley.trahan-liptak@klgates.com
John L. Gavin (BBO# 705385)
john.gavin@klgates.com
K&L Gates LLP
One Congress Street
Suite 2900
Dated: April 10, 2026                          Boston, Massachusetts 02114

11

## **CERTIFICATE OF SERVICE**

I, Hayley Trahan-Liptak, hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants on April 10, 2026.

*/s/ Hayley Trahan-Liptak*