# Exhibit 2



# Transcript of J. Graham Goldsmith

**Date:** March 25, 2026
**Case:** Horchow -v- The Westmoor Club, LLC

**Planet Depos**
**Phone:** 888.433.3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

WORLDWIDE COURT REPORTING & LITIGATION TECHNOLOGY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - x

REGEN HORCHOW,                          :

                    PLAINTIFF, :

V.                                      : CIVIL ACTION NO.

THE WESTMOOR CLUB, LLC,        : 1:25-CV-11008-WGY

                    DEFENDANT. :

- - - - - - - - - - - - - - X


REMOTELY CONDUCTED DEPOSITION OF

J. GRAHAM GOLDSMITH

WEDNESDAY, MARCH 25, 2026

9:30 A.M. EST


JOB NO.: 626204

PAGES: 1 - 85

REPORTED BY: KARISA EKENSEAIR, CCR RPR RMR RDR

DEPOSITION OF J. GRAHAM GOLDSMITH, CONDUCTED VIA ZOOM VIDEOCONFERENCE.

Pursuant to notice, before Karisa J. Ekenseair, Certified Shorthand Reporter in and for the States of Arkansas, Oklahoma, Missouri, Illinois, Tennessee, Georgia, New Mexico, Washington, and California; National Registered Professional Reporter; National Registered Merit Reporter; National Registered Diplomate Reporter; Notary Public.

A P P E A R A N C E S

ON BEHALF OF THE PLAINTIFF (VIA ZOOM):

HAYLEY TRAHAN-LIPTAK, ESQUIRE

CAYLA NYANTE-BROWN, ESQUIRE

K&L GATES LLP

ONE CONGRESS STREET, SUITE 2900

BOSTON, MASSACHUSETTS 02114

617-261-3100


ON BEHALF OF THE DEFENDANT (VIA ZOOM):

TYLER E. CHAPMAN, ESQUIRE

MEGHAN E. HUGGAN, ESQUIRE

TODD & WELD, LLP

ONE FEDERAL STREET

BOSTON, MASSACHUSETTS 02110

617-720-2626


ALSO PRESENT:

JOHN COWDEN

TY LAIRD, VIDEOGRAPHER

       T A B L E   O F   C O N T E N T S

                                              PAGE

STYLE AND NUMBER........................   1

APPEARANCES.............................   3


WITNESS:    J. GRAHAM GOLDSMITH

EXAMINATION BY MS. TRAHAN-LIPTAK......  6


CERTIFICATE OF REPORTER..............  85


                  EXHIBITS

             (ATTACHED TO TRANSCRIPT)

 NUMBER          DESCRIPTION                 PAGE

EXHIBIT 1     MEMBERSHIP PLAN................ 24

EXHIBIT 2     2021 MEMBERSHIP DIRECTORY...... 50

EXHIBIT 3     MEMBERSHIP APPLICATION......... 54

EXHIBIT 4     EXPULSION LETTER DATED

              OCTOBER 10, 2024............... 72

EXHIBIT 5     E-MAIL CHAIN, SUBJECT TWC

              COMMITTEE - DISCIPLINARY

              HEARING........................ 78

EXHIBIT 6     WESTMOOR CLUB LETTER DATED

              JANUARY 29, 2025............... 81

P R O C E E D I N G S

THE REPORTER:  Good morning.  We are on the record.  Today's date is March 25, 2026.  The time is 9:30 a.m. Eastern time.

My name is Karisa Ekenseair.  I am a certified shorthand court reporter.  This is the deposition of J. Graham Goldsmith.

Will counsel please make a record of their appearances, starting with the noticing attorney please.

MS. TRAHAN-LIPTAK:  Yes.  Good morning.  My name is Hayley Trahan-Liptak, and along with my colleague Cayla Nyante-Brown, we represent Plaintiff Regen Horchow.

MR. CHAPMAN:  Good morning.  This is Tyler Chapman.  I represent the Westmoor Club.

THE REPORTER:  Will counsel please stipulate that in lieu of formally swearing the witness, the reporter will instead ask the witness to acknowledge that their testimony will be true under penalties of perjury, that counsel will not object to the admissibility of the transcript based on proceeding in this way and that the witness has verified that they are, in fact, J.

GRAHAM GOLDSMITH, beginning with the noticing attorney, please?

MS. TRAHAN-LIPTAK:  No objection.

MR. CHAPMAN:  Yes.  So stipulated.

J. GRAHAM GOLDSMITH

of lawful age, being first duly sworn, deposes and says in reply to the questions propounded as follows:

MR. CHAPMAN:  And, I'm sorry, before we proceed, my colleague Meghan Huggan has now also joined.

