# Exhibit 7



# Transcript of John Cowden, Jr.

**Date:** March 26, 2026
**Case:** Horchow -v- The Westmoor Club, LLC

**Planet Depos**
**Phone:** 888.433.3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

------------------------------x

REGEN HORCHOW,                 :

         Plaintiff,   :

  v.                :   Civil Action No.

THE WESTMOOR CLUB, LLC,   :   1:25-cv-11008-WGY

        Defendant.   :

------------------------------x

Virtual Deposition of JOHN COWDEN, JR.

Thursday, March 26, 2026

8:32 a.m. CST

Job No.:  626205

Pages:  1 - 84

Reported Stenographically by:

Tiffany M. Pietrzyk, CSR RPR CRR

Virtual deposition of JOHN COWDEN, JR., pursuant to notice, before Tiffany M. Pietrzyk, a Certified Shorthand Reporter in the States of Illinois, Texas, and California, Registered Professional Reporter, Certified Realtime Reporter, and a Notary Public in and for the State of Illinois.

A P P E A R A N C E S

ON BEHALF OF THE PLAINTIFF:

    HAYLEY TRAHAN-LIPTAK, ESQUIRE

    CAYLA NYANTE-BROWN, ESQUIRE

    K&L GATES, LLP

    1 Congress Street

    Suite 2900

    Boston, Massachusetts 02114

    617.261.3100


ON BEHALF OF THE DEFENDANT:

    MEGHAN E. HUGGAN, ESQUIRE

    TYLER E. CHAPMAN, ESQUIRE

    TODD & WELD LLP

    One Federal Street

    Boston, Massachusetts 02110

    617.720.2626


ALSO PRESENT:

    Ty Laird, Planet Depos Remote Technician

C O N T E N T S

EXAMINATION OF JOHN COWDEN, JR.                      PAGE

  By Ms. Trahan-Liptak                                6

E X H I B I T S

(Attached to transcript.)

DEPOSITION EXHIBITS                                  PAGE

Exhibit 1    The Westmoor Club Membership           26
             Plan

Exhibit 2    The Westmoor Club Membership           37
             Application of Regen Fearon

Exhibit 3    Email chain with redactions,           51
             top email from Regen Horchow,
             dated 4/7/21

Exhibit 4    Email chain, top email from            54
             Regen Horchow, dated 7/13/22

Exhibit 5    Email chain, top email from            60
             John Cowden, dated 7/2/22

Exhibit 6    Plaintiff's Original Petition          69

Exhibit 7    Letter to Ms. Horchow and Dr.          72
             Fearon from John J. Cowden,
             Jr., dated 10/10/24

EXHIBITS (Cont.)

DEPOSITION EXHIBITS                                              PAGE

Exhibit 8     Letter to Mr. Ross Parker from          73

              Michelle May O'Neil, dated

              10/16/24

P R O C E E D I N G S

(Witness sworn.)

MS. TRAHAN-LIPTAK:  Just for appearances for the record, my name is Hayley Trahan-Liptak on behalf of the plaintiff, Regen Horchow, and I'm here with my colleague Cayla Nyante-Brown.

MS. HUGGAN:  Good morning.  Meghan Huggan for the defendant, The Westmoor Club.  Also here with my colleague Tyler Chapman.

WHEREUPON:

JOHN COWDEN, JR.,

called as a witness herein, having been first duly sworn, was examined and testified as follows:

EXAMINATION

BY MS. TRAHAN-LIPTAK:

Q. Mr. Cowden, could you introduce yourself for the record and spell your last name, please.

A. Yes.  My name is John Cowden, C-o-w-d-e-n, Jr., general manager of The Westmoor Club.

Q. Thank you for joining us today, Mr. Cowden. As I said, my name is Hayley.  I'll be conducting your deposition today.  Just before we begin, couple housekeeping matters that I'm sure you're aware of from observing yesterday.

First of all, because we are remote, just a reminder for us to take it slow, try to avoid speaking over each other.  I know at times my microphone might be a bit faint, so please don't hesitate to let me know if you can't hear me for any reason.  I'll try to get a little bit closer, turn up the volume.

Because we have a court reporter today, as you know, there's a transcript of today's deposition.  At the end of the deposition, we will request a transcribed copy of the deposition and you'll be given an opportunity to review that in a number of days and make any corrections to the transcript that might be necessary.

Because we have a court reporter on, I ask that all of your answers today be verbal and not a shake of the head or a nod of the head so that the court reporter can capture all of those responses.

If you need a break today, please just ask. I tend to try to break on the hour or thereabouts to give everyone a chance to get up and stretch their legs.  But please just let me know if you need anything sooner than that.  And if you can, we please ask that you answer the question that's been

posed to you first before taking a break.

Excuse me.

