Exhibit 14



**Deposition of:**    Kitty Goldsmith

**Case:**    Regen Horchow v. The Westmoore Club, LLC and Jeffrey Fearon

**Date:**    5/29/2024

**Prepared by:**

**Elite Deposition Technologies, Inc.**
**400 N. Saint Paul Street, Suite 1340**
**Dallas, TX 75201**
**866-896-2626**
**www.elitedeps.com**
**deps@elitedeps.com**

HORCHOW_0005

CAUSE NO. DC-23-13481

REGEN HORCHOW,                    ) IN THE DISTRICT COURT
                                  )
      Plaintiff,                  )
                                  )
VS.                               ) DALLAS COUNTY, TEXAS
                                  )
THE WESTMOORE CLUB, LLC,          )
and JEFFREY FEARON,               )
                                  )
        Defendants.               ) 191ST JUDICIAL DISTRICT

-------------------------------------------------------
ORAL DEPOSITION OF
KATHERINE GOLDSMITH
MAY 29, 2024
(REPORTED REMOTELY)
-------------------------------------------------------

ORAL DEPOSITION OF KATHERINE GOLDSMITH, produced as a witness at the instance of the Plaintiff, and duly sworn, was taken in the above-styled and numbered cause on MAY 29, 2024, from 11:01 a.m. to 12:28 p.m., before Jodi Goodman, CSR, RPR, CRR, CRC in and for the State of Texas, reported by machine shorthand, via Zoom Videoconference, pursuant to the Texas Rules of Civil Procedure.

A P P E A R A N C E S

FOR THE PLAINTIFF:
    Ms. Melissa Miles
    FRIEDMAN & FEIGER, LLP
    SBOT NO. 90001277
    17304 Preston road
    Suite 300
    Dallas, Texas  75252
    972-788-1400

FOR THE DEFENDANTS:
    Mr. Ross H. Parker
    MUNSCH HARDT KOPF & HARR, P.C.
    SBOT NO.  24007804
    500 N. Akard Street
    Suite 4000
    Dallas, Texas 75201
    214-855-7511

ALSO PRESENT:
    Ms. Regen Horchow

HORCHOW_0007

**Deposition of Kitty Goldsmith** 5/29/2024

INDEX

PAGE

Appearances..................................... 2

KATHERINE GOLDSMITH
     Examination by Ms. Miles................... 4

Signature and Changes...........................57
Reporter's Certificate..........................59

P R O C E E D I N G S

MAY 29, 2024

(Deposition commenced at 11:01 a.m.)

THE REPORTER:  If you will raise your right hand for me, I'll swear you in.

(Witness sworn)

THE REPORTER:  Thank you, go ahead.

MR. PARKER:  You want appearances for the record?

THE REPORTER:  Sure, go ahead.

MR. PARKER:  I'm Ross Parker here on behalf of the witness, Ms. Kitty Goldsmith, as counsel for the Westmoore Club, LLC, and this deposition is being given subject to the special appearance filed by The Westmoore Club and pursuant to the order entered by Judge Tillery on April 1st, 2024, regarding special appearance and a hearing on same.

MS. MILES:  Good morning.  Melissa Miles. I'm here on behalf of the Plaintiff, Regen Horchow, and my client, Regen Horchow, is also attending the deposition.

Are we ready?

THE REPORTER:  I'm ready.

MS. MILES:  Great.

KATHERINE GOLDSMITH,

having been first duly sworn, testified as follows:

EXAMINATION

BY MS. MILES:

Q.   Ms. Goldsmith, you -- you heard me introduce myself.  My name is Melissa Miles and I'm representing Regen Horchow in this matter.  Appreciate you being here this morning.  Can you please state and spell your full legal name for the court reporter?

A.   Katherine, K-A-T-H-E-R-I-N-E, Goldsmith, G-O-L-D-S-M-I-T-H.

Q.   And what is your -- the address of your primary residence, Ms. Goldsmith?

A.   Primary residence is 201 Grenville Road, Hobe Sound, Florida, 33455.

Q.   And do you maintain a residence in Nantucket?

A.   Yes.

Q.   And what's the address of your residence in Nantucket?

A.   86 Pocomo, P-O-C-O-M-O, Road, Nantucket.

Q.   And do you have an e-mail address, Ms. Goldsmith?

A.   Yeah, it's kittygoldsmith@gmail.

Q.   And do you have a cell phone number, Ms. Goldsmith?

A.   508-680-6748.

Q.  And 508, is that a Florida area code?

A.  That's a Massachusetts area code.

Q.  Have you ever lived in Texas, Ms. Goldsmith?

A.  No.

Q.  Have you ever given a deposition before?

A.  Not that I recall.

Q.  Well, I want to start by explaining a little bit about the deposition process.  A deposition is giving sworn testimony.  You heard the court reporter swear you in and it's just as if you were giving testimony in court.  Have you ever given testimony in a court case?

A.  Not that I recall.  Except as a guardian ad litem, actually, I did.

Q.  Okay.  So if you give testimony in that case or saw someone give testimony in that case, you know, they often get up on a witness stand.  They're sworn in and they give sworn testimony and this is the same as that.  Your testimony has the same effect.  It's being taken down word for word by a court reporter.  We're just not inside a courtroom, but it has all the same effect.  The Judge is not here to rule on objections today, but if -- if the case presents itself, the Judge will rule on objections later in the case.

So you're going to hear -- you may hear me

make an objection.  You may hear the lawyer for the Westmoore, Mr. Parker, make objections, and those are just for the record, and then unless Mr. Parker instructs you not to answer the question, then you'll be expected to answer the question and then we'll just move forward.

