# **<u>Exhibit 21</u>**

FILED
8/29/2023 3:03 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Kajuana Cook DEPUTY

2 CIT ESERVE
JURY DEMAND

CAUSE NO. DC-23-13481
_____

| | | |
|---|---|---|
| **REGEN HORCHOW,** | § | **IN THE DISTRICT COURT** |
| | § | |
| *Plaintiff,* | § | |
| | § | 134th |
| **v.** | § | **_____ JUDICIAL DISTRICT** |
| | § | |
| **THE WESTMOOR CLUB, LLC, and** | § | |
| **JEFFREY FEARON,** | § | |
| | § | |
| *Defendants.* | § | **DALLAS COUNTY, TEXAS** |

### PLAINTIFF'S ORIGINAL PETITION

**TO THE HONORABLE JUDGE OF SAID COURT:**

**COMES NOW,** Plaintiff Regen Horchow, who files this, her Plaintiff's Original Petition complaining of and against Westmoor Club, LLC, and Jeffrey Fearon and, for cause, would show unto this Honorable Court as follows:

### I.
### DISCOVERY CONTROL PLAN

1.    Discovery shall be conducted under Level 2 pursuant to Rule 190.3 of the TEXAS RULES OF CIVIL PROCEDURE.

### II.
### PARTIES

2.    **Plaintiff Regen Horchow** is an individual resident of Dallas County, Texas.

3.    **Defendant Westmoor Club, LLC** is a Massachusetts Limited Liability Company. Westmoor may be served with process by serving its Registered Agent, Stephen L. Cohen, at 34 Main Street, 2nd Floor, Nantucket, MA, 02554, or wherever else he may be found.

---

HORCHOW_0224

4.      **<u>Defendant Jeffrey Fearon</u>** is an individual Texas resident who resides in Dallas County, Texas.  Mr. Fearon may be served with process at his residence at 9785 Audubon Place, Dallas, Texas, 75220 or wherever else he may be found.

**III.**
**<u>JURISDICTION & VENUE</u>**

5.      Jurisdiction is proper in this Honorable Court as the damages fall within the jurisdictional limits of this Court.  Venue is proper and mandatory in Dallas County, Texas, because it is the county in which all or part of the events or omissions which give rise to the claims set forth herein occurred.  This Honorable Court has jurisdiction over the Defendants because the Defendants are amenable to process issued by the courts of Texas in that the Defendants have committed the torts of fraud, in whole or in part, within Texas. In addition, the non-resident Defendant has, wholly or in part breached their contract with the Plaintiff in Texas.

6.      Moreover, the assumption of jurisdiction by this Honorable Court over the non-resident Defendant does not offend traditional notions of fair play and substantial justice and does not deprive the Defendant of due process as guaranteed by the Constitution of the United States.  The Defendant established minimum contacts in Texas by acting and taking advantage of the privilege of conducting marketing activities within Texas, thus invoking the benefits and protections of Texas' laws.  On the facts present in this case, and under the minimum contacts analysis, the non-resident Defendant in this case had substantial connection with Texas arising from actions and conduct that the Defendant purposefully directed toward the State of Texas and the Plaintiff and out of which contacts the causes of action pled in the Plaintiff's Original Petition arose, giving rise to specific personal jurisdiction.

HORCHOW_0225

7.    Pursuant to TEX. R. CIV. P. 47, the Plaintiff seeks monetary relief over $200,000 but not more than $1,000,000.00.[1]

## IV.
## FACTS

8.    This case is about a highly valuable, elite and exclusive private club membership that was a gift to Plaintiff, Regen Horchow ("Regen"), from her father, and the desperate and fraudulent attempt by Jeffrey Fearon, Regen's ex-husband, inexplicably aided and abetted by the Defendant Westmoor, to defraud Regen of that membership for its $500,000 monetary value.

9.    Plaintiff Regen Horchow, formerly Regen Fearon, was married to Defendant Jeffrey Fearon ("Fearon") in 1998 and together they raised three children before divorcing in 2020.

