# Exhibit 19

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

C.A. No. 1:25-cv-11008-WGY

* * * * * * * * * * * * * * * * * * * * * * * * * *

REGEN HORCHOW,

Plaintiff,

vs.

THE WESTMOOR CLUB, LLC,

Defendant.

* * * * * * * * * * * * * * * * * * * * * * * * * *

DEPOSITION OF REGEN HORCHOW

Conducted Remotely

Friday, March 27, 2026

10:01 a.m. Eastern

Magna Legal Services

866-624-6221



would please send it to me.

Q.   Why did you do that?

A.   Because I had signed on to the website and was shocked to see that I was not listed as the primary member.

Q.   Well, why did you sign on to the website?

A.   I don't recall.

Q.   How often did you sign on to the website back in this time period of 2020-2021?

A.   I don't recall ever signing on beyond this one time.

Q.   Well --

A.   Other than to pay the bills.

Q.   Yeah, I was going to ask you that.

So I think you told me earlier you don't remember when you began to pay bills electronically.  But I assume you would do that every time you paid a bill, at least after you decided to start using the website, you would sign on for that purpose; is that correct?

A.   Correct.

Q.   Did you ever sign on to the website for any other purpose; for example, to schedule things



Page 23

at the club, make reservations?

A.    Yes.

Q.    Find out about activities?

A.    I made food reservations, dinner reservations.

Q.    I assume that similar to the transition in bill-paying, that at some point making reservations, you did that via website rather than calling up the club; is that correct?

A.    Yes, I think I did both.

Q.    Okay.    What about any kind of, like, club newsletter, is that something you received in hard copy or did you go online to look at it?

A.    I don't recall.

Q.    And then what about, how often did you go online to look at the membership directory to find out another member's contact information, et cetera?

A.    I don't recall ever doing that.

Q.    Okay.    And the membership directory that you mentioned that you have, and I believe you -- actually your counsel at least produced in this case from 2021, did you print that out from the website?



Page 24

A. No.

Q. So that was a physical copy you just had; is that correct?

A. Correct.

Q. Okay. So you said that when you found that, I guess, I think you told me Dr. Fearon, you said you were shocked to see that he was listed as the primary member; is that correct?

A. Correct.

Q. Was the time that you looked on the website and discovered that, was that close in time to April 6th of 2021?

A. Yes.

Q. What were -- do you recall what you were looking at that gave you this information that he was listed as primary?

A. I, for some reason, thought I would just go check and see how we were listed. I think it probably had to do with wanting to change my name from Fearon to Horchow.

Q. So in the year and a couple months between your divorce being finalized in February of 2020 and this time you visited the website in April of 2021, how were you and Dr. Fearon using



Page 25

The Westmoor Club?

A.   He was on Nantucket in the summer of 2020.  I was not.  I was in Nantucket for a couple of weeks in the fall, but I don't recall whether or not I went to the club when I was there.

After that, the summer of '21, again I -- if I went to the club, it was for a meal, and I don't know whether it was my reservation or a friend's.

Q.   Okay.  So it sounds like between February of 2020 and April of 2021, it's possible you didn't use the club?

A.   It's possible, but I don't recall.

Q.   Okay.  Did you and Dr. Fearon ever have a discussion prior to April 2021 about who was the primary member at Westmoor Club?

A.   No.

Q.   And then you said that you thought you went to check this because you were in the process of changing your name; is that correct?

A.   Correct.

Q.   How did that relate to the issue of who was listed as primary at The Westmoor Club?

A.   Well, I went to see how my name was



Page 26

listed and when I saw that my name was listed not only Regen Fearon, but as the spouse, that's when I was triggered.

Q.   I believe I've seen this elsewhere, we may come to it, but am I correct that as part of your divorce, you and Dr. Fearon had the view that you were going to share the Westmoor membership; is that correct?

A.   We were under the impression -- I was under the impression that we could share the use of the membership, yes.

Q.   Do you remember, was that something that was ever explicitly discussed in the process of finalizing your divorce between you and Dr. Fearon?

A.   Yes, I was attempting, in completing our divorce, to create a situation where we could coparent and coexist on behalf of our children, and we discussed the use of our house in Nantucket and we discussed the clubs, and I said that I would have no problem with him using the clubs when he was on the island.

Q.   Do you know if words to the effect of what you just said were ever put in writing?



MAGNA
LEGAL SERVICES

Page 29

she please change it back to me as the primary.

Q.   You said "change it back to."  Why did you say "back to"?

A.   Because I was admitted to the club.  I was a primary member, so it must have gotten changed at some point and I didn't catch it.

Q.   Do you recall ever seeing a time in any club documents or website that you were listed as the primary member?

A.   I don't recall seeing a designation in any of the club documents with primary or spouse.

Q.   So when you said "change it back," you're telling me that because you filled out the application, you assumed you were the primary member, but you don't ever remember seeing a club listing that got changed?

A.   I don't recall.

Q.   Is there some reason you didn't write that in this e-mail?  Instead of saying, "If it is possible to list me as the primary instead of Jeff," why didn't you say, "Is it possible to change it back to me as the primary?"

A.   I believe I did say that in subsequent e-mails.  At this point, I was trying to be



Page 50

A.    Yes.

Q.    And I assume part of your concern was that if he found out about it, he would object?

A.    Maybe.

Q.    And then at the end of that paragraph, you say that this change "doesn't impact the use of our membership in any way."  Why did you write that?

A.    Because, again, I was trying to keep the peace such that Jeff and I could both use the club with our children and carry on so that our family could, you know, have a decent relationship.

Q.    I think according to your testimony, unbeknownst to you, you had been listed as the spouse of the member and that previously had not impacted your use of the club or use of your membership; is that correct?

MS. TRAHAN-LIPTAK:  Objection.

A.    Correct.  I don't know.  I don't know if it impacted my use of the club.  I -- I never knew that I was labeled the spouse.

BY MR. CHAPMAN:

Q.    All you can do is talk about what you experienced or observed.  So you did not



Page 51

experience any impact to your membership from the fact that you were listed as the spouse prior to April of 2021?

MS. TRAHAN-LIPTAK:  Objection.

A.   I don't think I did, no.

BY MR. CHAPMAN:

Q.   Because I assume that if you did, you would have immediately said something; correct?

A.   Probably.

Q.   Before we move off this, can you think of any time that, prior to April 2021, you experienced an impact from being listed as the spouse?

MS. TRAHAN-LIPTAK:  Objection.

A.   No.

BY MR. CHAPMAN:

Q.   Sorry.  I think your counsel objected, then I didn't hear your answer.

A.   No.

Q.   And then you at the very end of this you very nicely ask if Kitty might be willing to help you with this somewhat delicate matter.  Why did you characterize it as a "somewhat delicate matter"?



Page 124

I, Cynthia A. Powers, Shorthand Reporter and Notary Public in and for the Commonwealth of Massachusetts, do hereby certify that there came before me on the 27th day of March, 2026, the person hereinbefore named, who was by me duly sworn to testify to the truth and nothing but the truth of their knowledge concerning the matters in controversy in this cause; that they were examined upon their oath, and their examination reduced to typewriting under my direction; and that the deposition is a true record of the testimony given by the witness.

I certify that I am neither attorney or counsel for, nor related to or employed by, any of the parties to the action in which this deposition is taken, and that I am not a relative or employee of any attorney or counsel employed by the parties hereto or financially interested in the action.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my notarial seal this 7th day of April, 2026.

Cynthia A. Powers, Notary Public

My Commission expires May 8, 2031

