IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| REGEN HORCHOW,<br><br>        Plaintiff,<br><br>    v.<br><br>THE WESTMOOR CLUB, LLC,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)   Civil Action No.: 1:25-Cv-11008-WGY<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF REGEN HORCHOW'S MEMORANDUM IN OPPOSITION
TO THE WESTMOOR CLUB'S MOTION FOR SUMMARY JUDGMENT**

TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................................1

II.     STATEMENT OF FACTS ..........................................................................................2

III.    LEGAL STANDARD..................................................................................................2

IV.     ARGUMENT...............................................................................................................3

        A.     Ms. Horchow has Standing to Challenge Her Expulsion ...................................3

        B.     Ms. Horchow's Claims are Not Barred by the Statute of Limitations..................5

        C.     The Club's Procedurally and Substantively Improper Expulsion
               is Subject to Judicial Review ...............................................................................10

        D.     Ms. Horchow's ch. 93A Claim does not Fail as a Matter of Law ......................13

V.      CONCLUSION..........................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Badway v. United States*,
367 F.2d 22 (1st Cir. 1966)..........................................................................................5

*Belsito Commc'ns, Inc. v. Decker*,
845 F.3d 13 (1st Cir. 2016).......................................................................................4, 5

*Cannonball Fund, Ltd. v. Dutchess Capital Mgmt., LLC*,
993 N.E.2d 350 (Mass. App. Ct. 2013) ...................................................................9, 10

*Chiocca v. Town of Rockland*,
No. 19-10482-WGY, 2022 WL 4817094 (D. Mass. Oct. 3, 2022) (Young, J) ........................2

*Garza v. Williams*,
No. 4:23-CV-3509, 2024 WL 4993910 (S.D. Tex. Dec. 4, 2024)...........................................6

*Grand Pacific Finance Corp. v. Brauer*,
783 N.E.2d 849 (Mass. App. Ct. 2003) .................................................................................15

*Green v. Whiting-Turner Contracting Co.*,
184 N.E.3d 1289 (Mass. App. Ct. 2022) .................................................................................10

*Nunez-Perez v. Escobar-Pabon*,
133 F.4th 33 (1st Cir. 2025)....................................................................................................5

*Ocasio-Hernandez v. Fortuno-Burset*,
777 F.3d 1 (1st Cir. 2015).......................................................................................................3

*Richards v. Morison*,
118 N.E. 868 (Mass. 1918) ..............................................................................................11, 12

*Salvas v. Wal-Mart Stores, Inc.*,
893 N.E.2d 1187 (Mass. 2008)................................................................................................9

*Soltys v. Wellesley Country Club*,
2002 WL 31998398 (Mass. Super. Oct. 28, 2002) .................................................................14

*Standerwick v. Zoning Bd. of Appeals of Andover*,
849 N.E.2d 197 (Mass. 2006) ..................................................................................................4

*Szymanski v. Bos. Mut. Life Ins. Co.*,
778 N.E.2d 16 (Mass. App. Ct. 2002) .....................................................................................6

**Statutes**

M.G.L. c. 93A .................................................................................................................13,15

M.G.L. c. 260, § 2 ..................................................................................................................6

M.G.L. c. 260, § 32 ................................................................................................................9

**Other Authorities**

Fed. R. Civ. P. 56(a) .............................................................................................................2

Fed. R. Civ. P. 8(c) ...............................................................................................................5

## I.    INTRODUCTION

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1, Plaintiff Regen Horchow ("Ms. Horchow") files her opposition to Defendant the Westmoor Club, LLC's (the "Club") Motion for Summary Judgment (the "Motion").

