# Exhibit 4



# Transcript of John Cowden, Jr.

**Date:** March 26, 2026
**Case:** Horchow -v- The Westmoor Club, LLC

**Planet Depos**
**Phone:** 888.433.3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

------------------------------x

REGEN HORCHOW,                           :

        Plaintiff,      :

  v.                                     :   Civil Action No.

THE WESTMOOR CLUB, LLC,       :   1:25-cv-11008-WGY

        Defendant.      :

------------------------------x

Virtual Deposition of JOHN COWDEN, JR.

Thursday, March 26, 2026

8:32 a.m. CST

Job No.: 626205

Pages: 1 - 84

Reported Stenographically by:

Tiffany M. Pietrzyk, CSR RPR CRR

Virtual deposition of JOHN COWDEN, JR., pursuant to notice, before Tiffany M. Pietrzyk, a Certified Shorthand Reporter in the States of Illinois, Texas, and California, Registered Professional Reporter, Certified Realtime Reporter, and a Notary Public in and for the State of Illinois.

                A P P E A R A N C E S

ON BEHALF OF THE PLAINTIFF:

        HAYLEY TRAHAN-LIPTAK, ESQUIRE

        CAYLA NYANTE-BROWN, ESQUIRE

        K&L GATES, LLP

        1 Congress Street

        Suite 2900

        Boston, Massachusetts 02114

        617.261.3100


ON BEHALF OF THE DEFENDANT:

        MEGHAN E. HUGGAN, ESQUIRE

        TYLER E. CHAPMAN, ESQUIRE

        TODD & WELD LLP

        One Federal Street

        Boston, Massachusetts 02110

        617.720.2626


ALSO PRESENT:

        Ty Laird, Planet Depos Remote Technician

C O N T E N T S

EXAMINATION OF JOHN COWDEN, JR.                    PAGE

  By Ms. Trahan-Liptak                              6

E X H I B I T S

(Attached to transcript.)

DEPOSITION EXHIBITS                                PAGE

Exhibit 1     The Westmoor Club Membership          26
              Plan

Exhibit 2     The Westmoor Club Membership          37
              Application of Regen Fearon

Exhibit 3     Email chain with redactions,          51
              top email from Regen Horchow,
              dated 4/7/21

Exhibit 4     Email chain, top email from           54
              Regen Horchow, dated 7/13/22

Exhibit 5     Email chain, top email from           60
              John Cowden, dated 7/2/22

Exhibit 6     Plaintiff's Original Petition         69

Exhibit 7     Letter to Ms. Horchow and Dr.         72
              Fearon from John J. Cowden,
              Jr., dated 10/10/24

EXHIBITS (Cont.)

DEPOSITION EXHIBITS                                    PAGE

Exhibit 8    Letter to Mr. Ross Parker from      73

Michelle May O'Neil, dated

10/16/24

P R O C E E D I N G S

(Witness sworn.)

MS. TRAHAN-LIPTAK:  Just for appearances for the record, my name is Hayley Trahan-Liptak on behalf of the plaintiff, Regen Horchow, and I'm here with my colleague Cayla Nyante-Brown.

MS. HUGGAN:  Good morning.  Meghan Huggan for the defendant, The Westmoor Club.  Also here with my colleague Tyler Chapman.

WHEREUPON:

JOHN COWDEN, JR.,

called as a witness herein, having been first duly sworn, was examined and testified as follows:

EXAMINATION

BY MS. TRAHAN-LIPTAK:

Q. Mr. Cowden, could you introduce yourself for the record and spell your last name, please.

A. Yes.  My name is John Cowden, C-o-w-d-e-n, Jr., general manager of The Westmoor Club.

Q. Thank you for joining us today, Mr. Cowden. As I said, my name is Hayley.  I'll be conducting your deposition today.  Just before we begin, couple housekeeping matters that I'm sure you're aware of from observing yesterday.

