# Exhibit 7

FILED
8/29/2023 3:03 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Kajuana Cook DEPUTY

2 CIT ESERVE
JURY DEMAND

DC-23-13481

CAUSE NO. _____

| | | |
|---|---|---|
| **REGEN HORCHOW,** | § | IN THE DISTRICT COURT |
| | § | |
| *Plaintiff,* | § | |
| | § | 134th |
| v. | § | ____ JUDICIAL DISTRICT |
| | § | |
| **THE WESTMOOR CLUB, LLC, and** | § | |
| **JEFFREY FEARON,** | § | |
| | § | |
| *Defendants.* | § | DALLAS COUNTY, TEXAS |

**PLAINTIFF'S ORIGINAL PETITION**

**TO THE HONORABLE JUDGE OF SAID COURT:**

**COMES NOW,** Plaintiff Regen Horchow, who files this, her Plaintiff's Original Petition complaining of and against Westmoor Club, LLC, and Jeffrey Fearon and, for cause, would show unto this Honorable Court as follows:

**I.**
**DISCOVERY CONTROL PLAN**

1.     Discovery shall be conducted under Level 2 pursuant to Rule 190.3 of the TEXAS RULES OF CIVIL PROCEDURE.

**II.**
**PARTIES**

2.     **Plaintiff Regen Horchow** is an individual resident of Dallas County, Texas.

3.     **Defendant Westmoor Club, LLC** is a Massachusetts Limited Liability Company. Westmoor may be served with process by serving its Registered Agent, Stephen L. Cohen, at 34 Main Street, 2nd Floor, Nantucket, MA, 02554, or wherever else he may be found.

---

Plaintiff's Original Petition                                                                 P a g e  | 1

4.      **Defendant Jeffrey Fearon** is an individual Texas resident who resides in Dallas County, Texas.  Mr. Fearon may be served with process at his residence at 9785 Audubon Place, Dallas, Texas, 75220 or wherever else he may be found.

### III.
### JURISDICTION & VENUE

5.      Jurisdiction is proper in this Honorable Court as the damages fall within the jurisdictional limits of this Court.  Venue is proper and mandatory in Dallas County, Texas, because it is the county in which all or part of the events or omissions which give rise to the claims set forth herein occurred.  This Honorable Court has jurisdiction over the Defendants because the Defendants are amenable to process issued by the courts of Texas in that the Defendants have committed the torts of fraud, in whole or in part, within Texas. In addition, the non-resident Defendant has, wholly or in part breached their contract with the Plaintiff in Texas.

6.      Moreover, the assumption of jurisdiction by this Honorable Court over the non-resident Defendant does not offend traditional notions of fair play and substantial justice and does not deprive the Defendant of due process as guaranteed by the Constitution of the United States.  The Defendant established minimum contacts in Texas by acting and taking advantage of the privilege of conducting marketing activities within Texas, thus invoking the benefits and protections of Texas' laws.  On the facts present in this case, and under the minimum contacts analysis, the non-resident Defendant in this case had substantial connection with Texas arising from actions and conduct that the Defendant purposefully directed toward the State of Texas and the Plaintiff and out of which contacts the causes of action pled in the Plaintiff's Original Petition arose, giving rise to specific personal jurisdiction.

7.      Pursuant to TEX. R. CIV. P. 47, the Plaintiff seeks monetary relief over $200,000 but not more than $1,000,000.00.[1]

## IV.
### FACTS

8.      This case is about a highly valuable, elite and exclusive private club membership that was a gift to Plaintiff, Regen Horchow ("Regen"), from her father, and the desperate and fraudulent attempt by Jeffrey Fearon, Regen's ex-husband, inexplicably aided and abetted by the Defendant Westmoor, to defraud Regen of that membership for its $500,000 monetary value.

9.      Plaintiff Regen Horchow, formerly Regen Fearon, was married to Defendant Jeffrey Fearon ("Fearon") in 1998 and together they raised three children before divorcing in 2020.

10.     Regen's parents, Mr. and Mrs. S. Roger Horchow ("Mr. and Mrs. Horchow"), both now deceased, were prominent members of the Dallas, Texas and Nantucket, Massachusetts communities.  Mr. and Mrs. Horchow were well known throughout their lives to spend their family summer vacations on Nantucket Island and as longtime members of the Nantucket Yacht Club and Cliffside Beach Club.

11.     Nantucket in the summer was a Horchow family tradition for decades before Regen and Fearon married in 1999. Once married, Fearon clearly deeply enjoyed his access to the Horchows' private club memberships and introductions to their social connections.

12.     In or about the summer of 2004, Mr. and Mrs. Horchow received a marketing phone call in Dallas, Texas from Defendant Westmoor's representative explaining that there was to be a new private club on Nantucket Island called The Westmoor Club.

---

[1]Plaintiff reserves the right to amend, decrease and/or increase the amount of damages plead based on evidence developed before trial.

13.    The Westmoor representative described the plans for The Westmoor Club as an elite and exclusive private club catering to families with children, offering swimming pools, tennis courts, a restaurant, and a plethora of other amenities attractive to families.

14.    The Westmoor representative solicited Mr. and Mrs. Horchow to purchase memberships in The Westmoor Club for themselves and their adult children.

15.    Mr. and Mrs. Horchow declined to purchase memberships in The Westmoor Club at that time but agreed, at the Westmoor representative's urging, to further discuss in person Westmoor Club memberships when they next were in Nantucket.

16.    Mr. Horchow told two of his daughters, Regen and Elizabeth, about his conversation with the Westmoor representative, and in July 2004, while the Horchows were on vacation in Nantucket, Mr. Horchow, Plaintiff Regen Horchow (then, Regen Fearon) and Regen's sister, Elizabeth Routman, all went together to see the proposed site of The Westmoor Club and to speak further with the Westmoor representative.

17.    After touring Defendant Westmoor's facility site and speaking extensively with Westmoor's representative, Mr. Horchow informed Defendant Westmoor's representative that he would like to buy a Westmoor Club membership for each of his two daughters present at the meeting, Regen and Elizabeth.

18.    Defendant Westmoor's representative stated that the cost of the memberships at the "Regular" level (meaning, for non-residents) were $125,000 each, and that Defendant Westmoor would require a deposit of $25,000 each for Mr. Horchow's daughters' memberships and completed applications from Regen and Elizabeth.

19.    On July 30, 2004, Mr. Horchow delivered a single check to Defendant Westmoor for $50,000 to provide the two $25,000 deposits for Regen's and Elizabeth's memberships (the

"Westmoor Membership Deposit Check"). A true and correct copy of the Westmoor Membership Deposit Check is attached to this Petition as **Exhibit 1** and incorporated as if fully set forth herein.

20.    A Westmoor Club representative wrote on the top of the Westmoor Membership Deposit Check **"For Regen Fearon – Regular; and Elizabeth Routman – Regular**." **Ex. 1.**

21.    Approximately five weeks later, Mr. Horchow delivered a second check to Defendant Westmoor for $200,000, paying the balance in full for Regen and Elizabeth's Westmoor Club memberships (the "Westmoor Membership Payment"). A true and correct copy of the Westmoor Membership Payment is attached this Petition as **Exhibit 2** and incorporated as if fully set forth herein.

