UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| REGEN HORCHOW, Plaintiff, v. THE WESTMOOR CLUB, LLC, Defendant. | CIVIL ACTION NO. 25-11008-WGY |

YOUNG, D.J. November 16, 2026

**FINDINGS OF FACT, RULINGS OF LAW, AND ORDER FOR JUDGMENT**

## I. BACKGROUND

This action arises from a dispute concerning membership rights in The Westmoor Club, LLC (the "Club"), a private club located in Nantucket, Massachusetts. The controversy has its origins in a Membership Application submitted by a married couple (as they then were) in August 2004. See Pl.'s Aff. in Supp. of Mot. for Partial Summ. J. Ex. 5, ECF. No. 36-5. The body of the application identifies the plaintiff Regen Horchow ("Horchow") as the Applicant and Dr. Jeffrey Fearon ("Dr. Fearon") as Spouse, yet the document was executed with Dr. Fearon signing on the Applicant signature line and Horchow signing on the Spouse signature line. See id. The Club no longer possesses records expressly identifying who it admitted

as the primary member in 2004. See Pl.'s Statement of Material Facts ¶¶ 34, 45, ECF No. 35. As a result, the parties draw competing inferences from the Membership Application, the governing Membership Documents, and the Club's surviving records.

Horchow contends that she was admitted as the Club's primary member in 2004 and that the Club subsequently breached its contractual obligations by recognizing her former husband, Dr. Fearon, as the primary member, depriving her of membership rights, and ultimately expelling her. See Pl.'s Mem. Partial Summ. J. at 8-9, ECF. No. 34. The Club disputes that contention and maintains that Horchow was admitted only as a spousal member. See Def.'s Mem. Summ. J. at 1, ECF No. 38.

The present action does not require the Court to determine who should have been admitted as the primary member in 2004. Rather, the dispositive issue is whether Horchow has proved, by a preponderance of the evidence, that the Club in fact admitted and recognized her as the primary member in 2004. Given that each of Horchow's claims rests upon that proposition, resolution of that issue is central to the disposition of the case.

## II. PROCEDURAL HISTORY

Prior to filing the current complaint, Horchow sued the Club and Dr. Fearon in Texas on August 29, 2023, for recognition as the proper member. See Def.'s Statement of Facts ¶ 44, ECF

No. 39. On April 11, 2025, Horchow filed a Notice of Partial Nonsuit Without Prejudice, dismissing all claims against the Club while leaving the membership dispute unresolved. See id. at 47.

Horchow then filed suit against the Club in this Court on April 17, 2025. See Pl.'s Compl., ECF No. 1. Horchow brings three counts: (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, and (3) an unfair and deceptive practices claim. The Club moved to dismiss under Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 12(b)(7). See Def.'s Mot. Dismiss, ECF No. 6. The Court denied the Club's motion to dismiss on January 9, 2026. See Elec. Clerk. Notes., ECF No. 22; Hr'g Tr., ECF No. 31.

Horchow moved for partial summary judgment with respect to the first two counts, i.e., breach of contract for transferring the membership, and breach the implied covenant of good faith and fair dealing. See Pl.'s Mot. for Partial Summ. J., ECF No. 33. The Club, in turn, moved for summary judgment as to all of Horchow's claims. See Def.'s Mot. for Summ. J., ECF No. 37. The parties fully briefed both motions. See Def.'s Opp'n Mot. Summ. J., ECF No. 44; Pl.'s Reply, ECF No. 54; Pl.'s Opp'n Mot. Summ, J., ECF No. 47; Def.'s Reply., ECF No. 52. The Court denied both motions on May 18, 2026, and parties agreed to proceed with the matter as a stated case. See Elec. Clerk's

Notes, ECF No. 58. The Court heard arguments on the stated case on May 27, 2026, and took the matter under advisement. See Electronic Clerk's Notes, ECF No. 63.