MS. HUGGAN:  Good morning.

MR. CHAPMAN:  Yeah.  Thanks for turning the screen off.  Thanks, Meghan.

MS. TRAHAN-LIPTAK:  And at the same time, can we also note for the record the club representative, Tyler?

MR. CHAPMAN:  Yes.  John Cowden, who is not an attorney but works at the Westmoor Club, is here as well watching.

THE REPORTER:  I believe all appearances are noted, Counsel, so we can proceed.

MS. TRAHAN-LIPTAK:  Great.  We'll proceed.

EXAMINATION

BY MS. TRAHAN-LIPTAK:

Q   Good morning, Mr. Goldsmith.  Thank you for joining us today.  My name is Hayley Trahan-Liptak.  As I am sure you're aware, I represent the plaintiff here, Regen Horchow.

Before I begin, I'd just like to go through a couple housekeeping matters to make sure we all understand the rules of the road today.

As you know, this is a remote proceeding, so it's important that we take it slow.  We don't talk over each other so we can make sure the court reporter can get everything down and to make sure there is a clear record and transcript.

As part of that, I ask that whenever you answer a question, you answer it verbally and not with a shake of your head or a nod of your head so that the court reporter can make sure she transcribes that information.

Does that make sense?

A   Sure.

Q   At the end of the deposition today, we will receive a transcript in a couple days.  At that opportunity, you'll be -- at that time, you'll be given opportunity to review the

transcript and correct anything that may have been transcribed correctly -- incorrectly.

Does that make sense to you?

A  Yes.

Q  At any time today, if you need to take a break, please let us know and we're happy to take a break for any reason.  We just ask that you answer the question that's been posed to you at the time before doing so.

Just for clarity, during the deposition today I will be referring to the plaintiff, Regen Horchow, as either "Regen" or "Ms. Horchow."  Can we all agree that when I do that, I mean Regen Horchow and her former name was Ms. Regen Fearon.

Does that make sense to you?

A  Yes.

Q  Also be referring to "the membership" during the deposition today.  Just so we're all in agreement, when I refer to "the membership" or the "club membership," I'm referring to the membership that's at issue today subject to the complaint; and that's the membership filed on -- membership application filed on August 10th of 2004, and given the membership number F007.

Do you agree with that?

A   If that's what it said, yes.

Q   All right.  And then, finally, I'll be referring to the Westmoor Club as "the Westmoor" or "the Club."  And just so we're all understanding that that's what I'm referring to, is the Westmoor Club when I use those terms.

Do you agree with that too?

A   Yes.  We're talking about the Westmoor Club, yes.

Q   Correct.  Great.  So with that background out of the way, can you please state your full name and spell your last for the record?

A   John Graham Goldsmith.

Q   Where do you -- where do you reside, Mr. Goldsmith?

A   Well, I'm -- we are in Jupiter Island, Florida in the winter; Nantucket in the summer, and Stowe, Vermont in the summer also.  Okay.

Q   Great places.  Have you ever sat for a deposition before?

A   Only once, yeah.

Q   And what type of matter was that deposition for?

A   What kind of -- what was it for?

Q   What type of -- what type of matter?  What type of complaint?

A   Had to do with a construction -- I'm an architect.  Had to do with some construction.

Q   Have you ever sat for a deposition before on behalf of the Westmoor Club before?

A   No.

Q   Have you done anything to prepare for today's deposition?

A   A little bit.

Q   Outside of meeting with your lawyers, what have you done to prepare for the deposition today?

A   Just trying to anticipate what you might ask.

Q   Did you speak about this deposition with anyone outside of your lawyers?

A   I think my wife and I were wondering why we were doing it.  Yeah.  It came up.

Q   Other than your wife, did you speak about the deposition with anyone else at the club?

A   We did speak -- I have spoken with John Cowden in the past about it.

Q   When did you speak with Mr. Cowden about

the deposition?

A   Just the other day.

Q   Do you recall what you spoke to Mr. Cowden about?

MR. CHAPMAN:   Just before you answer, Graham, counsel is asking about conversations you had with Mr. Cowden outside my presence, if there were any.

Q   That's correct.

A   You know, I -- this has been going on for three years or so, so I have talked to Mr. Cowden in the past about it.  I don't recall what we exactly covered, but it's been a long time, and too long, frankly.

Q   We'll talk a little bit about those conversations later today.

Have you talked to Mr. Cowden outside of Mr. Chapman's presence about that deposition specifically?

A   Very little.  Very little because I'm not that familiar with what happened exactly.