A couple things just to clarify before we get started. While I'm referring today, I might refer the plaintiff as "Regen Horchow." Just for clarification, that is Regen Horchow who is formerly Regen Fearon.

Does that make sense to you?

A. Yes.

Q. Then throughout the deposition, I'll be referring to "the membership" or "the membership at The Westmoor Club." Just so we're all in agreement, I'm referring to the membership that's at dispute today, and that's the membership F007 governed by the membership application from August 10th of 2004.

Do you agree with that?

A. Yes.

Q. And then finally, just for clarity, I will refer to the club in some respects as "The Westmoor" or "The Westmoor Club," and to that I'm referring to The Westmoor Club.

Do you agree with that as well?

A. Yes.

Q. I understand today that you are testifying

with Regen Horchow.

Q. Up until that time, was Ms. Horchow a member in good standing at the club?

A. Yes. Both Dr. Fearon, Ms. Horchow, and their children were in good standing.

Q. What do you recall of when Ms. Horchow first contacted the CFO of the club? What was the substance of that request?

A. She -- she was asking our CFO to change the name -- change the name on the membership -- change the primary name on the membership from Dr. Fearon to her.

Q. What was the club's response?

A. We won't do that. We won't do that. Dr. Fearon has been listed as the primary member, and maybe in that communication or other communications, we're not going to do that without -- certainly without Dr. Fearon's permission or involvement.

Q. At that point, did you review your records to determine when Dr. Fearon was first listed as the primary member?

A. We looked at the application and sure noticed that Regen Horchow, it would appear, started

Laurie.Cowden@thewestmoorclub.com.

Do you know if that is Ms. Cowden's email address?

A. Yes, it is.

Q. Have you seen this communication before?

A. I believe I have, yes.

Q. As part of your review for today?

A. Yes.

Q. It looks like Ms. Cowden is sending Ms. Horchow a copy of the membership application?

A. That's right.

MS. TRAHAN-LIPTAK: Can you scroll up, please. Right there is good.

Q. And then there's a response from Regen Horchow that says, "As I mentioned, Jeff and I divorced but plan to continue to share the membership as we continue to co-own our home at 23 Cliff"; is that right?

A. Yes, I see that.

Q. So it looks as if in April of 2021, Ms. Horchow is telling the club that she and her now ex-husband are divorced; is that right?

A. Yes.

Q. Do you if the club maintained a list of

members who have been divorced or somehow note it in a membership application?

A. I'm not -- I'm not sure.  No, I don't know.

Q. Do you know when Ms. Horchow's divorce had been final?

A. I don't believe we ever learned when it was final, but it happened sometime in 2020.

Q. At this point, any delay between 2020 and 2021 in notifying the club of the divorce was not cause for expulsion for Ms. Horchow, was it?

A. We were not aware of their divorce until she brought it to our attention.

Q. And she brought it to your attention at least as early as April of 2021?

A. Yes, I believe that's right.

Q. And at that point, there wasn't cause -- was there a cause for discipline, given the delay?

A. I -- I'd have to look at the rest of the communications.

MS. TRAHAN-LIPTAK:  We can scroll up just to see the rest of the email here.

Q. Do you know if Ms. Horchow was referred for discipline at this point because of a failure to notify the club of her divorce?

Do you remember the context of why you were sending her this?

A. I might remember if I read the email, if I may.

Q. Take your time.  Take your time.

MS. HUGGAN:  We may need to scroll down to see the full email.  I'm not sure if it goes to the next page.  Just so John is able to read it.  Thank you.

A. Okay.  Yes, I recall writing this, sending it.

Q. Do you recall the context of why you were sending this to her?

A. I -- I believe just as follow-up to Ms. Horchow and to, I guess, show our stance on the matter, that we were not going to change -- simply change the membership from Dr. Fearon's name into her name, given that he was the primary member in the system and he signed the application as the applicant.

Further, you know, reiterating, per the membership plan, we don't get involved in disputes. Our membership is only owned by individuals.  And in the case of divorce, the membership shall only

Q. Do you recall discussing the membership -- who owned the membership with anyone else at the club in July of 2023?

A. I don't recall having a conversation with anybody else at the club other than my wife, our CFO, and probably Kitty Goldsmith.

Q. In those conversations, did you take a position as to who owned the membership?

A. No. We didn't take a position because things were as they were. He signed as the applicant, and it was in the system that he was the primary membership. So I guess you could say we took a position that, based on all of that, he was the primary member.

Q. So your position, in July of 2023, was that Mr. Fearon was the primary member?

MS. HUGGAN: Objection.

You can respond.

A. Yeah, again, I -- I don't really know how to answer that, only to say, given everything, he was the primary, and we certainly weren't going to change anything unless there was a court order or an agreement between the two.

Q. At some point after this, Ms. Horchow filed