And so given that the -- everything is being taken down by a court reporter I'm going to ask you to do a few things for me and see if I can get your agreement on a few things.  And the first thing is for us not to talk over each other.  Will you agree to let me finish my question completely before you answer even though you may know the answer before I get to the end of my statement?  It just makes it easier for the court reporter.

A.  Yes.

Q.  Thank you.  And is there anything that you know of that we should be aware of that would prevent you from being able to give accurate and truthful testimony today?

A.  Is there anything what?

Q.  Anything that you know of for -- I'll give you an example.  Some people are on medication and they're aware that it affects their -- their memory or their ability to think clearly, maybe, in the morning.  Are

you taking any medication that would tend to have that effect that you're aware of?

A. No.

Q. Anything else that you can think of that might affect your ability to give accurate and truthful testimony today?

A. No.

Q. I'm going to be asking you some questions for the next couple of hours, Ms. Goldsmith, and when I do, if you don't understand the question, will you agree with me that you'll tell me that you don't understand it and give me an opportunity to -- to restate the question? Will you agree with me to do that?

A. Yes.

Q. And if you don't hear my question, will you agree with me that you'll just ask me to repeat it?

A. Yes.

Q. And will it be fair to assume that if you answer my question without saying that you don't understand the question or you didn't hear it clearly, that we can rely on -- on your answer to the question, we can assume that you -- that you heard and understood the question?

A. Yes.

Q. And when I say Westmoore in this case -- and

this is just sort of for purposes of shorthand.  When I say Westmoore, will you understand me to be referring to The Westmoore Club, LLC, who is a Defendant in this case?

A.  Yes.

Q.  And tell me, what is your connection to Westmoore?

A.  I'm married to the owner.

Q.  But you, yourself, are not an owner?

A.  No.

Q.  And what is your -- is it your husband?

A.  Yes.

Q.  What's your husband --

A.  Graham Goldsmith.

Q.  Graham?  Does Graham Goldsmith own the Westmoore today?

A.  Yes.

Q.  Is Graham the only owner of the Westmoore?

A.  No.

Q.  Who are the other owners today of the Westmoore?

A.  Al Worden.

Q.  Worden?

A.  W-O-R-D-E-N.

Q.  W-O-R-D-E-N?

A.   N.

Q.   N as in Nancy?

A.   Yes.

Q.   Are there any other owners besides Graham and Al Worden?

A.   No.

Q.   And in 2004 did Al Worden own part of the Westmoore?

A.   Yes.

Q.   So have Graham and Al been the only -- been the only owners of the Westmoore since its inception?

A.   Yes.

Q.   And do Graham and Al Worden own the Westmoore 50/50 or what -- or some other split?

A.   No, Graham owns 75%.

Q.   And Al owns 25%?

A.   Yes.

Q.   And are they direct owners as in members of the LLC or do they use entities?

A.   I assume they're direct owners.  I'm not sure. I don't have the agreement in front of me.

Q.   And when was the Westmoore established?

A.   2004.

Q.   And is it a private club?

A.   Yes.

Q.  Do you know how many Texas members the Westmoore has today?

A.  I do not.

Q.  Is Peter Hicks, in your opinion, the best person to answer that question?

A.  No.  Peter Hicks was there in 2004.

Q.  Is that better answered by Logan Gomes today?

A.  She could answer that.

Q.  Do you know what the cost of a regular -- and by regular, I mean a nonresident membership at the Westmoore today?

A.  Yes.

Q.  How much is it?

A.  625,000.

Q.  You said in 2004 you were on site in the day-to-day.  Is that a fair characterization?

A.  Yes.

Q.  And today that's -- that's different for you?

A.  Yes.

Q.  How long has it been since you've been a part of the day-to-day operations at the Westmoore?

A.  15 years.

Q.  Is it your testimony that you don't recall attending physical therapy with Ms. Horchow back in the early 2000s?

and Al Worden about who decided who would be a member in 2004.  Is that true?

MR. PARKER:  Objection; form.

A.  No.  No, John Cowden was not the manager in 2004.

Q.  (BY MS. MILES)  I'm sorry.  Al -- I was speaking of the other -- I'm sorry.  Al Worden.  You told me early in the deposition that deciding -- deciding upon whether a member was admitted was a process that was undertaken by you, your husband, Graham, the co-owner, Al Worden, and I believe your membership director who was Peter Hicks at the time.  Is that true?

A.  Yes.

Q.  And isn't it true that you all made a decision about this membership application in 2004?

A.  Yes.

Q.  And is it your testimony that the people I just described, including you, looked at this membership application and said, we're admitting Jeff Fearon as a member and not Regen.  Is that true?

MR. PARKER:  Objection; form.

Q.  (BY MS. MILES)  Is that what you did?

A.  No.  I don't recall --

Q.  Isn't it true -- isn't it true, Ms. Goldsmith,

that you all, the people who reviewed these membership applications, looked at this membership, the one that I have on the screen and made the decision to admit Regen Fearon as a member of the Westmoore.  True?

MR. PARKER:  Objection; form.

Q.  (BY MS. MILES)  True?

A.  Yes.

Q.  Yes?

A.  Regen and her family.

Q.  Yes.  So thank you.

So tell me, Ms. Goldsmith, when did the club decide that after they admitted Regen Fearon as a member that they would give that membership to Jeff Fearon?  When was that?

MR. PARKER:  Objection; form.

A.  I don't know.  I don't recall.

Q.  (BY MS. MILES)  But isn't it true that at some point years later when lawyers got involved, that the Westmoore decided they would change their position that this was Regen's membership and call it Jeff Fearon's membership.  True?

MR. PARKER:  Objection; form.  Do not answer that question.

Q.  (BY MS. MILES)  True?  True?

MR. PARKER:  Objection; form.  Do not

HORCHOW_0057