10.    Regen's parents, Mr. and Mrs. S. Roger Horchow ("Mr. and Mrs. Horchow"), both now deceased, were prominent members of the Dallas, Texas and Nantucket, Massachusetts communities.  Mr. and Mrs. Horchow were well known throughout their lives to spend their family summer vacations on Nantucket Island and as longtime members of the Nantucket Yacht Club and Cliffside Beach Club.

11.    Nantucket in the summer was a Horchow family tradition for decades before Regen and Fearon married in 1999. Once married, Fearon clearly deeply enjoyed his access to the Horchows' private club memberships and introductions to their social connections.

12.    In or about the summer of 2004, Mr. and Mrs. Horchow received a marketing phone call in Dallas, Texas from Defendant Westmoor's representative explaining that there was to be a new private club on Nantucket Island called The Westmoor Club.

---

[1]Plaintiff reserves the right to amend, decrease and/or increase the amount of damages plead based on evidence developed before trial.

HORCHOW_0226

13.    The Westmoor representative described the plans for The Westmoor Club as an elite and exclusive private club catering to families with children, offering swimming pools, tennis courts, a restaurant, and a plethora of other amenities attractive to families.

14.    The Westmoor representative solicited Mr. and Mrs. Horchow to purchase memberships in The Westmoor Club for themselves and their adult children.

15.    Mr. and Mrs. Horchow declined to purchase memberships in The Westmoor Club at that time but agreed, at the Westmoor representative's urging, to further discuss in person Westmoor Club memberships when they next were in Nantucket.

16.    Mr. Horchow told two of his daughters, Regen and Elizabeth, about his conversation with the Westmoor representative, and in July 2004, while the Horchows were on vacation in Nantucket, Mr. Horchow, Plaintiff Regen Horchow (then, Regen Fearon) and Regen's sister, Elizabeth Routman, all went together to see the proposed site of The Westmoor Club and to speak further with the Westmoor representative.

17.    After touring Defendant Westmoor's facility site and speaking extensively with Westmoor's representative, Mr. Horchow informed Defendant Westmoor's representative that he would like to buy a Westmoor Club membership for each of his two daughters present at the meeting, Regen and Elizabeth.

18.    Defendant Westmoor's representative stated that the cost of the memberships at the "Regular" level (meaning, for non-residents) were $125,000 each, and that Defendant Westmoor would require a deposit of $25,000 each for Mr. Horchow's daughters' memberships and completed applications from Regen and Elizabeth.

19.    On July 30, 2004, Mr. Horchow delivered a single check to Defendant Westmoor for $50,000 to provide the two $25,000 deposits for Regen's and Elizabeth's memberships (the

HORCHOW_0227

"Westmoor Membership Deposit Check"). A true and correct copy of the Westmoor Membership Deposit Check is attached to this Petition as **Exhibit 1** and incorporated as if fully set forth herein.

20.    A Westmoor Club representative wrote on the top of the Westmoor Membership Deposit Check **"For Regen Fearon – Regular; and Elizabeth Routman – Regular**." **Ex. 1.**

21.    Approximately five weeks later, Mr. Horchow delivered a second check to Defendant Westmoor for $200,000, paying the balance in full for Regen and Elizabeth's Westmoor Club memberships (the "Westmoor Membership Payment"). A true and correct copy of the Westmoor Membership Payment is attached this Petition as **Exhibit 2** and incorporated as if fully set forth herein.

22.    Meanwhile, Regen took home the Westmoor Club Membership Application that was given to her by the Westmoor representative (the "Application"), and she filled out the Application by hand. A true and correct copy of the Application is attached this Petition as **Exhibit 3** and incorporated as if fully set forth herein.

23.    Regen identified herself as the <u>Applicant</u> for membership in the Application and provided her personally identifying information such as her date of birth and social security number in the appropriate spaces provided. **Ex. 3.**

24.    In the Application's section titled "Applicant's Spouse," Regen wrote in Fearon's name and provided his personally identifying information in the appropriate spaces provided. **Ex. 3.**

25.    In the Application's section titled "References" and which asked for the Applicant's other club membership references, Regen identified <u>her club membership</u> at the Nantucket Yacht Club and a gym membership, in <u>neither of which club was Fearon ever a member</u>. **Ex. 3.**

---

26.     In the Application's section calling for the Applicant's individual references, Regen provided the names of two married couples with whom Regen had been close friends for many years prior to the marriage and who knew Fearon only through Regen's marriage to Fearon. **Ex. 3**.