The Club's Motion conspicuously avoids the myriad factual disputes that preclude summary judgment in its favor – completely ignoring facts that go beyond raising genuine issues of material fact and indeed establish Ms. Horchow's entitlement to summary judgment. The Club's Motion rests on a fundamental misunderstanding of its own Membership Plan, and Ms. Horchow's Membership Application. The Motion fails for at least the following reasons:

*First,* Ms. Horchow has standing to challenge the Club's transfer of her Membership and its later improper expulsion of her. The Club's post-hoc position that Mr. Fearon owned the Membership at the time of expulsion cannot establish that Ms. Horchow was not admitted as a Member, or that she was not the Member at the time of expulsion. Contrary to the Club's argument, there is no issue of material fact that Ms. Horchow was admitted as a Member. At the very least, a genuine issue of material fact remains as to who was the Member at the time of expulsion that precludes summary judgment.

*Second,* the Club cannot establish that Ms. Horchow's claims are barred by the statute of limitations when (1) the Club conclusively asserted that the Membership belonged to Mr. Fearon only *after* the expulsion, (2) the Club has produced no documents from 2004 to September 2017 (at the earliest) that could have put Ms. Horchow on notice that it had improperly transferred the Membership to Mr. Fearon, and (3) Plaintiff has pursued her breach of contract claim since August 29, 2023.

1

*Third,* the Court is empowered to review the substantive and procedural shortcomings in the Club's expulsion of Ms. Horchow, and the undisputed materials facts demonstrate that the expulsion was procedurally improper. Genuine issues of material fact preclude summary judgment as to whether the expulsion was substantively proper.

*Fourth,* the cases relied upon by the Club to assert that Chapter 93A does not apply to its conduct are easily distinguished, and the Club's commercial conduct falls within Chapter 93A's confines.

## II.    STATEMENT OF FACTS

Ms. Horchow sets forth the undisputed facts supporting her response to the Club's Local Rule 56.1 Statement of Material Facts, and additional material facts, in a contemporaneously filed Responsive Statement of Material Fact ("RSOF").

## III.    LEGAL STANDARD

Summary judgment is appropriate only when (1) "there is no genuine dispute as to any material fact" and (2) that the "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of showing it has satisfied both elements. *See Chiocca v. Town of Rockland,* No. 19-10482-WGY, 2022 WL 4817094, at *7 (D. Mass. Oct. 3, 2022) (Young, J). "[The] Court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Id.* (internal citation and quotation omitted). "To succeed in showing that there is no genuine dispute of material fact, the moving party must direct [the Court] to specific evidence in the record that would be admissible at trial. That is, it must (1) affirmatively produce evidence that negates an essential element of the non-moving party's claim, or, (2) using evidentiary materials already on file . . . demonstrate that the

nonmoving party will be unable to carry its burden of persuasion at trial." *Ocasio-Hernandez v. Fortuno-Burset*, 777 F.3d 1, 4–5 (1st Cir. 2015) (internal citation and quotations omitted).

## IV.    ARGUMENT

### A.  Ms. Horchow has Standing to Challenge Her Expulsion

The Club first asserts that Ms. Horchow, "had no standing as an ex-spouse to complain about an expulsion of her ex-husband." Motion at 8. The Club's standing argument depends on a key *disputed* fact: that Mr. Fearon, and not Ms. Horchow, was the Member of the Club. The Club's standing argument boils down to asserting that because the Club ultimately treated Mr. Fearon as the Member, Ms. Horchow has no recourse for the Club's earlier wrongful transfer of her membership to Mr. Fearon, or for the Club's procedurally and substantively improper expulsion. Such a result is unjust and would insulate the Club from claims by any former Member, so long as the Club decided to treat someone else as the Member before a claim was asserted. The Club cannot both eliminate Ms. Horchow's rights by transferring her Membership and then argue that the transfer itself defeats standing.