First of all, because we are remote, just a reminder for us to take it slow, try to avoid speaking over each other.  I know at times my microphone might be a bit faint, so please don't hesitate to let me know if you can't hear me for any reason.  I'll try to get a little bit closer, turn up the volume.

Because we have a court reporter today, as you know, there's a transcript of today's deposition.  At the end of the deposition, we will request a transcribed copy of the deposition and you'll be given an opportunity to review that in a number of days and make any corrections to the transcript that might be necessary.

Because we have a court reporter on, I ask that all of your answers today be verbal and not a shake of the head or a nod of the head so that the court reporter can capture all of those responses.

If you need a break today, please just ask. I tend to try to break on the hour or thereabouts to give everyone a chance to get up and stretch their legs.  But please just let me know if you need anything sooner than that.  And if you can, we please ask that you answer the question that's been

posed to you first before taking a break.

Excuse me.

A couple things just to clarify before we get started. While I'm referring today, I might refer the plaintiff as "Regen Horchow." Just for clarification, that is Regen Horchow who is formerly Regen Fearon.

Does that make sense to you?

A. Yes.

Q. Then throughout the deposition, I'll be referring to "the membership" or "the membership at The Westmoor Club." Just so we're all in agreement, I'm referring to the membership that's at dispute today, and that's the membership F007 governed by the membership application from August 10th of 2004.

Do you agree with that?

A. Yes.

Q. And then finally, just for clarity, I will refer to the club in some respects as "The Westmoor" or "The Westmoor Club," and to that I'm referring to The Westmoor Club.

Do you agree with that as well?

A. Yes.

Q. I understand today that you are testifying

which is used for, you know, future communications to membership, electronic communications to membership, recordkeeping of their charges, billing, and the like.

Q. Is that a specific software that you use?

A. Yes.  It's called Clubessentials.  It's a very popular club software system.

Q. (Inaudible.)

A. I'm sorry?

Q. When did the club begin using Clubessentials?

A. I honestly don't know.  My wife arrived here as the CFO ten years ago.  I've been here seven.  I believe the system was in place well before her start.

Q. Do you know if Clubessentials was in use from the inception of The Westmoor Club?

A. Oh, no.  I don't think automation like that was a thing then in 2024 -- in 2004.  Excuse me.

Q. Do you know how Westmoor's records that existed prior to the implementation of Clubessentials were entered into Clubessentials?

A. I'm sorry.  You broke up a little bit there.

Q. Sure.

Are memberships from expelled members resold?

A. Are they resold?  Yes.

Q. Has the membership that is the subject of this dispute been resold?

A. Yes.  We are still currently at 580 memberships, so yes.

MS. TRAHAN-LIPTAK:  Can we go to page 15, please.  Actually, we already discussed that, so maybe go to page 11.

Q. What is the club's policy, in the event of a member divorce, as to who maintains the membership?

A. In separation or divorce, the membership continues to be held by the primary member.

Q. And how do you determine who that primary member is?

A. We know from the application who signed as primary, who the primary is and how it was set up in the system.

Q. You said you know from the application.

Is that what your membership policy says, that it was based upon who signed as the primary?

MS. HUGGAN:  Objection.

A. I don't know if it says that specifically.

Q. If you look at the separation and divorce provision.

MS. TRAHAN-LIPTAK: Can we just scroll up a little bit so it's centered. The other way, please.

THE WITNESS: The other way. Sorry.

BY MS. TRAHAN-LIPTAK:

Q. Do you see a separation and divorce provision in the membership plan?

A. I see it.

Q. I want to direct your attention to the second sentence here, which says, "In the case of divorce of a married Member, the membership shall belong to the spouse designated on the Membership Application as the Member unless otherwise provided by agreement between the parties or by court order."

A. Yes, I see that.

Q. So your membership plan specifies it's the person who is designated as the member on the membership application; is that right?

A. Yes, that's right.

Q. So it doesn't provide for who signed the membership application.

MS. HUGGAN: Objection.

Q. You can answer.