22.    Meanwhile, Regen took home the Westmoor Club Membership Application that was given to her by the Westmoor representative (the "Application"), and she filled out the Application by hand. A true and correct copy of the Application is attached this Petition as **Exhibit 3** and incorporated as if fully set forth herein.

23.    Regen identified herself as the <u>Applicant</u> for membership in the Application and provided her personally identifying information such as her date of birth and social security number in the appropriate spaces provided. **Ex. 3.**

24.    In the Application's section titled "Applicant's Spouse," Regen wrote in Fearon's name and provided his personally identifying information in the appropriate spaces provided. **Ex. 3.**

25.    In the Application's section titled "References" and which asked for the Applicant's other club membership references, Regen identified <u>her club membership</u> at the Nantucket Yacht Club and a gym membership, in <u>neither of which club was Fearon ever a member</u>. **Ex. 3.**

26.     In the Application's section calling for the Applicant's individual references, Regen provided the names of two married couples with whom Regen had been close friends for many years prior to the marriage and who knew Fearon only through Regen's marriage to Fearon. **Ex. 3**.

27.     When Regen finished providing the information requested for <u>her</u> application to the Club, she asked Fearon to sign as her spouse. Fearon accidentally signed on the "Applicant" line. Regen signed on the open line not realizing that the lines were labeled or that it mattered in what order the application was signed.

28.     On or about August 15, 2004, Regen received by mail at her Dallas home a letter from Defendant Westmoor notifying her that her application for membership had been approved and requesting payment in full for the membership (the "Approval Letter"). A true and correct copy of the Approval Letter is attached this Petition as **Exhibit 4** and incorporated as if fully set forth herein.

29.     Shortly thereafter, Regen's sister Elizabeth also received an approval letter from Westmoor.  And on September 10, 2004, Regen's father Mr. Horchow sent Defendant Westmoor the $200,000 Westmoor Membership Payment paying the balance in full for Regen and Elizabeth's Westmoor Club memberships. **Ex 2.**

30.     For the next many years, all was well with the Horchow/Fearon charmed Nantucket summers and The Westmoor Club. Each month Defendant Westmoor sent its dues/fees bill to Regen's Dallas, Texas address, and each month Regen paid Westmoor's bill.

31.     By 2019, Regen's marriage to Fearon had become intolerable. Regen filed for a divorce which was final in 2020.

32.     Wanting to maintain as much normalcy as possible for her children despite the divorce, Regen agreed to maintain the Westmoor Club membership, to allow Fearon to separately vacation with their children in Nantucket, and for Fearon to continue to take the kids to the Westmoor Club.

33.     On or about April 6, 2021, Regen was perusing Westmoor's online members' portal and noticed that in her membership profile, Westmoor listed <u>Fearon</u> as the Westmoor Member and Regen as the Member's spouse. Regen did not remember ever seeing this error before and believed it to have been recently changed. Regen wrote to the Westmoor manager to ask Westmoor to correct the profile to reflect that she was the Westmoor Member, and that Fearon was now the ex-spouse.

34.     The following spring (2022) when Fearon continued to use the Club, now accompanied by his girlfriend, all under Regen's membership, Regen again requested a correction to the listing.  The Westmoor manager avoided responding to Regen's direct request to correct the profile. The Westmoor manager instead informed Regen that Westmoor did not "get involved" in their Members' divorces, and that the Westmoor membership could be suspended until Regen and Fearon decided who would be taking the membership pursuant to the terms of The Westmoor Club Membership Plan.

35.     Acknowledging that a suspension was a prerogative of the Club in the circumstances, Regen requested that the Club allow <u>both</u> Fearon and Regen to use the Club for the remainder of the 2022 season.  Regen assured Westmoor's manager that she would keep her account in good standing until she and Fearon determined how to handle the Westmoor membership post-divorce.

36.     As the summer of 2023 approached and Fearon opportunistically asserted that the membership was his, Regen alerted the Westmoor that there was discord and suggested that the Westmoor use its prerogative to suspend the membership.  The Westmoor took that action and appeared prepared to abide by its agreement with Regen as stated in the The Westmoor Club Membership Plan.

37.     The Westmoor Club Membership Plan section titled, "Separation and Divorce," states that:

> In the case of divorce of a married Member, <u>the membership shall belong to the spouse designated on the Membership Application as the Member</u> unless otherwise provided by agreement between the parties or by court order. (Emphasis added).

A true and correct copy of The Westmoor Club Membership Plan is attached to this Petition as **Exhibit 5** and incorporated as if fully set forth herein.

38.     As between Regen and Fearon, Regen was "the spouse designated on the Membership Application as the [Westmoor] Member," and both Fearon and Westmoor knew this to be true beyond any doubt.  **See Exs. 1-3**.

39.     Regen did not agree upon her divorce from Fearon to give her Westmoor membership to Fearon, and there was no court order awarding Fearon the Westmoor membership. The Westmoor Club membership, therefore, clearly belonged to Regen pursuant to The Westmoor Club Membership Plan terms. **Ex. 5.**

40.     When Regen attempted to discuss with Fearon the terms under which she would consider allowing Fearon to acquire her Westmoor Club membership, Fearon informed Regen that <u>he had discussed the issue with Westmoor</u>; that <u>Westmoor had agreed</u> with Fearon's inane proposition that Fearon's (accidental) signature on the last page of the Application on the line under which small print read "Applicant" was sufficient for Defendant Westmoor to declare that

Fearon, not Regen, had been the membership Applicant; and that the membership upon their divorce belonged to Fearon, not Regen.

41. In stunned disbelief, Regen called Defendant Westmoor's manager. Defendant Westmoor's manager confirmed to Regen that this in fact was Westmoor's position; that Regen's Westmoor membership was no longer suspended; and that Fearon, and not Regen, now had the exclusive rights to the membership – a membership given to Regen as a gift by her father and which has a present value of $500,000.

**V.**
**CAUSES OF ACTION**

**Texas Uniform Declaratory Judgments Act**

42. A justiciable controversy exists between the parties to this action as to the Plaintiff's contractual rights to the Westmoor Club membership as well as Defendant Westmoor's obligations to Plaintiff under The Westmoor Club Membership Plan.

43. Pursuant to Texas Civil Practice and Remedies Code 37.004, Plaintiff requests this Court to declare the following:

(i)     That Plaintiff, Regen Horchow, formerly Regen Fearon, was the Applicant for membership to the Westmoor Club;

(ii)    That upon Plaintiff's divorce from Defendant Fearon, Plaintiff was the spouse designated on the Membership Application as the Westmoor Club Member; and

(iii)   That upon Plaintiff's divorce from Defendant Fearon, the Westmoor Club membership belonged to Plaintiff.