**III. CASE STATED**

In lieu of summary judgment, the parties agreed to proceed with a "case stated" hearing after which the Court now renders this opinion and enters judgment based on the agreed record. "In a case stated, the parties waive trial and present the case to the court on the undisputed facts in the pre-trial record." TLT Constr. Corp. v. RI, Inc., 484 F.3d 130, 135 n.6 (1st Cir. 2007). Case stated hearings may provide an efficient procedural alternative to cross motions for summary judgment. See Continental Grain Co. v. Puerto Rico Mar. Shipping Auth., 972 F.2d 426, 430 n. 7 (1st Cir. 1992). In contrast to summary judgment where the Court must draw all reasonable inferences in favor of the nonmovant, in a case stated the Court is "entitled to 'engage in a certain amount of factfinding, including the drawing of inferences.'" TLT Constr. Corp., 484 F.3d at 135, n. 6 (quoting United Paperworkers Int'l Union Local 14 v. Int'l Paper Co., 64 F.3d 28, 31 (1st Cir. 1995)).

## IV. FINDINGS OF FACT

### A. The Parties and the Membership Application

Horchow is an adult female resident of Texas, and the Club is a private club based in Nantucket, Massachusetts. See Pl.'s Compl. ¶ 3. To obtain membership in the Club, Horchow filled out a membership application (the "Membership Application") by hand on August 1, 2004. See Pl.'s Statement of Material Facts ¶ 14, ECF No. 35. Horchow listed herself as the Applicant on the Membership Application while she listed her then-husband, Dr. Fearon, as the "Spouse." See id. ¶ 16. Horchow also provided her own reference contacts. See id. ¶ 22.

Notwithstanding being initially identified as the Applicant and the Spouse respectively, Horchow and Dr. Fearon signed the Membership Application in reverse order, Dr. Fearon as the Spouse and Horchow as Applicant. See Def.'s Statement of Facts ¶ 5, ECF No. 39. Horchow was admitted as a member of the Club on August 14, 2004. See Pl.'s Statement of Material Facts ¶ 25. Horchow assumed she was admitted as a primary member. See Def.'s Aff. in Supp., Dep. of Regen Horchow at 39:2, ECF. No. 40-7. Horchow's father paid the prescribed earnest money deposit, which is credited to the new member's initiation fee upon successful application (the "Membership Deposit"). See Pl.'s Statement of Material Facts ¶ 28. Upon acceptance of the application, Horchow's father also paid the balance of the

Membership Deposit. See id. ¶ 31. In addition to the foregoing indicia, the then Director of Membership labeled the check and receipt for the balance as being "For Regen Fearon." See Pl.'s Aff. in Supp., Dep. of Peter Hicks at 40:16-41:1, ECF No. 36-3. Notwithstanding these indicia, Horchow admits that she never saw herself listed as the primary member on any of the Club's documentation or platforms. See Def.'s Aff. in Supp., Dep. of Regen Horchow at 29:7-11.

**B. The Membership Documents**

Upon Horchow's admission to the Club, the Westmoor Club Membership Plan ("Membership Plan") governed the parties' relationship. See Horchow Aff. in Supp., Membership Plan at 6, ECF No. 36-1. The Membership Plan states that Membership "may only be owned individually" and is "available to individuals approved for membership, who make non-interest-bearing refundable Membership Deposits to The Club and pay any then required dues and fees." See id at 6-7.

The Membership Application provides that "[t]he undersigned Applicant desires to acquire a membership in the Club and agrees to pay . . . the Membership Deposit." See Pl.'s Aff. in Supp., Membership Application at 3, ECF No. 36-5. The Membership Application further provides that if the Applicant is married, both Applicant and Spouse must sign and agree that they shall be jointly and severally liable for all dues, charges, and other

amounts owing to the Club. See id. at 4. The Membership Application also states that it will not be acted upon unless fully completed and executed, that the Applicant agrees to be bound by the Membership Plan upon acceptance, and that the Applicant authorizes the Club to investigate the Applicant's qualifications for membership. See id. at 5.