Q   All right.  Have you spoken with Mr. Jeffrey Fearon about this deposition?

A   No.

Q  Have you spoken with Mr. Jeffrey Fearon about the allegations raised by Ms. Horchow's complaint?

A  I haven't, no.

Q  Did you review any documents ahead of the deposition today?

A  I'm sorry, what did you say?

Q  Did you review any documents before today's deposition?

A  What documents?

Q  Did you look at any documents before us speaking today?

A  Yeah.  I've seen one document.

Q  Is that a document that your attorney showed you?

A  We -- it was for -- I don't know who forwarded it to me, but I did see the application.

Q  Okay.  The application is the only document you recall looking at before today?

A  Yes.

Q  Okay.  And just to -- just I have to ask this question, Mr. Goldsmith, and I don't mean to intend any offense.

Is there anything that would prevent you

from testifying truthfully today, including any
medications or other conditions that would prevent
you from testifying?

A  Excuse me?  I have bad hearing.  You were
kind of -- I'm sorry, I just couldn't quite hear
you.

Q  Sure.  No problem.

Is there anything that would prevent you
from testifying truthfully today?

A  No.

Q  Could you tell me briefly about your
educational background?

A  Sure.  I graduated from high school.  I
went to Syracuse University, got a bachelor of
arts, bachelor of architecture.  Went to the
University of Pennsylvania, got a master's in
architecture with Lou Kahn studio.  That's an
opener.

Q  That's quite a bit of education.

What is your connection to Nantucket?

A  Well, my -- my mother's side, we've been
there six generations, and my dad eleven.  So we
are -- been connected there a long time.  And,
yeah, it's a place I grew up summers and still

spend time there.

Q  And what is your connection to the Westmoor Club?

A  I was the architect, the founder, and the contractor, owner.

Q  So you are an owner of the Westmoor Club?

A  Yes.  I am -- I'm part owner of the Westmoor Club.

Q  Who are the other owners of the Westmoor Club?

A  Alan Worden is a 25 percent partner; I'm a 75 percent partner.

Q  Is there a partnership agreement between you and Mr. Worden?

A  Yes.

Q  As a 75 percent partner of the Westmoor Club, does that give you ultimate control over the Westmoor Club?

MR. CHAPMAN:  Objection.  You can answer.

Objection.  Go ahead.

A  Yeah.  Now, we share responsibilities.

Q  When there's a decision related to the Westmoor Club, do you have ultimate decision authority as 75 percent owner?

Q   How many members have been expelled from the Westmoor Club?

A   Two.

Q   Does that include Ms. Horchow?

A   No.

Q   And in those instances, did the disciplinary committee discuss the expulsion prior to the expulsion decision?

A   There's been conversation.  We've had -- offered an opportunity to meet with the disciplinary committee, but in both cases, they did not take advantage of their opportunity to do so.

Q   So in both cases, the individuals were offered an opportunity to meet with the disciplinary committee before their expulsion?

MR. CHAPMAN:  Objection.

You can answer.

A   I -- I don't remember exactly.  I don't -- I think there was an offer to -- for these other members, which I don't -- what this has to do with -- with Ms. Horchow, but it's -- it's -- there was an offer, but they did not take advantage.  I just told you that.

that's right.

Q  So the way I -- so based upon this membership plan provision, is it fair to say that membership is available only to individuals that the club approves?

A  Yes.

Q  And that to become a member, an individual must first submit a membership application and a deposit?

A  Yes.

Q  And then after that application is submitted, the Club evaluates the application and determines if they wish to admit the applicant?

A  Yes.

Q  Please scroll to the top of the next page, please.  And draw your attention to the first line here, "A Membership is for an Individual."

Do you see that?

A  Yes.

Q  And this says, "Memberships may only be owned individually.  Memberships in other forms of ownership or other types of memberships may be offered in the future at the Club's discretion"; is that correct?

as, you know, family members, yes.

Q   Go to PDF page 10, please.  Sorry, one more.  Just direct your attention to the "Transfer of Membership to Spouse" provision.

Do you see that on your screen?

A   Yeah.  I can see it.

Q   And this says that, "A Member may transfer the membership to his or her spouse.  Such transfer may be made either during the Member's lifetime or upon his or her death.  The proposed transferee must apply and be approved for membership," correct?

A   That's what it says.

Q   So a member spouse is not a member of the Club unless they've separately applied for membership; is that right?

A   You got to apply to the Westmoor Club to become a member, yes.

Q   So if a married couple wishes to transfer the membership from the original applicant to the spouse, the spouse must first be approved for membership, right?

A   Yes.

Q   And they would do so by submitting a