27.     When Regen finished providing the information requested for <u>her</u> application to the Club, she asked Fearon to sign as her spouse. Fearon accidentally signed on the "Applicant" line. Regen signed on the open line not realizing that the lines were labeled or that it mattered in what order the application was signed.

28.     On or about August 15, 2004, Regen received by mail at her Dallas home a letter from Defendant Westmoor notifying her that her application for membership had been approved and requesting payment in full for the membership (the "Approval Letter"). A true and correct copy of the Approval Letter is attached this Petition as **Exhibit 4** and incorporated as if fully set forth herein.

29.     Shortly thereafter, Regen's sister Elizabeth also received an approval letter from Westmoor.  And on September 10, 2004, Regen's father Mr. Horchow sent Defendant Westmoor the $200,000 Westmoor Membership Payment paying the balance in full for Regen and Elizabeth's Westmoor Club memberships. **Ex 2.**

30.     For the next many years, all was well with the Horchow/Fearon charmed Nantucket summers and The Westmoor Club. Each month Defendant Westmoor sent its dues/fees bill to Regen's Dallas, Texas address, and each month Regen paid Westmoor's bill.

31.     By 2019, Regen's marriage to Fearon had become intolerable. Regen filed for a divorce which was final in 2020.

HORCHOW_0229

32.    Wanting to maintain as much normalcy as possible for her children despite the divorce, Regen agreed to maintain the Westmoor Club membership, to allow Fearon to separately vacation with their children in Nantucket, and for Fearon to continue to take the kids to the Westmoor Club.

33.    On or about April 6, 2021, Regen was perusing Westmoor's online members' portal and noticed that in her membership profile, Westmoor listed <u>Fearon</u> as the Westmoor Member and Regen as the Member's spouse. Regen did not remember ever seeing this error before and believed it to have been recently changed. Regen wrote to the Westmoor manager to ask Westmoor to correct the profile to reflect that she was the Westmoor Member, and that Fearon was now the ex-spouse.

34.    The following spring (2022) when Fearon continued to use the Club, now accompanied by his girlfriend, all under Regen's membership, Regen again requested a correction to the listing.  The Westmoor manager avoided responding to Regen's direct request to correct the profile. The Westmoor manager instead informed Regen that Westmoor did not "get involved" in their Members' divorces, and that the Westmoor membership could be suspended until Regen and Fearon decided who would be taking the membership pursuant to the terms of The Westmoor Club Membership Plan.

35.    Acknowledging that a suspension was a prerogative of the Club in the circumstances, Regen requested that the Club allow <u>both</u> Fearon and Regen to use the Club for the remainder of the 2022 season.  Regen assured Westmoor's manager that she would keep her account in good standing until she and Fearon determined how to handle the Westmoor membership post-divorce.

HORCHOW_0230

36.    As the summer of 2023 approached and Fearon opportunistically asserted that the membership was his, Regen alerted the Westmoor that there was discord and suggested that the Westmoor use its prerogative to suspend the membership.  The Westmoor took that action and appeared prepared to abide by its agreement with Regen as stated in the The Westmoor Club Membership Plan.

37.    The Westmoor Club Membership Plan section titled, "Separation and Divorce," states that:

> In the case of divorce of a married Member, the membership shall belong to the spouse designated on the Membership Application as the Member unless otherwise provided by agreement between the parties or by court order. (Emphasis added).

A true and correct copy of The Westmoor Club Membership Plan is attached to this Petition as **Exhibit 5** and incorporated as if fully set forth herein.

38.    As between Regen and Fearon, Regen was "the spouse designated on the Membership Application as the [Westmoor] Member," and both Fearon and Westmoor knew this to be true beyond any doubt.  **See Exs. 1-3**.