While there is no genuine dispute that the Club now *treats* Mr. Fearon as the Member, that does not establish that Mr. Fearon was in fact the Member. As set forth in Ms. Horchow's Motion for Partial Summary Judgment ("Plaintiff's Motion"), Ms. Horchow was admitted as the Member in 2004. ECF 33 at 3 (setting forth facts establishing Ms. Horchow was admitted as a Member including: use of Ms. Horchow's personal information and references in the Membership Application, that Ms. Horchow was listed as the "Applicant" on the Membership Application, testimony by the Club's Director of Membership that members "would have been applicants at [the application] stage," the Club's Director of Membership wrote Ms. Horchow's name at the top of the Membership Application and related checks, and one of four individuals involved in

3

admitting members testified that Ms. Horchow was admitted as the Member).  Further, it is beyond dispute that Ms. Horchow's Membership was never transferred to Mr. Fearon through the process required by the Club's Membership Plan.  ECF 33 at 6 ("The Club admits that Ms. Horchow did not request a transfer of her Membership to Mr. Fearon[; t]he Membership Plan further provides that the recipient of a transferred membership must apply and be approved by the Club[;] the Club has produced no record of any application for membership completed by Mr. Fearon.").  These undisputed facts not only prevent the Court from concluding as a matter of law that the Membership belonged to Mr. Fearon but require the conclusion that Ms. Horchow was the Member.

The Club's reliance on *Standerwick v. Zoning Bd. of Appeals of Andover*, 849 N.E.2d 197 (Mass. 2006) and *Belsito Commc'ns, Inc. v. Decker*, 845 F.3d 13 (1st Cir. 2016), is misplaced; distinct from those matters, discovery here has established significant facts to support Ms. Horchow's claims.  In *Standerwick*, the Massachusetts Supreme Judicial Court affirmed a grant of summary judgment in defendant's favor based on an absence of evidence in discovery that could support plaintiffs' claims, expert affidavits submitted with defendant's motion for summary judgment demonstrating this lack of evidence, and plaintiffs' sole reliance on their own discovery responses that were "unsupported apprehension and speculation."  849 N.E.2d at 210 (internal quotation omitted).  Here, discovery has revealed no such lack of evidence to support Ms. Horchow's claims, as set forth above.  *Belsito* offers even less support to the Club.  There, the First Circuit affirmed a finding of no standing by a newspaper to assert a First Amendment claim of unlawful seizure of photographs taken by a freelance photographer who was neither contracted by nor working at the newspaper's direction.  *Belsito*, 845 F.3d at 17–20.  There, the plaintiff ***conceded*** that 1) there was no contractual relationship, 2) the photographs were not the plaintiff's

4

property, and 3) there was no "record support for [plaintiff's] injury-in-fact theory." *Id.* at 22. No such concession can be found here – Ms. Horchow maintains that she had a contract with the Club, that the Membership was her property, the Club acknowledges that the membership deposit was paid by Ms. Horchow's father on her behalf, and the Club corresponded directly with Ms. Horchow regarding her membership. ECF 34 at 5-7; RSOF ¶ 24.

Even if the Club could establish that Ms. Horchow has no standing to challenge the ***expulsion*** because the Club no longer considered her the Member, that would have no effect on Ms. Horchow's standing to challenge the transfer of her Membership to Mr. Fearon.

### B. Ms. Horchow's Claims are Not Barred by the Statute of Limitations

   i.   *The Club Waived the Statute of Limitations Affirmative Defense.*

Although the Club relies heavily on a statute of limitations argument in its motion, that defense was never raised in the Club's Motion to Dismiss or Answer. *See* ECF 7, 26. Rule 8(c) requires that "[i]n responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including: … statute of limitations." Fed. R. Civ. P. 8(c). Where a statute of limitations defense is not raised in a responsive pleading, the defense is waived. *See Nunez-Perez v. Escobar-Pabon*, 133 F.4th 33, 41–42 (1st Cir. 2025) ("Ordinarily in civil litigation, a statutory time limitation is forfeited if not raised in a defendant's answer or in an amendment thereto.") (*quoting Day v. McDonough*, 547 U.S. 198, 202 (2006)); *Badway v. United States*, 367 F.2d 22, 25 (1st Cir. 1966) ("Under Rule 8(c) of the Federal Rules of Civil Procedure the statute of limitations [defense] … must be set forth affirmatively in the pleadings. … [D]efendant did not comply with the requirements of Rule 8(c) and [the defense is] deemed to have been waived.").