**Breach of Contract – As to Defendant Westmoor**

44.     The actions and/or omissions of Defendant Westmoor described hereinabove constitute breach of contract which breach proximately caused direct and consequential damages to Plaintiff.

45.     All conditions precedent to Plaintiff's breach of contract claim against Defendant Westmoor have been performed.

**Tortious Interference – As to Defendant Fearon**

46.     The elements of tortious interference with an existing contract are: (i) an existing contract subject to interference; (ii) a willful and intentional act of interference with the contract; (iii) that proximately caused the plaintiff's injury; and (iv) caused actual damages or loss. *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000).

47.     Plaintiff had a valid, enforceable contract with Westmoor. By his conduct, Defendant Fearon willfully and intentionally interfered with the contract and caused Plaintiff injury. This injury proximately caused direct and consequential damages to Plaintiff.

**Civil Conspiracy to Defraud – As to All Defendants**

48.     The elements of a civil conspiracy are (1) a combination of two or more persons; (2) the objective to be accomplished is an unlawful purpose or a lawful purpose by unlawful means; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result. *Ins. Co. of N. Am. v. Morris*, 981 S.W2d 667, 675 (Tex. 1998).

49.      The Defendants, in combination, have conspired to defraud and have defrauded Plaintiff of her contractual rights, privileges and financial interests in her Westmoor Club membership, and have unlawfully transferred those rights, privileges and financial interests to Defendant Fearon.

---

50.     Defendant Fearon's motive is obvious; Fearon desperately seeks the $500,000 financial asset and an elite and exclusive private club membership that, with no other club memberships or personal references, Fearon could not qualify for on his own.

51.     Fearon's only hope to acquire this $500,000 financial asset and maintain it as a symbol of status he previously had been able to enjoy solely by virtue of his marriage into the Horchow family was to conspire with Defendant Westmoor to defraud Plaintiff of her rights to the Westmoor Club membership.

52.     Defendant Westmoor's motive is less obvious but is perhaps hiding in plain sight. Westmoor inexplicably willingly conspired with Fearon to breach its Membership Agreement with its member, Regen Horchow, in order to give deference to Fearon's blatantly false and baseless claim to the club membership as if, by the sheer virtue of his gender, Jeffrey Fearon is entitled to the Club membership.

53.     Plaintiff has suffered damages as a proximate result of Defendants' unlawful actions.

## VI.
### ATTORNEY'S FEES

54.     Plaintiff re-alleges each and every paragraph as though they are set forth fully herein.

55.     Plaintiff seeks all costs of suit and reasonable and necessary attorney's fees incurred by or on behalf of Plaintiff, including all fees necessary in the event of an appeal of this cause to the Court of Appeals and the Supreme Court of Texas, as the Court deems equitable and just pursuant to Chapters 37 and 38 of the Texas Civil Practice and Remedies Code and common law.

## VII.
### EXEMPLARY DAMAGES

56.     Plaintiff re-alleges each and every paragraph as though they are set forth fully herein.

57.     The acts of Defendants complained of herein were committed knowingly, willfully, intentionally, with actual awareness, or with actual malice.  In order to punish Defendants for such unconscionable overreaching and reckless actions and to deter such actions and/or omissions in the future, Plaintiff seeks recovery from Defendants of exemplary damages as provided by Chapter 41 of the Texas Civil Practice and Remedies Code.

## VIII.
### NO WAIVER

58.     By filing this lawsuit, Plaintiff does not waive or release any rights, claims, causes of action, or defenses or make any election of remedies that she has, but expressly reserve such rights, claims, causes of action and defenses.

## IX.
### CONDITIONS PRECEDENT

59.     All conditions precedent to the Plaintiff's right to recovery has been performed, have occurred, and/or have been waived.

## X.
### NOTICE TO PRESERVE EVIDENCE

60.     Defendants are hereby given notice that any document or other material, including electronically-stored information, that may be evidence or relevant to any issue in this case is to be preserved in its present form until this litigation is concluded.

## XI.

### NOTICE PURSUANT TO RULE 193.7

61.    Plaintiff hereby provides notice to all Defendants that pursuant to Rule 193.7 of the

Texas Rules of Civil Procedure Plaintiff may utilize as evidence during the course of this lawsuit

all documents exchanged by the parties in written discovery in this case.

## XII.
### REQUEST FOR JURY TRIAL

62.    Plaintiff hereby requests a jury trial on all issues.

### PRAYER

**WHEREFORE**, **PREMISES CONSIDERED,** Plaintiff requests that Defendants be cited

to appear and answer, and that on final trial, Plaintiff be granted the following relief:

1.    Declaratory relief as requested herein;

2.    Judgment against Defendants for economic damages in an amount

within the jurisdictional limits of the Court;

3.    Judgment against Defendants for Plaintiff's actual, consequential,

and exemplary damages as a consequence of Defendants' intentional, and

malicious conduct;

4.    Judgment against Defendants for Plaintiff's reasonable and

necessary attorney's fees and costs in adjudicating this action through trial and on

appeal;

5.    Pre and post-judgment interest at the maximum amount allowed by

law;

6.    All such other and further relief, at law or in equity, as the Plaintiff

may show herself to be justly entitled.

Respectfully submitted,


**FRIEDMAN & FEIGER, L.L.P.**

/s/ Lawrence J. Friedman

_____
**LAWRENCE J. FRIEDMAN**
State Bar No. 07469300
lfriedman@fflawoffice.com
**MELISSA MILES**
State Bar No. 90001277
mmiles@fflawoffice.com
17304 Preston Road, Suite 300
Dallas, Texas 75252
Tel:    (972) 788-1400
Fax:    (972) 788-2667

**ATTORNEYS FOR PLAINTIFF
REGEN HORCHOW**

For Fearon, Regen - Same check as for
Routman, Lizzie

For Regen Fearon - Regular and
Ellesbeth Routman - Regular

12135

**S. ROGER HORCHOW, TRUSTEE**
5722 CHATHAM HILL ROAD
DALLAS, TEXAS 75225
PH. 214-692-1954

SIGNATURE BANK
DALLAS, TX 75248
32-1779-1110

7/30/04

PAY
TO THE
ORDER OF

Westmoor Club, LLC

Fifty Thousand and 00/100***********************************************************

DATE

****50,000.00
AMOUNT

⑂012135⑂ ⦂▆▆▆▆▆⦂ ⑈ ▆▆▆▆▆⑈

# EXHIBIT 2

**S. ROGER HORCHOW, TRUSTEE**
5722 CHATHAM HILL ROAD
DALLAS, TEXAS 75225
PH. 214-692-1954

**SIGNATURE BANK**
DALLAS, TX 75248
32-1779-1110

12211

9/10/04

PAY
TO THE
ORDER OF

The Westmoor Club

DATE

***200,000.00
AMOUNT

Two hundred thousand and 00/100************************************************************************

The Westmoor Club
10 Westmoor Lane
Nantucket, MA 02554

S Roger Horchow

⑈O12211⑈ ⑆███████████⑆ ⑈███████████⑈

# EXHIBIT 3

FEARON,
Rogen



## THE WESTMOOR CLUB
### n a n t u c k e t

Regular
$ 125K level

## Membership Application

WPB 756385.4
3/19/04

10 August 2004

# Membership Application

Club Member Account Number:_____

Request is hereby made by the undersigned applicant for membership in The Westmoor Club ("Club"). The undersigned has read and understands the Membership Plan and the attached Terms and Conditions.