**C. The Club's Records**

The Club's earliest distinction between Dr. Fearon and Horchow's membership designations on record dates to September 8, 2017 when the Club updated their records from "[F007] Fearon, Jeffrey and Regen" to "[F007] Jeffrey Fearon." Pl.'s Aff. Supp., 36-11. The record leaves the designation before September 2017 uncertain. It does not establish that Horchow was the primary member before then.

More significantly, receipts from August 2013 identify Dr. Fearon as "F007" and the parties' daughter as "F007C." Def.'s Aff. in Supp., Receipts, ECF No. 40-8. A receipt identifying Horchow as "F007A" exists, but it post-dates the 2017 change-log entry and therefore sheds little light on the Club's designation before September 2017. See id. The Court, however, finds the available evidence sufficient to establish the existence of a system in which the principal membership number identified the primary member while suffixes identified associated family members.

The Court thus finds that the records indicate that as early as August 2013 the principal membership number was attributable to Dr. Fearon. Whether that designation reflected sole ownership or some earlier ambiguity, it suffices for this Court's finding that the designation is inconsistent with Horchow's contention that she exclusively held primary membership rights until 2017.

**D. Subsequent Events**

In 2019, Horchow filed for divorce against Dr. Fearon. See Def.'s Statement of Facts ¶ 15. Upon learning of her status as "Member's Spouse," Horchow told the Club's Chief Financial Officer, Laurie Cowden of her divorce from Dr. Fearon and requested that Ms. Cowden list her as the primary member instead of Dr. Fearon. See id. ¶ 24. When Horchow's repeated personal requests to make this change failed to bear fruit, on August 29, 2023, Horchow sued the Club and Dr. Fearon in Texas but later, on April 11, 2025, filed a partial nonsuit, dropping the Club as a defendant (and thus leaving unresolved the central issue presented here). See id. ¶¶ 44, 47. On October 10, 2024, the Club informed Horchow that both she and Dr. Fearon had been expelled from the Club. See id. ¶ 45. This expulsion occurred without prior notice or hearing, and thus without the opportunity to withdraw from the Club and have the entry fee returned (with subsequent appreciation in value). See id..

## V. RULINGS OF LAW

### A. Burden of Proof

Horchow, as the plaintiff, bears the burden of proving that she had contractual relationship to the Club as the primary member. "Under Massachusetts law, a breach of contract claim requires the plaintiff to prove that 'a valid, binding contract existed, the defendant breached the terms of the contract, and [the plaintiff] sustained damages as a result.'" Schuster v. Wynn MA, LLC, 118 F.4th 30, 44 (1st Cir. 2024) (quoting Gattineri v. Wynn MA, LLC, 63 F.4th 71, 85 (1st Cir. 2023)). The plaintiff bears "the burden of proving the existence of a contract." Power v. Connectweb Techs., Inc., 740 F. Supp. 3d 39, 55 (D. Mass. 2024) (Dein, U.S.M.J.) (quoting Moore v. La-Z-Boy, Inc., 639 F. Supp. 2d 136, 140 (D. Mass. 2009) (Stearns, J.)). "The usual standard of proof in civil litigation is preponderance of the evidence." E.M.D. Sales, Inc. v. Carrera, 604 U.S. 45, 47 (2025). Here, Horchow asserts that "the Club admitted [her] as a [primary] Member of the Club in 2004." Mem. Supp. Summ. J. at 2. Horchow must therefore prove by a preponderance of the evidence that, more likely than not, the Club admitted her and recognized her as the sole primary member until the time of the alleged transfer of membership in 2017. See Concrete Pipe & Prods. of California, Inc. v. Constr. Laborers Pension Tr. for S. California, 508 U.S. 602, 622 (1993)

(proof by a preponderance of the evidence "simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence.")