39.    Regen did not agree upon her divorce from Fearon to give her Westmoor membership to Fearon, and there was no court order awarding Fearon the Westmoor membership. The Westmoor Club membership, therefore, clearly belonged to Regen pursuant to The Westmoor Club Membership Plan terms. **Ex. 5.**

40.    When Regen attempted to discuss with Fearon the terms under which she would consider allowing Fearon to acquire her Westmoor Club membership, Fearon informed Regen that he had discussed the issue with Westmoor; that Westmoor had agreed with Fearon's inane proposition that Fearon's (accidental) signature on the last page of the Application on the line under which small print read "Applicant" was sufficient for Defendant Westmoor to declare that

HORCHOW_0231

Fearon, <u>not Regen</u>, had been the membership Applicant; and that the membership upon their divorce <u>belonged to Fearon</u>, not Regen.

41.    In stunned disbelief, Regen called Defendant Westmoor's manager. Defendant Westmoor's manager confirmed to Regen that this in fact was Westmoor's position; that Regen's Westmoor membership was no longer suspended; and that <u>Fearon</u>, and <u>not Regen</u>, now had the <u>exclusive rights</u> to the membership – a membership <u>given to Regen as a gift by her father</u> and which has a <u>present value</u> of <u>$500,000</u>.

## V.
### CAUSES OF ACTION

**Texas Uniform Declaratory Judgments Act**

42.    A justiciable controversy exists between the parties to this action as to the Plaintiff's contractual rights to the Westmoor Club membership as well as Defendant Westmoor's obligations to Plaintiff under The Westmoor Club Membership Plan.

43.    Pursuant to Texas Civil Practice and Remedies Code 37.004, Plaintiff requests this Court to declare the following:

(i)    That Plaintiff, Regen Horchow, formerly Regen Fearon, was the Applicant for membership to the Westmoor Club;

(ii)    That upon Plaintiff's divorce from Defendant Fearon, Plaintiff was the spouse designated on the Membership Application as the Westmoor Club Member; and

(iii)    That upon Plaintiff's divorce from Defendant Fearon, the Westmoor Club membership belonged to Plaintiff.

HORCHOW_0232

**Breach of Contract – As to Defendant Westmoor**

44.     The actions and/or omissions of Defendant Westmoor described hereinabove constitute breach of contract which breach proximately caused direct and consequential damages to Plaintiff.

45.     All conditions precedent to Plaintiff's breach of contract claim against Defendant Westmoor have been performed.

**Tortious Interference – As to Defendant Fearon**

46.     The elements of tortious interference with an existing contract are: (i) an existing contract subject to interference; (ii) a willful and intentional act of interference with the contract; (iii) that proximately caused the plaintiff's injury; and (iv) caused actual damages or loss. *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc*., 29 S.W.3d 74, 77 (Tex. 2000).

47.     Plaintiff had a valid, enforceable contract with Westmoor. By his conduct, Defendant Fearon willfully and intentionally interfered with the contract and caused Plaintiff injury. This injury proximately caused direct and consequential damages to Plaintiff.

**Civil Conspiracy to Defraud – As to All Defendants**

48.     The elements of a civil conspiracy are (1) a combination of two or more persons; (2) the objective to be accomplished is an unlawful purpose or a lawful purpose by unlawful means; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result. *Ins. Co. of N. Am. v. Morris*, 981 S.W2d 667, 675 (Tex. 1998).

49.      The Defendants, in combination, have conspired to defraud and have defrauded Plaintiff of her contractual rights, privileges and financial interests in her Westmoor Club membership, and have unlawfully transferred those rights, privileges and financial interests to Defendant Fearon.

HORCHOW_0233

50.    Defendant Fearon's motive is obvious; Fearon desperately seeks the $500,000 financial asset and an elite and exclusive private club membership that, with no other club memberships or personal references, Fearon could not qualify for on his own.

51.    Fearon's only hope to acquire this $500,000 financial asset and maintain it as a symbol of status he previously had been able to enjoy solely by virtue of his marriage into the Horchow family was to conspire with Defendant Westmoor to defraud Plaintiff of her rights to the Westmoor Club membership.