The Club's catchall statement that "[t]he Club reserves the right to raise such additional and further defenses as [sic] arise or become apparent during discovery," does not cover its un-

5

asserted statute of limitations defense.  ECF 26; *See Axis Ins. Co. v. Barracuda Networks, Inc.*, 740 F.Supp.3d 80, 84 (D. Mass. 2024) (finding general affirmative defense that plaintiff failed to state a claim did not preserve judicial estoppel affirmative defense); *see also Garza v. Williams*, No. 4:23-CV-3509, 2024 WL 4993910, at *2 (S.D. Tex. Dec. 4, 2024) (finding "general denial and some topic specific defenses—none of which mention the statute of limitations" insufficient to preserve statute of limitations defense).  Any potential statute of limitations defense was revealed by the pleadings, and not during discovery, so the Club's reservation is inapplicable here.

The Court should conclude that the Club waived its statute of limitations defense.

  *ii. The Discovery Rule Tolled the Statute of Limitations.*

Even if the Court considers the Club's statute of limitations defense, genuine issues of material fact and applicable tolling principles preclude summary judgment.  The limitations period for breach of contract claims is six years.  M.G.L. c. 260, § 2.  "[W]hen a plaintiff can not reasonably ascertain the injury or breach at the time it occurred, [the] cause of action accrues when the plaintiff knows or should know that he has suffered appreciable harm resulting from the defendant's actions."  *Szymanski v. Bos. Mut. Life Ins. Co.*, 778 N.E.2d 16, 20 (Mass. App. Ct. 2002).  The undisputed facts do not establish that 1) Ms. Horchow could have reasonably ascertained that her injury occurred when the Club claims it did in 2004, or 2) that she knew or should have known that her Membership was transferred to Mr. Fearon at any time before her April 2021 correspondence with the Club.  RSOF ¶¶ 24, 55.

First, the Club claims Ms. Horchow was on notice of the Club's transfer of her Membership, asserting without any support that the transfer occurred in 2004, and the statute of limitations began running then.  Motion at 9.  Such a conclusion is wholly unsupported by the undisputed facts.  The Club has not produced a single document, other than the membership

application, from 2004 until 2013. RSOF ¶ 12. There are no membership records, rosters, or other documents from this period that reveal that the Club considered Mr. Fearon the Member, let alone records that were accessible to Ms. Horchow that would have put her on notice of this transfer. The sole document produced from this time, the Membership Application, supports the opposite conclusion; as discussed above, on its face it identifies Ms. Horchow as the Applicant, includes handwritten notations by the Club which identify the application as Ms. Horchow's, and includes payment checks for the Membership from Ms. Horchow's father which the Club inscribed with "for Regen Fearon," ECF 36-1, Membership Application. The Court should not credit the Club's argument that because it has produced no records for a roughly 9-year period, the undisputed facts show Mr. Fearon was always the Member. Motion at 12.

Second, the Club claims that Ms. Horchow "could have discovered her membership status at any time from 2004 to the date she filed suit." Motion at 12. As noted *supra,* from 2004 to 2013, the Club has produced no records and identifies no testimony of how Ms. Horchow would have discovered this supposed status. The Club relies almost entirely on the appearance of the "F007A" membership number on certain receipts enclosed in club bills as putting Ms. Horchow on notice that the Membership had been transferred and she was considered the spouse and not the Member. But the Club's document productions do not display the "F007A" number on any statement Ms. Horchow would have received before July 1, 2019. RSOF ¶ 12. Further, the Club has pointed to no testimony that the "A" notation at the end of a membership number was how the Club noted a spouse as opposed to a Member or that such a notation would be generally understood by club members to indicate whether an individual was a spouse or a Member. Indeed, it would have been reasonable for Ms. Horchow to conclude that an "A" notation would indicate the primary Member.