APPLICANT:___FEDRON_____REGEN_____H._____
                    LAST                    FIRST                    MIDDLE

Home Address:__9785 AUDUBON PLACE    DALLAS  TX  75220_____

Telephone Number:_214 350 7880_____ SS#:██████████████

E-mail Address:__███████████████████__ Date of Birth:██████████

SPOUSE/DOMESTIC COMPANION:_FEDRON____JEFFREY____A._____
                                    LAST            FIRST        MIDDLE

SS#:__███████████████__ Date of Birth:__███████████__

Children and grandchildren under the age of 35 who do not own a home on Nantucket Island may be issued a membership card with charging privileges (proof of age required). No other relatives are eligible to be included in the membership.

| ██████████ | PILLSBURY | SAMANTHA | — | |
|---|---|---|---|---|
| (Date of Birth) | LAST | FIRST | MIDDLE | |
| ██████████ | FEDRON | FIONA | — | |
| (Date of Birth) | LAST | FIRST | MIDDLE | |
| ██████████ | FEDRON | SABRINA | — | |
| (Date of Birth) | LAST | FIRST | MIDDLE | |

REFERENCES

1.    List memberships in other clubs

NANTUCKET YACHT CLUB    S. WATER ST.                        508 228 1400
CLUB NAME                ADDRESS                            TELEPHONE

COOPER AEROBICS CENTER   12400 PRESTON RD                   972 233 4832
CLUB NAME                ADDRESS    DALLAS TX  75230         TELEPHONE

_____
CLUB NAME                ADDRESS                            TELEPHONE

2.    List two social references other than family or business associates    DALLAS TX

STEWART: MICHELLE THOMAS  5022 SHADYWOOD  75209            214 357 5050
NAME                ADDRESS                                 TELEPHONE

THE HON. JEANNE:         5533 EMERSON  DALLAS TX           214 220 4512
NAME  DAVID PHILLIPS     ADDRESS         75209              TELEPHONE

WPB 756385.4
3/19/04

Applicant's Company Name:  NA

Applicant's Company Address:  NA                                                    ☐ Retired

Type of Business: _____ Occupation: _____ Title: _____

Business Telephone: (____) _____ Business Fax: (____) _____

Please CHECK the appropriate box below for correct mailing instruction if other than Local Address:

☒ Mail my BILLS to:                                      ☐ Mail my NEWSLETTER to:

DR. & MRS. JEFF FEALON                                   9785 AUDUBON PLACE

9785 AUDUBON PLACE                                       DALLAS, TX  75220

DALLAS TX  75220

**TYPE OF MEMBERSHIP** (Please check category of membership for which you are applying):

RESIDENT MEMBERSHIP  ☐                          REGULAR MEMBERSHIP ☒
(Year-round residents of Nantucket only.  Qualification for
such membership shall be at the discretion of
The Westmoor Club.)

The undersigned Applicant desires to acquire a membership in the Club and agrees to pay The Westmoor Club, LLC, a Massachusetts limited liability company, the Membership Deposit as follows:

[Check the appropriate box for the payment option selected]

1.  ☐  **Resident Members** should submit payment of $68,000 with this Membership Application.  The Club will notify the Applicant of its approval for membership.

2.  ☒  **Regular Members** should submit an earnest money deposit of $25,000 with this Membership Application.  The Club shall notify Applicant of its approval for membership, the then current value of Regular Memberships, and the balance due.

*Checks should be made out to: The Westmoor Club LLC*

Applicant acknowledges receipt of the Membership Plan, the attached Terms and Conditions and agrees to be bound by all of their respective terms and conditions, as they may be amended from time to time.  Dues, fees and charges are subject to applicable State of Massachusetts taxes.  Membership Deposits, fees, dues, use and facility fees are subject to change without notice.

If Applicant is married, both Applicant and Spouse must sign below, agreeing that they shall be jointly and severally liable for all dues, charges and other amounts from time to time owing to the Club, including all charges incurred by family members listed on this Application and their guests.

_____          Date: _1 August 2004_
Applicant Signature

_____          Date: _1 AUGUST 2004_
Spouse Signature

This Membership Agreement shall not be binding upon the Club until the acceptance below is signed.

APPROVED AND ACCEPTED:
The Westmoor Club, LLC

BY: _____          DATE: _14 August 2004_

Print: Peter D. Hicks

Title: Director of Membership

23 Cliff Road          508 228 5222

WPB 756385.4
3/19/04

## Terms and Conditions of Application and Membership

A.    This Application shall entitle the Applicant to apply for Club membership privileges provided by the Club after Applicant is approved and accepted by the Club. This Application will not be acted upon unless fully completed, executed and accompanied by a check for payment of the Membership Deposit then due. The Applicant understands that this Membership Application is irrevocable after membership is approved and the Applicant sends to the Club all membership fees.

B.    Applicant acknowledges receipt of and agrees, by execution of this Membership Application, upon acceptance of application by the Club, to be bound by the Membership Plan, as amended from time to time. Membership is subject to suspension or termination for failure to abide by membership conditions. Applicant further acknowledges and agrees to be responsible for all charges incurred which shall be due and payable no later than 30 days from the date of the monthly statement. All costs and expenses incurred by the Club in the collection of any amounts not paid when due, including, but not limited to court costs, collection fees and attorney's fees, whether at the trial level or on appeal, shall be charged to Applicant, and shall be due and payable upon demand.

C.    Applicant acknowledges that a member only acquires a revocable license to use the Club Facilities in accordance with the Membership Plan and the privileges associated with the membership acquired. The Club reserves the right, at any time or from time to time, in its sole and absolute discretion, to reserve memberships, to discontinue operation of any of the Club Facilities, to sell or otherwise dispose of the Club Facilities in any manner whatsoever (subject to the Membership Documents), to terminate any types of membership, and to make any other changes in the terms and conditions of membership or facilities available for use by members.

D.    Applicant covenants and agrees to indemnify and hold harmless WCM and the Club and their members, partners, shareholders, directors, officers, employees, representatives, affiliates and agents in accordance with the provisions of any applicable rules and regulations of the Club.

E.    Applicant acknowledges that use of the Club Facilities may be restricted from time to time based on events, maintenance and other causes.

F.    Upon signing this Application, Applicant authorizes the disclosure and release of information to the Club for investigating Applicant's qualifications for membership, and authorizes all persons or entities mentioned above to furnish information to the Club. Applicant agrees that all information and communications received by the Club in connection with this Application are privileged, confidential and not subject to disclosure to Applicant or to any other person other than authorized Club personnel. Applicant agrees never to make demand on the Club or any other person to disclose any of the information or communications to Applicant, and Applicant releases WCM and the Club, and their members, partners, officers, directors, shareholders, employees, representatives, affiliates and agents and any person providing information or communications from any liability in connection therewith.