**B. Nature of Horchow's Claims**

As an initial matter, it is crucial to set out clearly the nature of Horchow's claims because the nature of the relief sought determines the probative force of the evidence presented. All four claims: breach of contract, breach of the implied covenant of good faith and fair dealing, violation of Chapter 93A, and the expulsion rest on a common premise. The breaches and violations alleged, namely (1) transfer of membership to Dr. Fearon, (2) deprivation of membership rights, (3) refusal to recognize Horchow's claim to membership, and (4) expulsion without a hearing, all presuppose that Horchow possessed primary membership rights in the first instance.

It follows that primary membership rights could not have been transferred or withheld from Horchow unless they were granted to her in the first place. "No one in general can [transfer] personal property and convey a valid title to it unless he is the owner or lawfully represents the owner. Nemo dat quod non habet." Lambert v. Emerald Publ'g Ltd., Civil Action No. 24-cv-11980-ADB, 2025 U.S. Dist. LEXIS 176634, at *9 (D. Mass. Sept. 10, 2025) (Burroughs, J.)(quoting Mitchell v. Hawley, 83 U.S. 544, 550 (1872)). For purposes of the

applicable expulsion procedure, the Membership Plan is clear that "Family Member and guest privileges may be terminated without prior notice or a hearing." Membership Plan at 11.

Accordingly, the dispositive question before this Court is not whether the Club should have designated Horchow as the primary member in 2004.[1] Rather, the dispositive question here is whether the Club did, in fact, do so. Horchow does not seek review of a wrongful club-membership admission decision where she would acknowledge that she was not admitted to membership. See, e.g., Murray v. Framingham Country Club, No. 035164, 2005 WL 2009681, at *1 (Mass. Super. June 20, 2005) (alleging that the defendant country club discriminated against the plaintiff for her sex and in retaliation when the defendant denied her membership). Instead, Horchow argues that she was admitted as

[1] Essentially, that would constitute an action in equity seeking to reform or set aside a wrongful membership admission. Even putting aside the doubtful proposition that this Court could so involve itself in the affairs of a private club, see, e.g. Ortiz-Bonilla v. Federacion de Adrejez de Puerto Rico, Inc., 734 F.3d 28, 41 (1st Cir. 2013)("[C]ourts generally will not interfere with the internal affairs of a voluntary association absent mistake, fraud, collusion or arbitrariness."), any such action would be presently time barred -- a point raised by the Club. See Def.'s Mem. in Supp. Mot. Summ. J. at 9 ("The Club's designation of Dr. Fearon as the primary member, however, occurred in 2004 . . . so her claims are all time-barred"). The Club, however, did not raise the Statute of Limitations defense in its answer and Horchow quite properly claims that it was waived. This Court thus acknowledges Statute of Limitation concerns in footnotes 1 and 2 but does not ground its analysis thereon as it seems most fair to address the merits rather than base the result on procedural oversight.

the designated primary member from inception of the membership and that the Club later transferred or interfered with rights that already belonged to her. Horchow thus seeks:

> judgment that 1) the [primary] Membership belonged to Ms. Horchow, 2) the Westmoor Club, LLC breached its contract with her by transferring the Membership to Dr. Fearon, and 3) the Westmoor Club, LLC breached its contract with Ms. Horchow by expelling her in violation of the procedures set forth in the Club's Membership Plan.

Pl.'s Mem. Supp. Summ. J. at 8-9. Her claims, therefore, rise or fall on a single proposition: that she was admitted as the primary member in 2004.

### C. Whether Horchow Proved that She was Admitted as the Primary Member

#### 1. The Membership Application

The Membership Application contains substantial evidence rationalizing Horchow's belief that she was the primary member. Horchow is identified at the outset as the Applicant; her personal information appears throughout the application; her references were used; and her father paid the Membership Deposit. See Membership Application at 2. Notwithstanding Horchow's significant contributions to the application process, Horchow and Dr. Fearon signed the application as Spouse and Applicant respectively. See id. at 3. The result is an irreconcilable tension within the document itself. What facially appears to be Horchow's application is executed as Dr. Fearon's application. The Membership Application as executed

therefore supports competing inferences and is not dispositive of who was admitted as the Applicant and, consequently, the primary member. The execution of the Membership Application by Dr. Fearon as Applicant and Horchow as Spouse, however, substantially diminishes the probative force of the remaining indicia upon which Horchow relies and weighs against her contention that the Club admitted her as the primary member.