52.    Defendant Westmoor's motive is less obvious but is perhaps hiding in plain sight. Westmoor inexplicably willingly conspired with Fearon to breach its Membership Agreement with its member, Regen Horchow, in order to give deference to Fearon's blatantly false and baseless claim to the club membership as if, by the sheer virtue of his gender, Jeffrey Fearon is entitled to the Club membership.

53.    Plaintiff has suffered damages as a proximate result of Defendants' unlawful actions.

## VI.
### ATTORNEY'S FEES

54.    Plaintiff re-alleges each and every paragraph as though they are set forth fully herein.

55.    Plaintiff seeks all costs of suit and reasonable and necessary attorney's fees incurred by or on behalf of Plaintiff, including all fees necessary in the event of an appeal of this cause to the Court of Appeals and the Supreme Court of Texas, as the Court deems equitable and just pursuant to Chapters 37 and 38 of the Texas Civil Practice and Remedies Code and common law.

HORCHOW_0234

## VII.
### EXEMPLARY DAMAGES

56.     Plaintiff re-alleges each and every paragraph as though they are set forth fully herein.

57.     The acts of Defendants complained of herein were committed knowingly, willfully, intentionally, with actual awareness, or with actual malice.  In order to punish Defendants for such unconscionable overreaching and reckless actions and to deter such actions and/or omissions in the future, Plaintiff seeks recovery from Defendants of exemplary damages as provided by Chapter 41 of the Texas Civil Practice and Remedies Code.

## VIII.
### NO WAIVER

58.     By filing this lawsuit, Plaintiff does not waive or release any rights, claims, causes of action, or defenses or make any election of remedies that she has, but expressly reserve such rights, claims, causes of action and defenses.

## IX.
### CONDITIONS PRECEDENT

59.     All conditions precedent to the Plaintiff's right to recovery has been performed, have occurred, and/or have been waived.

## X.
### NOTICE TO PRESERVE EVIDENCE

60.     Defendants are hereby given notice that any document or other material, including electronically-stored information, that may be evidence or relevant to any issue in this case is to be preserved in its present form until this litigation is concluded.

HORCHOW_0235

## XI.

### NOTICE PURSUANT TO RULE 193.7

61.     Plaintiff hereby provides notice to all Defendants that pursuant to Rule 193.7 of the

Texas Rules of Civil Procedure Plaintiff may utilize as evidence during the course of this lawsuit

all documents exchanged by the parties in written discovery in this case.

## XII.
### REQUEST FOR JURY TRIAL

62.     Plaintiff hereby requests a jury trial on all issues.

### PRAYER

**WHEREFORE**, **PREMISES CONSIDERED,** Plaintiff requests that Defendants be cited

to appear and answer, and that on final trial, Plaintiff be granted the following relief:

1.     Declaratory relief as requested herein;

2.     Judgment against Defendants for economic damages in an amount

within the jurisdictional limits of the Court;

3.     Judgment against Defendants for Plaintiff's actual, consequential,

and exemplary damages as a consequence of Defendants' intentional, and

malicious conduct;

4.     Judgment against Defendants for Plaintiff's reasonable and

necessary attorney's fees and costs in adjudicating this action through trial and on

appeal;

5.     Pre and post-judgment interest at the maximum amount allowed by

law;

6.     All such other and further relief, at law or in equity, as the Plaintiff

may show herself to be justly entitled.

HORCHOW_0236

Respectfully submitted,


**FRIEDMAN & FEIGER, L.L.P.**

/s/ Lawrence J. Friedman

_____
**LAWRENCE J. FRIEDMAN**
State Bar No. 07469300
lfriedman@fflawoffice.com
**MELISSA MILES**
State Bar No. 90001277
mmiles@fflawoffice.com
17304 Preston Road, Suite 300
Dallas, Texas 75252
Tel:    (972) 788-1400
Fax:    (972) 788-2667

**ATTORNEYS FOR PLAINTIFF**
**REGEN HORCHOW**

HORCHOW_0237