7

Additionally, the Club claims that Ms. Horchow's membership status was "readily accessible on the Club's website," but the Club's Statement of Facts does not identify when such information was available on the Club's Online Portal.  Motion at 11; ECF 39.  In fact, according to the Club's Online Portal change logs, the Membership was listed in the manner Ms. Horchow requested on her Membership Application – "Dr. and Mrs. Jeffery Fearon" – until in or around September 2017 when the Club removed Ms. Horchow's name from the Membership.  RSOF ¶ 54.  On the most generous view of the facts for the Club, the Club's Online Portal did not reveal to Ms. Horchow that the Membership had been transferred until September 2017, at the earliest.  *Id.*  However, there is no evidence showing that Ms. Horchow would have reason to investigate her membership status until she looked at the Online Portal and she became aware that the Club may have viewed Mr. Fearon as the Member in 2021, as both parties agree that spouses of Members are entitled to the same use privileges as Members.

Finally, the Club claims that "as [Ms. Horchow] was in regular contact with the Club, she could have discovered her membership status at any time from 2004 to the date she filed suit," seeming to suggest that all Ms. Horchow had to do was ask if she was the Member and she would have been told "no."  Motion at 12.  That argument is undermined by the Club's years-long refusal, starting in 2021, to give a straightforward answer to this very question.  When Ms. Horchow inquired about her Membership in 2021, the Club refused to provide any clear answers regarding the Club's stance.  RSOF ¶ 24.  Instead, the Club told her to hold off until a later date.  *Id.*  Even in the expulsion letter to both Ms. Horchow and Mr. Fearon, the Club explicitly stated it took no position, noting it had concluded "your continued membership at The Westmoor Club is untenable" based on "your mutual decision to involve the Club in your own personal, protracted litigation concerning who owns the Club membership – a matter on which the Club takes no

position." RSOF ¶ 62.  Even after this litigation began, the Club continued to give evasive and shifting responses as to who was the Member.  *See, e.g.*, Memorandum in Support of Motion to Dismiss, ECF 7, at 3 ("Ms. Horchow lives in Dallas, Texas and ***was a member*** of the Club for many years …") (emphasis added); RSOF ¶ 48 ("the Club states that Ms. Horchow was a member of the Club from August 15, 2004 to October 10, 2024.").  In light of these facts, the Court cannot conclude that the undisputed facts establish that Ms. Horchow knew or should have known that the Club had transferred her Membership to Mr. Fearon until the Club informed her it would not honor her membership status, which occurred in 2022. *See Salvas v. Wal-Mart Stores, Inc.*, 893 N.E.2d 1187, 1218 (Mass. 2008); RSOF ¶¶ 31-35.

   *iii. The Savings Statute Tolled the Statute of Limitations.*

  Even if the Court concludes that Ms. Horchow should have been aware of the Club's wrongful conduct when her name was removed from the Club's Online Portal, the statute of limitations would only begin to run when that change occurred in September 2017.  Ms. Horchow's claims are still timely under this view based on the savings statute, M.G.L. c. 260, § 32, and Ms. Horchow's August 2023 Texas suit, which pursued these same claims.

  The savings statute provides, "[i]f an action duly commenced within the time limited in this chapter is dismissed … ***for any matter of form*** … the plaintiff … may commence a new action for the same cause within one year after the dismissal[.]"  M.G.L. c. 260, § 32 (emphasis added). "The plain purpose of the [savings] statute is to relieve a person who, in the exercise of due diligence, within the time limited by the general statute of limitations, has attempted to enforce a claim by suit, and has failed in such attempt by reason of some ***matter of form***, which can be remedied in a new proceeding, and which does not affect the merits of his case." *Cannonball Fund, Ltd. v. Dutchess Capital Mgmt., LLC*, 993 N.E.2d 350, 354 (Mass. App. Ct. 2013) (emphasis

added).  "The statute is remedial, and its words are not to be construed unfavorably to the plaintiff." *Id.*  Voluntary dismissals are not excluded from the savings statute.  *Id.*  The touchstone for what constitutes dismissal for a matter of form is whether, within the original statute of limitations period, the defendant had actual notice that a court action had been initiated.  *Green v. Whiting-Turner Contracting Co.*, 184 N.E.3d 1289, 1290 (Mass. App. Ct. 2022).