G.    Applicant acknowledges that the Club hereby promises to repay to Regular Members 80% and Resident Members 64% of the Membership Deposit currently in effect for that category of membership on the date of resignation, without interest, 30 days after the resignation and resale of the membership, as provided for in the Membership Plan. If at the end of the 30-years from the date of admission to the Club Applicant is still a member of the Club, Applicant may elect to either resign or continue the membership by notifying the Club of that election in writing. If Applicant resigns after the 30-year period, the Membership Deposit originally paid by Applicant will be repaid to Applicant within 30 days after such resignation regardless of when the membership is actually resold by the Club. If Applicant elects to continue the membership, Applicant must leave the Membership Deposit with the Club until Applicant subsequently resigns from the Club. Upon such subsequent resignation, the Club will repay to Regular Members 80% and Resident Members 64% of the Membership Deposit charged for that category of membership on the date of resignation, without interest, 30 days after the resignation and resale of the membership, as set forth above.

H.    Resignation is permitted only in accordance with the Membership Plan. Applicant acknowledges that the Membership Deposit and all other amounts must be paid in full prior to resignation of the membership. The member's use privileges will continue until the membership terminates under the terms of the Membership Plan and the member must continue paying all dues and other charges required until membership terminates.

I.    Any interest earned on the Membership Deposit shall be the property of the Club. The Membership Deposit may be refunded at any time at the sole discretion of the Club without penalty or premium. The right of Applicant to receive repayment of the Membership Deposit without interest is not transferable or negotiable.

J.    The Membership Deposit is also security for the payment of dues and charges incurred by Applicant and all amounts due to the Club which remain unpaid on the date of repayment of the Membership Deposit shall be deducted from the Membership Deposit.

WPB 756385.4
3/19/04

# EXHIBIT 4

August 15, 2004

Dr.and Mrs.Jeffery Fearon
9785 Audubon Place
Dallas, TX  75220

Dear Regen and Jeffrey:

We are delighted to inform you that your application for a Regular Membership has been accepted.  We look forward to joining with you to build a truly special club on Nantucket.  We offer the following update for your review.

We are very gratified by interest in the club.  Over the past six weeks we have received approximately 235 membership applications.  Prospective members are responding to the club for a variety of reasons – dining and guest rooms, tennis and other sports, the fitness center/spa, children's activities, and yachting opportunities on our classic motor yachts or sports fishing boat.  A common thread is their interest in becoming part of a community of active, collegial, and interesting people who treasure their time on Nantucket.

Importantly, major permitting has been completed.  The club has received approvals from the Planning Board, the Conservation Commission and the Historic District Commission.  The club's architectural and landscaping plans continue to evolve and improve.  We look forward to showing you the latest designs and renderings over the summer.

We have purchased all the property we need for the club and have opened a membership office in the clubhouse. In addition, we have hired a Director of Membership Services, Peter Hicks, so please feel free to call Peter if he can be of any help or stop by the club for tours and more information.  That office will also produce a club newsletter with all of the latest developments.

As promised we have been reviewing applications in the order in which they were received.  The amount of a Regular Membership at the time we received your application was $125,000.  We have a deposit from you of $25,000.  Please forward the balance of your Membership Deposit within 14 days.

* * * * * * * * * * * * *

If you have any questions or if we can help in any way, please don't hesitate to call.  Thanks again for your confidence and we look forward to speaking with you very soon.

Sincerely,

J. Graham Goldsmith                          Alan J. Worden
President                                    Vice President

# EXHIBIT 5



## THE WESTMOOR CLUB
### nantucket

# Membership Plan

WPB 754541.8

Effective Date:  January 15, 2019

## THE WESTMOOR CLUB
## MEMBERSHIP PLAN

**Memberships in The Westmoor Club.**

This Membership Plan describes the membership opportunities offered by The Westmoor Club (the "Club").  The Club provides members and their guests with use of recreational and social facilities located on Nantucket Island, Massachusetts.

**Individuals desiring to acquire memberships in the Club should read this Membership Plan carefully.**

Individuals who desire to apply for a membership in the Club should carefully read this Membership Plan.

**Rely only on information in this Membership Plan and the referenced documents.**

Any representation regarding the Club or memberships in the Club not contained in this Membership Plan or the other documents referenced herein (collectively the "Membership Documents") should not be relied upon.

**Offering of memberships.**

Memberships will be offered only to approved applicants.  A person interested in membership will submit a fully completed and signed Membership Application and the required Membership Deposit.  A personal interview may also be required.

**Inquiries regarding membership may be made to the Club.**

All inquiries regarding memberships in the Club may be made by contacting the Club by phone at 508-228-9494 or by email at info@thewestmoorclub.com.

WPB 754541.8

## TABLE OF CONTENTS

**Page**

THE WESTMOOR CLUB MEMBERSHIP PLAN ................................................................................. i

GENERAL DESCRIPTION OF MEMBERSHIP PLAN ............................................................. 1

CLUB FACILITIES ...................................................................................................................... 1

MEMBERSHIPS ........................................................................................................................... 2

      A.     Memberships Generally ................................................................................ 2

      B.     Membership Privileges ................................................................................ 2

      C.     Membership Deposit .................................................................................... 5

      D.     Resignation and Transfer of Membership .................................................. 5

      E.     Dues and Charges ........................................................................................ 8

USE OF CLUB FACILITIES ....................................................................................................... 9

BOARD OF GOVERNORS .......................................................................................................... 9

CLUB OPERATIONS ................................................................................................................... 9

ACKNOWLEDGMENT OF MEMBERSHIP RIGHTS .............................................................. 9

DISPOSITION OF CLUB FACILITIES AND PROGRAM CHANGES ................................. 10

DISCIPLINE ............................................................................................................................... 10

## GENERAL DESCRIPTION OF MEMBERSHIP PLAN

**Ownership and Operation.**

The Westmoor Club, LLC, a Massachusetts limited liability company ("Westmoor"), has implemented the membership program described in this Membership Plan. The club facilities and land are, owned and maintained by Westmoor. The Club is operated and managed by Westmoor Club Management, LLC, a Massachusetts limited liability company ("WCM"). The privileges of membership are described in this Membership Plan, as amended from time to time.

## CLUB FACILITIES

**Club Facilities.**

The Club Facilities include the following:

- Clubhouse offering indoor and outdoor dining, a bar, card room, offices, and seven (7) guest rooms available for members and their approved guests.

- A Fitness Center consisting of approximately 18,000 square feet with fitness rooms and equipment, men's and women's locker rooms with steam and sauna facilities, two squash courts, a large multi-purpose room, and spa facilities offering facials and massage, whirlpool, and eight treatment rooms. The Club offers yoga, Pilates and aerobics classes and personal trainers.