**2. The Membership Documents**

Horchow's breakdown of the membership documents and the pertinent indicia demonstrating her indispensable role in the membership application process shows why it would have been reasonable for the Club to admit her as the primary member in 2004 but falls short of proving that the Club in fact admitted her as such. Horchow's position, at its core, does not truly present a question of contract interpretation. The Membership Application is not alleged to be ambiguous with respect to the designations appearing on the signature page. Nor does Horchow identify any language in the Membership Documents that is reasonably susceptible of competing meanings. Rather, Horchow contends that, notwithstanding the manner in which the Membership Application was executed, the Court should rely on a holistic interpretation of the membership documents to conclude that she, and not Dr. Fearon, was admitted as the Applicant and therefore the primary member. See Pl.'s Mem. Partial Summ. J. at 4 ("To the extent that the Club

contends that Dr. Fearon is the Member and not Ms. Horchow because Dr. Fearon signed his name on the applicant signature line of the application, such an argument is not supported by the plain text of the application and its interpretation as a whole.")

Horchow's conception of this holistic interpretation is reflected in her Opposition to the Club's Motion for Summary Judgment. In her opposition, Horchow cites her Motion for Partial Summary Judgment, id., as embodying:

> facts establishing Ms. Horchow was admitted as a Member including: use of Ms. Horchow's personal information and references in the Membership Application, that Ms. Horchow was listed as the "Applicant" on the Membership Application, testimony by the Club's Director of Membership that members "would have been applicants at [the application] stage," the Club's Director of Membership wrote Ms. Horchow's name at the top of the Membership Application and related checks, and one of four individuals involved in admitting members testified that Ms. Horchow was admitted as the Member.

Pl.'s Opp'n Mot. Summ. J. at 3-4. In other words, Horchow's theory here is that at time of executing the Membership Application -- signed by Dr. Fearon as Applicant and Horchow as Spouse -- the Club was under the impression that it was admitting Horchow as Applicant and Dr. Fearon as Spouse. See id. at 3 ("While there is no genuine dispute that the Club now treats Dr. Fearon as the Member, that does not establish that Dr. Fearon was in fact the Member."). This theory would, in turn, imply that the Membership Application as executed by the parties does not accurately capture the parties' intentions.

Since the Membership Application's signatures do not tally with what Horchow asserts to be the parties' intended agreement, the natural implication is that Horchow asserts a mutual mistake in the manifestation of the parties' agreement at the time of contracting. See OneBeacon Am. Ins. Co. v. Travelers Indem. Co. of IL, 465 F.3d 38, 41 (1st Cir. 2006) ("Mutual mistakes justifying contract reformation may result simply from the parties' inattention").[2]

Although Horchow does not formally seek reformation of the Membership Application, she effectively asks the Court to disregard what she contends is an error in the manner in which the document was executed. See id. ("Although '[t]he classic case for reformation' is when the mutual mistake can be traced to a typo or transcription error, a scrivener's error is not a prerequisite for reformation.") (quoting E. Allan Farnsworth, Farnsworth on Contracts § 7.5 (2001)). Likewise, the principles governing reformation are instructive because while Horchow does not seek formal reformation, her theory depends upon the proposition that the Membership Application, as

[2]Horchow's "mutual mistake" argument sidesteps the Statute of Limitations if one accepts that the "mistake" was not uncovered until the Horchow-Fearon divorce made the matter here a point of actual consequence. See n.1. As this Court finds Horchow has failed to prove any "mistake" on the part of the Club, however, the theory need not be further pursued.

executed, does not reflect the parties' actual agreement. See id. at 42 ("reformation fixes a mistaken writing").