On August 29, 2023, Ms. Horchow filed an action against the Club in Texas state district court alleging – on the same facts as the instant matter – breach of contract, civil conspiracy to defraud her of her contractual rights, privileges, and financial interests in the Club (the "Texas Action").  The Texas Action commenced within six years of the Club's September 2017 removal of Ms. Horchow's name from the Club's Online Portal.  RSOF ¶¶ 54, 57.  On December 14, 2023, the Club filed a special appearance in the Texas Action and requested dismissal due to lack of personal jurisdiction.  RSOF ¶ 58.  On April 11, 2025, Ms. Horchow filed a Notice of Partial Nonsuit Without Prejudice, dismissing all claims asserted against the Club without prejudice to refile.  RSOF ¶ 59.  On April 17, 2025, Ms. Horchow filed her Complaint in this action, asserting the same claims she had voluntarily dismissed in Texas six days earlier.  *Id; ECF 1*.  Accordingly, the savings statute tolls the statute of limitations; the Texas Action was properly filed within the 6-year statute of limitations for Ms. Horchow's breach of contract claims, the Club received actual notice of the Texas Action, and this action was filed within one year of the dismissal of the Texas Action.

### C. The Club's Procedurally and Substantively Improper Expulsion is Subject to Judicial Review

The Club seeks summary judgment that its expulsion of Ms. Horchow was both procedurally and substantively proper, but the undisputed facts do not support summary judgment. As set forth below, the undisputed facts demonstrate that the Club's expulsion of Ms. Horchow

was **not** consistent with the required procedure, and genuine issues of material fact remain as to whether the expulsion was substantively proper.

As it did at the Motion to Dismiss stage, the Club continues to take an overly narrow view of the Court's ability to review the Club's expulsion decisions. The Club acknowledges that the Court may "review whether the club followed its own procedures," but asserts that the Court cannot "review the substance of the decision." Motion at 12 (*citing Casey v. Allen Harbor Yacht Club, Inc.*, No. 05-00417, 2007 WL 5578210, at *3 (Mass. Super. Oct. 11, 2007)). Such a limited scope of review is not supported by Massachusetts law. *See Richards v. Morison*, 118 N.E. 868, 869 (Mass. 1918) (holding the court will ascertain "whether the cause assigned is one sufficient in law to warrant expulsion").

But this Court need not address this disagreement now, as the undisputed facts show the Club's expulsion of Ms. Horchow did not comply with its own expulsion procedure, which all parties agree is reviewable. Members of the Club are entitled to notice of proposed disciplinary action and an opportunity to request a hearing **before** they are expelled from the Club. RSOF ¶ 52. This disciplinary procedure means Members maintain their membership rights, including the right to resign the membership and recover their membership deposit, until they have had an opportunity to be heard and are formally expelled. RSOF ¶¶ 50-52. The Club has followed this procedure for all other expulsions. RSOF ¶ 53. The Club first argues that Ms. Horchow was not entitled to a hearing because she was not the Member. Motion at 14. As set forth above, it is not beyond dispute that Ms. Horchow was not the Member – in fact the undisputed facts establish she was the Member. *See supra* at § IV.A (detailing facts supporting Ms. Horchow being the Member). The Club's argument is also inconsistent with its own arguments elsewhere, including within the Motion itself, where it acknowledges Ms. Horchow was admitted as a Member. *See, e.g.*, Motion