- Snack bar

- Pro shop

- Two (2) bath houses

- Thirteen (13) tennis courts

- Multi-lane pool, adult pool, outdoor spa and children's pool

- Putting green

- Children's playground and soccer field

- Two (2) paddle courts

- Two (2) croquet courts

- Classic motor yacht and sport fishing boat

The facilities described above are referred to in the Membership Documents as the "Club Facilities." The Club may provide additional Club Facilities in its sole discretion.

WPB 754541.8                                  1

**Availability of Club Facilities.**

The Club Facilities will be open and available for use by all Members between May and October with limited Clubhouse activities scheduled from October until January 1st. The Fitness Center, squash courts and paddle tennis courts will be open all year. The tennis courts will be open from early Spring and into the late Fall, weather permitting. Boating will be available on a seasonal basis.

## MEMBERSHIPS

### A.    Memberships Generally

**Eligibility for membership.**

Memberships will be available to individuals approved for membership, who make non-interest bearing refundable Membership Deposits to the Club and pay any then required dues and fees. Each prospective member will submit a Membership Application which must be reviewed by the Club. A personal interview may also be required. The Club will make the final determination whether to offer membership to an applicant. The number of memberships will be limited, so membership is subject to availability.

Membership criteria will include, but will not be limited to, character, general reputation, personal characteristics, involvement in Nantucket community activities, business reputation and financial condition. The Club may turn down an individual for any reason permitted by law. The Club shall not discriminate on the basis of race, color, religion, gender, national origin, disability, age or marital status in the approval of applicants.

If the Club determines to offer membership to an individual, the Club will notify the individual in writing of the acceptance. If the individual is rejected, the Club will so notify the individual. The Club need not state the reason for the rejection, nor is the Club required to make a determination on any particular individual.

**Members agree to be bound by the terms and conditions of the Membership Plan.**

If approved for membership, the member, by submitting a signed Membership Application, agrees to be bound by the terms and conditions of the Membership Plan, as it may be modified from time to time.

### B.    Membership Privileges

**Categories of Membership.**

The Club initially offered three categories of membership: Founder, Resident, and Regular (collectively the "Full Memberships"). Founder Memberships were issued in accordance with Westmoor's Founder Member Private Placement Memorandum (the "Founder PPM") and are no longer available. Resident Memberships are no longer available. Regular Memberships are issued in accordance with this Membership Plan. All Members will have full use privileges for the Member and his or her family as described below.

**A Membership is for an Individual.**

Memberships may only be owned individually. Memberships in other forms of ownership or other types of memberships may be offered in the future at the Club's discretion.

**Membership Limit.**

The total number of Full Memberships shall not exceed 580, as determined by approvals obtained from the Town of Nantucket.

**Founder Memberships.**

Founder Memberships are no longer being offered by the Club.

Founder Membership includes a "First Membership" and "Second Membership". The privileges and obligations of Founder Membership are more fully described in the Founder PPM.

Founder Members enjoy benefits not available to Resident or Regular Members, such as recognition on plaques in a designated area of the Clubhouse, annual Founder Member dinner and other special events, and advance sign-up privileges for special events, guest rooms and amenities that require advance sign up.

**Resident Memberships.**

Resident Memberships are no longer being offered by the Club. Any resigned Resident Memberships will be reissued as Regular Memberships. Resident Members will have full use privileges to the Club Facilities, subject to the priority reservation rights of the Founder Members.

**Regular Memberships.**

Resigned Founder and Resident Memberships will be reissued as Regular Memberships. Regular Members will have full use privileges of the Club Facilities, subject to the priority reservation rights of the Founder Members.

**Legacy Memberships.** The Club may, from time to time, offer Legacy Memberships to the children and grandchildren of Members through a Legacy Program, the terms and conditions of which will be determined by the Club in its sole discretion. Legacy Memberships will count toward the limit on Full Memberships. Resigned Legacy Memberships may be reissued as Regular or Legacy Memberships in the Club's discretion and will be included in the Regular Membership resale list.

**Honorary Memberships.**

The Club may issue a limited number of Honorary Memberships. The Club will determine the terms and conditions of Honorary Membership from time to time at its discretion, including whether or not a Membership Deposit, dues and other fees will be paid. An Honorary Membership does not entitle the Member to any proprietary or ownership interest in the Club or the Club Facilities. Honorary Memberships are not assignable or transferable. The Club may, at any time,

terminate an Honorary Membership and may or may not issue a replacement Honorary Membership to another person, without payment of any fee.  Honorary Memberships shall not count toward the membership limit.

**Other Memberships.**

The Club reserves the right to issue annual, seasonal (such as "Winter Memberships" discussed below), and other types of memberships from time to time.  Such memberships, if issued, will be entitled to such privileges and subject to the payment of such dues, membership fees and other fees and charges, and such other terms and conditions as may be established by the Club from time to time.

**Winter Memberships are Seasonal Memberships.**

The Club may offer up to 300 Winter Memberships available only for full-time residents of Nantucket Island as determined by the Club for use of certain Club Facilities.  Winter Members will have privileges to use the Fitness Center, paddle courts and squash courts from mid-October through mid-May, upon payment of dues and charges as determined by the Club from time to time. Winter Memberships are available only as seasonal memberships on an annual basis with renewal at the Club's sole discretion.

**Use privileges for Family Members.**

A membership provides use privileges to the following "Family Members":  (i) the spouse of a married member; (ii) an unmarried member's "Domestic Companion"; and (iii) the member's children or grandchildren under 35 years of age who do not own a home on Nantucket Island. Family Members will not pay guest fees.

A "Domestic Companion" is an individual who permanently resides with an unmarried member and who has been designated by the member as such in an agreement with the Club.  Such a designation may be permitted annually, in the Club's discretion, upon application, approval and payment of any applicable fees.  A Domestic Companion may be changed only once during any calendar year.  The Club may terminate the privileges of any or all Domestic Companions in its discretion.

A Member's adult children and grandchildren who are 35 years of age or older or children and grandchildren of any age who own a home on Nantucket Island ("Adult Children") will have a maximum of two (2) weeks per membership year of use privileges at the Club.  A Member's Adult Children must apply for membership and become members in their own right to have use privileges at the Club other than as guests of Members, and subject to applicable guest fees.

All other individuals will be treated as guests, subject to the same rules, regulations and fees as other guests.

**Guest use of the Club Facilities will be restricted.**

Members in good standing are entitled to have guests use the Club Facilities subject to availability of the Club Facilities and in accordance with the Club's Rules and Regulations and upon payment of applicable guest fees and charges as may be charged from time to time.

Guests must be registered by the sponsoring member with the Club. The Club reserves the right to require identification by each guest. The sponsoring member is responsible for all charges incurred by guests and for the deportment of, and any damages caused by, guests. Guests are not permitted to have guests.

Guest privileges may be denied, withdrawn or revoked at any time for reasons considered sufficient by the Club in its sole and absolute discretion.