Massachusetts law permits a written instrument to be reformed where the writing fails to reflect the parties' true agreement as a result of mutual mistake.

> Where a writing that evidences or embodies an agreement in whole or in part fails to express the agreement because of a mistake of both parties as to the contents or effect of the writing, the court may at the request of a party reform the writing to express the agreement, except to the extent that rights of third parties such as good faith purchasers for value will be unfairly affected.

Id. at 41 (quoting Restatement (Second) of Contracts § 155 (2006)); see also Polaroid Corp. v. Travelers Indem. Co., 414 Mass. 747, 756 (1993).

The burden, however, is substantial. The party seeking such relief must establish that the undisputed material facts fully, clearly, and decisively demonstrate mutual mistake. See OneBeacon Am. Ins. Co., 465 F.3d at 41.

Even assuming those principles are applicable here, Horchow has not met that burden. The evidence may support a finding that Horchow subjectively intended to apply for membership in her own name. It does not establish that the Club shared that understanding, recognized the signatures as having been placed on the wrong lines, or admitted Horchow notwithstanding the manner in which the Membership Application was executed. To the

contrary, the Club's surviving records tend to support the opposite inference. Accordingly, the Membership Documents do not carry Horchow any closer to proving that the Club admitted and recognized her as the primary member in 2004.

### 3. References and Payment of the Membership Deposit

Horchow argues that Dr. Fearon could not have been the Applicant because his contact information and references do not appear on the Membership Application. See Pl.'s Opp'n. Mot. Summ. J. at 3-4. The argument is persuasive but not conclusive. Clause F of the Membership Application authorizes the Club to investigate an Applicant's qualifications through persons identified in the application. See Membership Application at 4. Thus, the Club could have contacted Horchow and the references she supplied in evaluating Dr. Fearon's qualifications. See Pl.'s Aff. in Supp., Dep. of Regen Horchow at 116:10-117:4 (showing that both references were acquainted with Dr. Fearon). This interpretation accords with the holistic approach advocated by Horchow where terms are construed considering the whole contract rather than as if they stood alone. See Pl.'s Mem. Partial. Summ. J. at 4. Ultimately , Horchow's holistic interpretation as to the social references diminishes the probative force of Horchow's evidence on its own terms.

Similarly, Horchow relies on the fact that her father paid the Membership Deposit. See id. That fact is relevant but not

dispositive. The Membership Application provides that married applicants are jointly and severally liable for dues and charges. See Membership Application at 3. Accordingly, payment by one spouse does not establish which spouse held primary membership. The Court therefore assigns limited probative weight to Horchow's reliance on references and deposit payments insofar as proving who held the primary membership is concerned.

## IV. CONCLUSION

While the Club has not produced records definitively identifying who it admitted as the primary member in 2004, the absence of such records does not relieve Horchow of her burden of proof. The Court must decide the case on the evidence that exists, not on evidence that might once have existed. Here, no grounds have been established for the Court to draw an adverse inference from the Club's failure to produce earlier records showing who it admitted as primary member. The Court makes its findings and rulings based on the evidence on the record.

Having weighed all the evidence, the Court finds that Horchow has not proved by a preponderance of the evidence that she was admitted as the primary member in 2004. Since primary membership could only be held by one person, the Court finds as fact, by a preponderance of evidence, that the Club admitted Dr. Fearon in 2004. Without primary membership there is no transfer or pre-expulsion hearing rights for Horchow to query.

Accordingly, the Court rules that all of Horchow's claims fail because they were all grounded in alleged violation of primary membership rights obtained in 2004.

Judgment shall enter for the Club on all claims.

**SO ORDERED.**

William G. Young
WILLIAM G. YOUNG
JUDGE
of the
UNITED STATES[3]

[3] This is how my predecessor, Peleg Sprague (D. Mass 1841-1865), would sign official documents. Now that I'm a Senior District Judge I adopt this format in honor of all the judicial colleagues, state and federal, with whom I have had the privilege to serve over the past 48 years.