11

at 13 ("***By becoming a member of the Club***, Ms. Horchow agreed …") (emphasis added); Memorandum in Support of Motion to Dismiss, ECF 7, at 3 ("Ms. Horchow lives in Dallas, Texas and ***was a member*** of the Club for many years …"); RSOF ¶ 48 ("the Club states that Ms. Horchow was a member of the Club from August 15, 2004 to October 10, 2024."). The Club goes on to argue that "[e]ven if Ms. Horchow were considered the Club's member … the Club followed all essential formalities required by the Membership Plan," namely Ms. Horchow's ability to appeal the expulsion. Motion at 16. That assertion is plainly unsupported by the undisputed facts. An appeal does not equate to notice and a hearing prior to expulsion. Among other things, notice and a hearing as required by the Membership Plan would have allowed Ms. Horchow the right to resign the Membership prior to expulsion – something she was not allowed to do after the Club expelled her on October 10, 2024. RSOF ¶¶ 50-51.

Additionally, the undisputed facts do not establish that the Club's expulsion of Ms. Horchow was substantively proper – which the Court may review – and preclude summary judgment on that point. *See Richards*, 118 N.E. at 868. The Club claims Ms. Horchow was expelled "for violating the Club's Membership Plan by failing to timely inform the Club of [her] divorce and then embroiling the Club in [her] post-divorce litigation over [who] was the primary member." Motion at 14. There are disputed facts over whether these are substantively proper reasons for expulsion. First, Ms. Horchow did timely inform the Club of her divorce. RSOF ¶¶ 66-67. Second, the Club has put forth shifting basis for Ms. Horchow's expulsion,[1] casting doubt on what the true reason was. Third, there is a factual dispute as to whether Ms. Horchow's decision

---

[1] These shifting bases include the Club's initial justification for expelling Ms. Horchow that she involved the Club in her divorce from Mr. Fearon; after Ms. Horchow appealed her expulsion, the basis shifted to her alleged failure to notify the Club of her divorce, even though Ms. Horchow did notify the Club of her divorce in 2021, and the Club took no action then. RSOF ¶ 67.

12

to sue the Club based upon her dispute with the Club constitutes a violation of the so-called "Disputes Provisions."  To be sure, Ms. Horchow had a dispute with Mr. Fearon about the ownership of the Membership.  However, Ms. Horchow had a separate dispute with the Club over its position that Mr. Fearon was the Member.  Simply because Mr. Fearon and the Club's positions were aligned does not mean that Ms. Horchow's dispute with the Club was subsumed in her dispute with Mr. Fearon.  Such an expansive view of the Disputes Provision would leave members with no recourse if wronged by the Club.  Whether these bases are sufficient at law to warrant expulsion are within the Court's purview, and subject to disputed facts that preclude summary judgment.

### D.  Ms. Horchow's ch. 93A Claim does not Fail as a Matter of Law

#### i.    The Club Conducts Trade and Commerce

A violation of Chapter 93A requires proof of an unfair or deceptive practice in the conduct of any trade or commerce.  "Trade and commerce" are described as "the advertising, the offering for sale, rent or lease, the sale, rent, lease or distribution of any services and any property, tangible or intangible, real, personal or mixed[.]"  M.G.L. c. 93A, § 1(b).  There is no genuine dispute that the Club engages in trade and commerce.  First, during the January 9, 2026, hearing regarding the Club's motion to dismiss, the Club's counsel conceded that the Club engaged in trade and commerce.  ECF 31, Transcript of Jan. 9, 2026 Oral Argument at 6.  Second, the nature of the transaction at issue was the sale of a Club membership in the form of a revocable license, which could be resigned by a Member and resold by the Club for a profit pursuant to the Membership Plan.  RSOF ¶ 68.  The transaction at issue was motivated by business, and not personal reasons. RSOF ¶¶ 1, 8, 68.

The Club's Motion cites a litany of cases to establish that the "Chapter 93A 'is not applicable to an intra-enterprise relationship between a club and its members.'"  Motion at 18.