### C.     Membership Deposit

**A Membership Deposit is required to acquire a membership.**

A person offered a membership must pay a Membership Deposit and dues.  The amount of the Membership Deposit and the terms for payment will be set forth in the individual's Membership Application.  The Membership Deposit and dues will be determined from time to time in the sole discretion of the Club. Membership Deposits and other amounts paid to the Club are the property of the Club and may be used for any purpose determined appropriate by the Club.

**Tax consequences of acquiring a membership.**

The Club makes no representations and expresses no opinion regarding the federal or state income tax consequences of acquiring a membership or repaying the Membership Deposit without interest.

All members acquire their memberships subject to all applicable tax laws as they may exist from time to time.  Certain provisions of the Internal Revenue Code impute interest income to a lender with respect to a non-interest bearing loan.  It does not appear that these provisions currently apply to the memberships offered by the Club.  The Internal Revenue Service may, in the future, issue regulations which might impute interest income to a membership after the effective date of the regulations.  Members should consult with their own tax advisers with respect to the tax consequences of paying the Membership Deposit and the Club's non-interest bearing obligation to repay the Membership Deposit in accordance with this Membership Plan.

### D.     Resignation and Transfer of Membership

**Resignation of Membership.**

A Member who desires to resign his or her membership must give the Club written notice that the membership is resigned. Resigned memberships will be placed on a waiting list for resale in the order in which written notice of an effective resignation is received at the Club; provided, however, the memberships of deceased members and Founder Members will have priority over other resigned members.  Members wishing to resign will be responsible for full dues and will continue to have privileges until the end of the membership year in which the membership is resold.

WPB 754541.8                                                 5

No resignation will be effective until the total Membership Deposit is paid in full and all unpaid fees, Club accounts, dues or other amounts owed to the Club are paid in full. Until all such amounts are paid in full, the membership will not be deemed resigned or assigned a position on the waiting list for resale and will not be eligible for any type of transfer or refund of any portion of the Membership Deposit. Resales, transfers and refunds will be made only in accordance with the procedures set forth in this Membership Plan. Any other attempted resale or transfer shall be of no effect. In the event of a resignation or transfer of a membership pursuant to this Membership Plan, the receipt by a Member of the applicable refund of the Membership Deposit as described herein shall constitute and be a full and unconditional release of any and all liability the Club may have to the Member and his or her Family Members.

**The Membership Deposit of one resigned membership will be refunded for every six memberships sold by the Club.**

At any time that a membership category is not at capacity, as determined by the Club, the Membership Deposit of one resigned membership (from the top of the resale list in that category) will be refunded for every six memberships in that category enrolled by the Club. At any time that a membership category is at capacity, the Membership Deposit of the resigned membership at the top of the resale list will be refunded as each new membership in that category is enrolled. Notwithstanding the foregoing, Founder Memberships and memberships of deceased Members will have priority over all other resigned memberships, and memberships of deceased Members will have priority over Founder Memberships. Each new purchaser of a membership must be approved for membership by the Club and must pay the required amount of the then-current Membership Deposit and dues.

The required amount of the Membership Deposit will be provided in the individual's Membership Application and may be reduced in the Club's discretion such as for a member joining through the Legacy Program.

**Repayment of Membership Deposit.**

Unless otherwise provided in the Terms and Conditions of a Member's Membership Application, the Club will repay (a) to a Founder Member or Regular Member, eighty percent (80%) of the Membership Deposit charged for a Regular Membership on the date of resale, (b) to a Resident Member, sixty-four (64%) of the Membership Deposit charged for a Regular Membership on the date of resale, and (c) to a Legacy Member, 40% of the Membership Deposit charged for a Regular Membership on the date of resale, in any case, without interest, 30 days after the resale of the membership, as set forth above. The Club will deduct from the amount to be paid to the resigned Member any amount which the Member owes to the Club.

If the Member is still a member of the Club at the end of thirty (30) years from the date of admission to the Club, the Member may elect to either resign or continue the membership by notifying the Club of that election in writing. If the Member elects to resign, the Membership Deposit originally paid by the Member will be repaid to the Member within thirty (30) days after the Member's resignation, regardless of whether the membership is actually resold by the Club. If a Member

elects to continue the membership, the Member must leave the Membership Deposit with the Club until he or she subsequently resigns.  Upon such subsequent resignation and unless otherwise provided in the Terms and Conditions of a Member's Membership Application, the Club will repay (a) to a Founder Member or Regular Member, eighty percent (80%) of the Membership Deposit charged for a Regular Membership on the date of resale, (b) to a Resident Member, sixty-four percent (64%) of the Membership Deposit charged for a Regular Membership on the date of resale, and (c) to a Legacy Member, 40% of the Membership Deposit charged for a Regular Membership on the date of resale, in any case, without interest, thirty (30) days after the resignation and resale of the membership, as set forth above.

**Transfer of Membership to Spouse.**

A Member may transfer the membership to his or her spouse.  Such transfer may be made either during the Member's lifetime or upon his or her death.  The proposed transferee must apply and be approved for membership.  No additional Membership Deposit will be required, but the Club reserves the right to charge a transfer fee to process the transfer.  The transferee will thereafter inherit all the privileges of membership and will be responsible for all membership obligations.  Upon the transfer of the membership, all rights and obligations of the membership shall be transferred to the spouse, including, but not limited to, the right to resign the membership and the Club's obligation to refund the Membership Deposit pursuant to the terms of the Membership Plan.

In the event a membership is transferred to a spouse due to the death of a Member, and such spouse elects not to accept the membership, the membership will be placed at the top of the Reissuance List and accordingly will receive priority for a refund of the Membership Deposit.  No transfer fee will be charged in the case of a transfer due to death.

Such right to transfer may be exercised only by the original Member, only once per membership and only while the membership is in good standing.  A membership which has been transferred to a spouse will be deemed resigned upon the resignation or death of such transferee.

**Separation and divorce.**

In the event of separation, only the Member designated on the Membership Application will have the privileges of membership. In the case of divorce of a married Member, the membership shall belong to the spouse designated on the Membership Application as the Member unless otherwise provided by agreement between the parties or by court order.  If the membership is awarded to the non-member spouse by settlement agreement or court order, the non-member spouse must apply and be approved for membership by the Club.  In the event the non-member spouse is not approved for membership, the membership will be deemed resigned.

**Termination of Domestic Companion.**

A Member may terminate the privileges of a Domestic Companion by notifying the Club in writing.

**The Club will not become involved in disputes.**

The Club will not become involved in disputes regarding any membership in the Club. In the case of such disputes, the Club may (but will not be required to) at any time, at its discretion, suspend all of the privileges associated with the membership in question until the dispute is resolved and the Club receives evidence, satisfactory to it, of the resolution of the dispute. During the dispute, all dues and charges must continue to be paid. Failure to pay all dues and charges may result in forfeiture of the membership. The Club may require any evidence it deems necessary to determine eligibility for use privileges and may terminate the use privileges of any person in order to prevent abuses of the intent of this Membership Plan.

**Pledge of membership not allowed.**

A Member may not assign, pledge or use his or her membership as collateral for a loan or any obligation.