13

However, those cases are inapplicable to these facts. *Soltys v. Wellesley Country Club*, No. 0000050, 2002 WL 31998398 (Mass. Super. Oct. 28, 2002), which the Club primarily relies upon, and which the Motion presents as directly on-point, addressed claims based on a private club's personal treatment of a member, not the transfer, expulsion, and resale without refund, of a membership. In *Soltys*, plaintiffs had been long-time members of the Wellesley Country Club ("WCC"). Plaintiffs alleged that during that time WCC discriminated against them by excluding them from participating in women's golf tournament events. *Id.* at *3. After repeated complaints by the plaintiffs, WCC expelled them. Plaintiffs filed suit, alleging numerous claims related to the alleged discriminatory treatment of plaintiffs when they were members. *Id.* at *3-10. In that context, the court concluded "WCC, through its Board of Governors, cannot be said to be engaging in any trade or commerce." *Id.* at *10. The private conduct in *Soltys*, dealing with WCC's treatment of members, is distinct from Ms. Horchow's claims, which are squarely based on the Club's conduct in trade and commerce, specifically the sale, transfer, and resale of a valuable membership. *See generally* ECF 1.

The other cases relied upon by the Club arise in distinct factual situations, and do not involve the commercial conduct at issue here. *See* Motion at 18 (*citing Office One, Inc. v. Lopez*, 769 N.E.2d 749, 754 (Mass. 2002) (volunteer condominium trustees not engaged in trade or commerce when implementing parking regulations); *Zimmerman v. Bogoff*, 524 N.E.2d 849, 855 (Mass. 1988) (withholding of substantial sums of money from joint venturer was not in the ordinary conduct of trade or commerce ); *Riseman v. Orion Research, Inc.*, 475 N.E.2d 398, 399, (Mass. 1985) (calling stockholders' meetings or soliciting proxies was not related to the sale, rent, or distribution of any services or property); *Manning v. Zuckerman*, 444 N.E.2d 1262, 1263-64 (Mass. 1983) (c. 93A § 11 did not "cover employment contract disputes"); *Newton v. Moffie*, 434

14

N.E.2d 656, 659 (Mass. App. Ct. 1982) (transaction between members of single legal entity did not satisfy the trade and commerce requirement)).

      *ii.     The Club's Conduct Constitutes Unfair or Deceptive Practices Under Chapter 93A*

"Under M.G.L. c. 93A, a practice is unfair if it is within the penumbra of some common-law, statutory, or other established concept of unfairness; is immoral, unethical, oppressive, or unscrupulous; and causes substantial injury[.]" *See Grand Pacific Finance Corp. v. Brauer*, 783 N.E.2d 849, 849 (Mass. App. Ct. 2003). Here, the Club cannot establish that it did not engage in unfair practices and deceptive practices when the undisputed material facts show that it failed to uphold its contract with Ms. Horchow, deprived her of the contract's material benefit, punished her for seeking to protect her contractual rights, and resold her Membership for its own profit. RSOF ¶¶ 50-51, 62, 68. Such conduct falls within the penumbra of unfair and unethical conduct covered by Chapter 93A. *See Grand Pacific Finance Corp,* 783 N.E.2d at 849.

## V.    CONCLUSION

Accordingly, Ms. Horchow respectfully requests that the Court deny the Club's Motion.

                Respectfully submitted,

                REGEN HORCHOW

                By her attorneys,

                */s/ Hayley Trahan-Liptak*
                Christopher L. Nasson (BBO# 669401)
                christopher.nasson@klgates.com
                Hayley Trahan-Liptak (BBO# 692412)
                hayley.trahan-liptak@klgates.com
                John L. Gavin (BBO# 705385)
                john.gavin@klgates.com
                K&L Gates LLP
                One Congress Street
                Suite 2900

Dated: May 1, 2026           Boston, Massachusetts 02114

## <u>CERTIFICATE OF SERVICE</u>

I, Hayley Trahan-Liptak, hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants on May 1, 2026.

*/s/ Hayley Trahan-Liptak*
Hayley Trahan-Liptak