### E.    Dues and Charges

**The membership year of the Club is January 1 to December 31.**

The Club's membership year commences January 1 and ends on December 31.

**Dues, fees and charges are set prior to each membership year.**

Each year the Club will determine, the amount of dues for each category of membership, fees and other charges to be paid by members. The dues may include reserves for anticipated repairs to and replacements of the Club Facilities and the payment of market-rate management fees to WCM or a third-party manager. The dues will be determined on the basis that the Club is expected to operate at "break even", without any operating profit to either Westmoor or WCM from Club operations.

**Payment of dues.**

The schedule for the payment of dues will be determined by the Club from time to time. Dues are currently due and payable annually, in advance. If a Member joins the Club after June 1, dues will be prorated based upon the number of days from June 1 remaining in the year at the time the member joins. Use charges and other service fees will be billed monthly. A resigned Member must continue to pay all dues and other amounts required of members through the end of the membership year in which the membership is resold. There will be no refund of prepaid dues. Inactive status is not permitted, except in hardship cases approved by the Club.

**No assessments.**

Members are not subject to any operating or capital assessments. The payment of dues, fees, use taxes, service charges, personal and other charges, as the Club may establish from time to time in its sole and absolute discretion, is required to acquire and maintain membership privileges, and is not a capital or operating assessment.

WPB 754541.8                                    8

**Delinquencies.**

Members' accounts are payable upon billing. Those Members whose accounts are not paid within 30 days of billing shall be considered delinquent. Late charges may be imposed. Each Member shall provide the Club with the number of a major credit card issued to the Member and authorization for the Club to charge any delinquent accounts to that credit card. The Club may also suspend and/or terminate the membership of any Member whose account is delinquent for 60 days or if the Club's attempt to charge the delinquent amount to the Member's credit card is rejected. Termination will occur 60 days from the Club's mailing of notice of the Club's intention to terminate. Upon termination, the Club may offset the Membership Deposit and/or take any action to collect outstanding amounts. The Member shall be responsible for all collection and associated legal costs.

## USE OF CLUB FACILITIES

**Westmoor and WCM will have the right to use the Club Facilities.**

Westmoor, WCM and their agents have the right to use the Club Facilities to entertain prospective membership purchasers, whether or not accompanied by a representative.

**Private Parties.**

Members may schedule private parties at the Club. The sponsoring Member will obtain approval from, and make reservations with, the Club prior to any party. The Member of the Club sponsoring the private party will be responsible for all costs of the party and any damage caused.

## ADVISORY BOARD

**Advisory Board.**

The Club will appoint an Advisory Board to represent the interests of the Members. The Advisory Board shall seek input from Members, advocate Members' interests and shall serve in an advisory capacity. The Advisory Board will not become involved in the management or operation of the Club.

## CLUB OPERATIONS

**Management of the Club Facilities.**

WCM and its agents will be solely responsible for the management and operation of the Club Facilities and will be advised by the Board of Governors on various matters from time to time.

## ACKNOWLEDGMENT OF MEMBERSHIP RIGHTS

**Acknowledgment of Membership Rights.**

Membership in the Club grants to the Member a revocable license to use the Club Facilities, but does not give a Member a vested or prescriptive right or easement to use the Club Facilities.

WPB 754541.8                    9

Membership in the Club is not an investment in the Club and does not provide the Member with an equity or ownership interest or any other property interest in the Club or the Club Facilities. Members of the Club will not be entitled to vote on Club matters other than the election of the Board of Governors.

**The Club may modify the Membership Documents.**

The Club reserves the right, from time to time, to modify use privileges and to establish rules governing the Club Facilities. All use privileges will be subject to the Club Rules and Regulations and the other Membership Documents, all of which may be changed from time to time by the Club.

**Memberships are offered for recreational, not investment purposes.**

Memberships are offered exclusively to permit a person acquiring a membership to obtain recreational and social use of the Club Facilities. Membership should not be viewed or acquired as an investment and no person acquiring a membership should expect to derive any economic benefits or profits from the membership. This Membership Plan has not been reviewed or endorsed by any federal or state governmental authority.

## DISPOSITION OF CLUB FACILITIES AND PROGRAM CHANGES

**Westmoor and WCM retain the right to modify the Club Facilities or to sell or otherwise dispose of the Club Facilities.**

Westmoor and WCM retain the right to modify the Club Facilities and to sell or otherwise dispose of the Club Facilities, subject to the terms of the Membership Documents. Westmoor and WCM retain the right to make changes to the Membership Documents.

## DISCIPLINE

**Improper conduct.**

Any Member whose conduct shall be deemed by the Club, in its sole judgment, to be improper or likely to endanger the safety, harmony or good reputation of the Club or of its members, may be reprimanded, fined, restricted from using certain Club Facilities, suspended or expelled from the Club. The Club has implemented a zero tolerance policy for inappropriate sexual advances, verbal or physical abuse of Members, staff or guests and any threatening behavior or statements. Other examples of improper conduct include, but are not limited to, the following: (i) submission of false information on a Membership Application, (ii) use of a membership card by any person other than the Member, (iii) delinquency in the payment of any portion of the Membership Deposit, dues, fees, service charges or other amounts due to the Club, (iv) exhibition of unsatisfactory deportment or appearance, and (v) failure to abide by any other term or condition in the Membership Documents, as amended from time to time. The Club reserves the right to discipline a Member, and a Member's Family Members, or guest, in accordance herewith, for any other cause deemed sufficient by the Club.

In addition to their own conduct, Members are responsible for the conduct of their Family Members, and guests. The Club may reprimand, fine, restrict, suspend or expel a Member, if the

Club determines that the conduct of such Member's Family Member, or guest is improper.  The Club may also restrict, suspend or terminate some or all of the use privileges of such Family Member, or guest.

**Notification of proposed action.**

Any Member against whom disciplinary action is being considered will be notified either verbally or in writing of any proposed action and will be given an opportunity to be heard by the Club to show cause why he or she should not be disciplined.  If the Member desires to be heard, the member must provide a written request for a hearing to the Club within fifteen (15) days of the date of the Club's notice to the Member of the proposed action.  Upon the Club's receipt of the written request for a hearing, the Club will set a time and date not less than ten (10) days thereafter for such hearing.  While the Club is considering the complaint, the Member must continue paying dues, fees and any other charges due to the Club and will continue to enjoy use privileges of the Club Facilities.  However, Members accused of conduct for which a zero tolerance policy is in effect may have their privileges immediately suspended.  There is no requirement that a Member receive a warning prior to disciplinary action. Family Member and guest privileges may be terminated without prior notice or a hearing.

**Dues, fees and charges will accrue and must be paid in full prior to reinstatement.**

During any restriction or suspension, all dues, fees, and charges will continue to accrue and must be paid in full prior to a disciplined Member being reinstated as a Member in good standing.

**Expulsion from the Club.**

Upon the expulsion of a Member, the Member will forfeit the membership and will not be entitled to any refund of his or her Membership Deposit unless the Club determines, in its sole discretion, that refund of some portion of the Membership Deposit is appropriate.